31

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

ROBERT & GWENDOLYN BROOKS, §
ALICE CESPEDES MADRAZO, §
DAVID & JUDITH CLEMENCE, §
ELISA P. De SIUN aka ELISA P. CHAIX, §
SANDRA MADARIA, §
RONALD L. MANN, §
HECTOR ELIZONDONAJERA §
MARY PEABODY, §
WALTER E. PLITT, III, §
ADOLFO PUMAJERO, §
JEAN & H. REED SMITH, §
MARIA ESTHER SOTO, §
JORGE & BERTHA SUSTAETA, §
JUAN & MARIA del CARMEN CAUDRA, §
PAUL & ROSALYN CHILTON, §          CIVIL ACTION NO. B-00-173
JAMES & LORRAINE DEWAR, §
CARLOS J. FLORES, §
HUMBERTO RUIZ GARZA, §             PLAINTIFFS' RESPONSE
ANKJAER JANSEN, §                  TO MOTION FOR
FOREST & ANN JOSTROM, §            SUMMARY JUDGMENT
JOHN S. LIGHT, §
ROBERT LIGHT, §
JOAQUIN & ANDELIA B. de MADERO, §
NORMAN & ELAINE MEISSNER, §
CHRISTOPHER L. PHILLIPPE, §
ILA VIRGINIA PHILLIPPE, §
MONICA K. PIER, §
CHARLES & JESSIE RADLIFF, §
PETE de la ROSA, III, §
PATRICIA SMITH-WILLIS, §
HARRY O. WHITE, Jr. §
and ALLEN & RUTH WOLFE §
§
VS. §
§
KEN PLASTERER and NANCY JEANETTE BAILEY,§
Each Individually, and LOS CAMPEONES, INC., §
Individually and dba VALLEY §
INN & COUNTRY CLUB §

United States District Court
Southern District of Texas
FILED

JUN - 8 2001

Michael N. Milby, Clerk of Court

## PLAINTIFFS' RESPONSE TO DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now, all Plaintiffs named herein, and pursuant to Fed.R. Civ.P. 56, file this their Response to Defendants' Motion for Summary Judgment, requesting that Defendants be denied Summary Judgment as set forth terein, and in support thereof, would respectfully show the Court as follows:

### I.  INTRODUCTION

1.     It is important to make the following clarification: Contrary to Defendants' allegations and "evidence" set forth in Appendix "A" to Defendants' Motion for Summary Judgment, Plaintiffs do not contest: 1) the validity of the covenants and restrictions; 2) that the covenants and restrictions run with the land; or 3) that a successor of the "Developer" has the right to enforce the covenants and restrictions.    Plaintiffs affirmatively contest that Defendants, specifically Los Campeones, Inc., is the successor of the "Developer," and thus empowered to enforce the covenants and restrictions.

### II.  RESPONSE TO GROUNDS FOR SUMMARY JUDGMENT UPON ALL CLAIMS

**[A]   Defendants alleged they are entitled to Summary Judgment upon all of the Plaintiffs' claims because the summary judgment evidence conclusively demonstrates that (1) Defendant Los Campeones is the lawful successor to VIP fka VICC and is lawfully authorized to exercise the rights complained of; (2) that no right exercised by Defendants belonged to RGVICC; and (3) that Defendants' conduct was not undertaken pursuant to any Condominium Declaration or in contravention of The Texas Condominium Act or The Uniform Condominium Act.**

**[A] 1: Defendant Los Campeones is the lawful successor to VIP fka VICC and is lawfully authorized to exercise the rights complained of.**

2.     Defendants set forth their "evidence" in Appendix "A" to their Motion for Summary Judgment, which consists of the Covenants and Restrictions (Exhibit A-1); Adoption of

CibPDF - www.fasisi.com

Covenants and Restrictions (Exhibit A-2); Articles of Incorporation of Valley Inn and Country Club, Inc. ("VICC") (Exhibit A-3); Articles of Amendment to Article of Incorporation of Valley Inn and Country Club, Inc. (Exhibit A-4); Bankruptcy Court Order Authorizing Execution of Contractual Agreement and Compromise of Controversy (Exhibit A-5); various Trustee's Deeds (Exhibit A-6); an Affidavit by Ken Plasterer and "supporting" documents (Exhibit A-7); an Affidavit of Jim Sheets (Exhibit A-8); and an Affidavit of Harry Richardson (Exhibit A-9).

3.     None of these exhibits constitute evidence that Los Campeones, Inc. was ever the successor to the "Developer" (or its successor) VIP fka VICC.  Exhibit A-5, the Bankruptcy Court Order Authorizing Execution of Contractual Agreement and Compromise of Controversy, references *only the following*:

a.  "a program of rentals of properties owned by third parties at and adjoining the amenities of Valley International Country Club" (bottom of page 1);

b.  "authorized to regain possession of the amenities at Valley International Country Club" (continuing paragraph at top of page 2);

c.  "operated the Valley International Country Club for the benefit of Valley international Properties, Inc." (second full paragraph of page 2);

d.  "certain contractual arrangements constituting the rental pool agreements for those individually owned residential properties located at Valley International Country Club" (paragraph 2 on page 3);

e.  "funds generated by the operations of Valley International Country Club revenue sources" (end of first full paragraph on page 5);

f.  "the operating of Valley International Country Club," (paragraph 5 on page 6);

g.  "the operation of that certain laundry facility located at Valley International Country Club" (paragraph 7 on page 7); and

Additionally, as pointed out by the Defendants in Appendix A, the Bankruptcy Order specifically referenced the "dues paid by Country Club members  ... Valley International Country Club" (next to the last paragraph on page 5).  However, the juxtaposition of the two phrases cited by Defendants is erroneous, as the first phrase (that all revenues generated from

3

"*any* income source and revenue bases at Valley International Country Club" appears in paragraph 3 <u>on page three</u> of the Order; while the "dues" phrase appears in the next to the last paragraph <u>on page 5</u> of the Order.

4.     Defendants' Exhibit A-6 consists of various Trustee's Deeds executed following the bankruptcy foreclosure sale.  The deeds are for the Country Club and its amenities, including the golf course, and the following various <u>individual pieces of real estate</u> within the development: Tracts One, Two and Three (Trustee's Deed recorded at Vol. 1086, Page 123, *et. seq.*:

      10.97 acres out of Blocks 40, 41 and 41; Lots 716 and 717 Country Club "North"; Lot 912, Lot 914; Lot 915; and Lot 917 (Trustee's Deed recorded at Vol. 1086, Page 129, et. seq.);

      Condominium Unit Number 603-1 (Trustee's Deed recorded at Vol. 1086, Page 138, et seq.);

      Condominium Unit 605-2 (Trustee's Deed recorded at Vol. 1086, Page 143, et. seq.);

      Condominium Unit #8001 (Trustee's Deed recorded at Vol. 1086, Page 149, et. seq.);

      Condominium Unit #8002 (Trustee's Deed recorded at Vol. 1086, Page 155, et seq.);

      Condominium Unit #8004 (Trustee's Deed recorded at Vol. 1086, Page 161, et seq.);

      Condominium Unit #8043 (Trustee's Deed recorded at Vol. 1086, Page 167, et. seq.);

      Condominium Unit #8102 (Trustee's Deed recorded at Vol. 1086, Page 173 et. seq.);

      Unit Nos. 315-6, Building "BC"; Unit No. 448-3, Building "EB"; Unit 315-1, Building "BA"; Unit 448-6, Building "EC"; Unit 412-8, Building "DB"; Unit 237-1, Building E; Unit 237-2, Building "E"; Units 230-1 and 230-2 (Trustee's Deed recorded at Vol. 1086, Page 183, et seq.);

      Lot 301; Lot 300; Registration Office, Brownsville; Security and Maintenance Yard, Brownsville; VICC Golf Course; Lot 84, Lots 82, 83; Lot 81; Club House, Pool, and Parking Area; Par "3" Golf Course – Country Club North (Trustee's Deed recorded at Vol. 1086, Page 190, et seq.);

5.     Therefore, unlike and distinguished from the facts in <u>Simms v. Lakewood Village Property Owners Association, Inc.</u> 895 S.W.2d 779 (Tex.App.—Corpus Christi 1995, no writ) cited by Defendants, neither the Bankruptcy Court by its Order, nor the Trustee by Deed,

transferred the management and ownership of the common areas to Los Campeones, Inc. Therefore Los Campeones, Inc. is not a successor to the "Developer" nor invested with the powers of enforcement of the covenants.

6.      As to Defendants' Exhibit A-7, the affidavit of Ken Plasterer ("Plasterer"), and the allegedly supporting documents, the affidavit is a self-serving document, mixing allegations that Los Campeones is the successor owner of, and has operated and maintained, "the Club" (which is uncontested by Petitioners), and that Los Campeones is the successor to the "Developer" of the subdivision and has operated and maintained the common areas, etc. subject to the Covenants and Restrictions; many of the attached documents do not in fact support the allegations for which they are referenced. Petitioners affirmatively contest that Los Campeones is the successor to the Developer and has the power to enforce the Covenants and Restrictions, other than as applicable to the covenant/restriction of membership in the Country Club and the assessment of Country Club "membership dues."

7.      On page 3 of his affidavit, Plasterer asserts that Exhibit A-7-c establishes that the "[property] owners and the Association recognized that Los Campeones, Inc. not only owned the VICC Club but was also responsible for repairing and resurfacing roadways and parking lots at Country Club Estates." This is not so. The document begins by stating: "Your Homeowners Association Board is pleased to announce that *after years of negotiations with the V.I.C.C. Club ownership regarding the repairing of our adjacent roadways a formula has been worked out to get the job done.*" (emphasis added). This is not a recognition of responsibility; but simple a statement of conclusion of negotiations. If Los Campeones (the club owner) had a duty under the Covenants and Restrictions (as successor to the Developer) to maintain the common areas (including the private roadways), there would not have been "negotiations" and an assessment against the homeowners to pay "some 99.4% of the assessment" for the repairs (Page 3, middle

5

of first full paragraph, Plasterer Affidavit).  The successor owes such duty as a matter of law; not the homeowners.

8.      Furthermore, as previously stated, Defendants have offered no evidence that Los Campeones, Inc. purchased "a controlling interest in Valley International Properties," other than the purchase of the country club itself and its amenities, and some additional individual units of realty in the subdivision.  Exhibit A-7-d, the letter from the foreclosing bank's attorney's repeatedly references *only* the problems with the operation and "possession of the Valley International Country Club *facilities*."  This does not constitute notice to the homeowners that Los Campeones or any other purchaser would or could become the successor to the "Developer" as set forth in the Covenants and Restrictions.  Even Pat Stanford's letter of March 10, 1995 (Defendants' Exhibit A-7-f) advising the Homeowner/Members that he had sold his stock to Plasterer, *only references the Club.*  "Ken has ... served as General Manager of the Club since 1989.  There will be no immediate changes in the operations ...I ... hope that I'm leaving the Club and premises a little better than when I got here."

9.      As to Plasterer's self-serving statement  that his former wife, Nancy Jeanette Bailey did not own "stock, much less a controlling interest, in Los Campeones, Inc., and at no time has she in any other manner exercised financial or other control over Los Campeones, Inc." simply is insufficient based solely on the fact that the stock was issued to him (Defendants' Exhibit A-7-e).  Although Ms. Bailey was not married to Ken Plasterer at the time the stock was issued to Plasterer, Ms. Bailey had previously been an employee/representative of Brownsville Savings & Loan Association (an active claimant in the bankruptcy claim against VIP and Los Compadres); as such Ms. Bailey was extremely active in the S&L's "interim management" of VIP's property, up to the time of the bankruptcy foreclosure sale of various properties the subject matter of this suit.  Somewhere during the time continuum, Ms. Bailey married and became Mrs. Ken

Plasterer, and remained involved in the administration and management of VIP and VICC, and then Los Campeones. As such, Nancy Jeanette Bailey Plasterer played an active role in what transpired regarding VIP, VICC and Los Campeones. The extent of her involvement will only be revealed through discovery.

### [A] 2: that no right exercised by Defendants belonged to RGVICC.

10. While Defendants claim that "RGVICC was never given" the "right to enforce any of the covenants and restrictions, assess any of the dues and fees, and/or place or foreclose liens upon any of the property in question," such denial does not stand in the clear language of the Covenants and Restrictions (Defendants' Exhibit A-1)(which Defendants reference):

> "WHEREAS, for the purpose administering the affairs, business operation and maintenance of the Country Club, R G Valley Inn and Country Club, Inc. has been incorporated under the laws of Texas ..." (pp. 1-2).

The business operation and maintenance of the Country Club includes the assessment and collection of country club membership dues. The right was explicitly given to the Developer *and the Country Club* under the Headlining "MAINTENANCE CHARGE AND COUNTRY CLUB DUES" beginning on page 12 and continuing on page 13 of the Covenants and Restrictions (Defendants' Exhibit A-1):

> 2. There is hereby granted to Developer *and the Country Club* an express lien against each lot to secure all obligations of the owner or owners of said lots to *Developer and the said Country Club*, as well as all obligations at any time imposed upon the owner or owners of said lots *to the Country Club by virtue of membership therein."*

11. Additionally, the definitional paragraph on page 3 of the Covenants and Restrictions states:

> By use of the term *"Developer"* of "Valley Inn and Country Club, Inc." of [sic] *"R G Valley Inn & Country Club, Inc."* or "Country Club" herein shall also include and be construed to mean "its successors and assigns."

If RG Valley Inn & Country Club, Inc. (RGVICC) has no rights to enforce the covenants and restrictions, then why is it specifically named in this definitional paragraph; named as the

business administrator of the Club; and the Club itself (through its business administrator) given a specific lien right to collect the dues?

12.    Even though VIP fka VICC (otherwise known first as Bill Bass, then Pat Stanford, then Ken Plasterer) chose to ignore the corporate directives of the Articles of Incorporation  of RGVICC, such action has no bearing on whether or not the right and power belonged to RGVICC as set up by the *original Developer in the Covenants and Restrictions*.  Therefore, while the affidavits of Jim Sheets and Harry Richardson (Defendants' Exhibits A-8 and A-9, respectively) are interesting as to what they allege the "Broad of Directors" of R.G. Valley Inn & Country Club, Inc. did or didn't do, the fact remains that the powers reserved to the corporation, whether or not the corporation exercised them, the powers/purpose as set forth in the Articles of Incorporation of R.G. Valley Inn & Country Club, Inc., as incorporated on or about December 21, 1965, is to "operate and maintain a private club and country club," subsequently known as the Valley Inn & Country Club." (Cf. Complaint, at paragraph 20, Exhibit 3; also attached hereto as Exhibit 1).  However, the affidavits of Jim Sheets and Harry Richardson do support Plaintiffs' allegation that Bill Bass, personally, using "his corporate entities Valley International Country Club, Inc. and Valley International Properties maintained control over the operation of the Country Club development", contrary to Texas corporation law and the Articles of Incorporation of R.G. Valley Inn & Country Club, Inc., Pat Stanford, and later Ken Plasterer (the then sole shareholder of Los Campeones, Inc.) simply continued those same actions, ignoring Texas corporation requirements as suited their purposes.

13.    The bottom line, the question of whether or not the powers of RGVICC reverted to VIP fka VICC, still does not resolve the issue of whether or not Los Campeones, Inc.'s purchase of the country club realty and personalty makes Los Campeones the successor to the "Developer". Plaintiffs assert that it does not.

**[A] (3) that Defendants' conduct was not undertaken pursuant to any Condominium Declaration or in contravention of The Texas Condominium Act or The Uniform Condominium Act.**

14.    Defendants' make the above statement as a defense. However, Plaintiffs' are glad to hear that Defendants' claim that they did not undertake any action pursuant to any Condominium Declaration, as this is a judicial admission as to Plaintiffs' allegation that the Defendants' ignored the Condominium Declarations (Cf. Plaintiffs' Exhibits Nos. 9-18), filed of record *by the Developer*; and in ignoring those Declarations, Defendants acted in contravention of The Texas Condominium Act ("TCA") and The Uniform Condominium Act ("TUCA"). By making a Condominium Dedication, a Developer gives up control of the realty dedicated, including its common areas to the Condominium entity itself, and is no longer considered elements of land owned by the Developer. <u>Alma Investments, Inc. v. Bahia Mar Co-Owners Ass'n</u>, 999 S.W.2d 820, 824-825 (Tex.App.—Corpus Christi 1999), as is clear from the Acts themselves.

15.    Pursuant to the TCA and the TUCA, the governance and maintenance of the dedicated condominiums become the providence of the managerial body established by the Acts, which state that condominium owners, commonly referred to as homeowner's associations or as the "Unit Owners' Association, "[1] are to elect their *own* Board of Directors.

16.    Pursuant to §82.002(c) of the TUCA, §82.102 ("Powers of Unit Owners' Association") is applicable herein, and empowers the homeowner's association with 22 explicit powers:

    a) *Unless otherwise provided by the **declaration**,* **the association**, *acting **through its board**,* may:

    *(1) adopt and amend bylaws;*

    *(2) adopt and amend budgets for revenues, expenditures, and reserves, and collect assessments for common expenses from unit owners;*

---

[1] as referenced by the Texas Uniform Condominium Act ("TUCA"), §82.001, *et seq.* of The Texas Property Code.

CHMPDF - www.fastio.com

*(3) hire and terminate managing agents and other employees, agents, and independent contractors;*

(4) institute, defend, intervene in, settle, or compromise litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium;

*(5) make contracts and incur liabilities relating to the operation of the condominium;*

*(6) regulate the use, maintenance, repair, replacement, modification, and appearance of the condominium;*

*(7) adopt and amend rules regulating the use, occupancy, leasing or sale, maintenance, repair, modification, and appearance of units and common elements, to the extent the regulated actions affect common elements or other units;*

(8) cause additional improvements to be made as a part of the common elements;

(9) acquire, hold, encumber, and convey in its own name any right, title, or interest to real or personal property, except common elements of the condominium;

(10) grant easements, leases, licenses, and concessions through or over the common elements;

*(11) impose and receive payments, fees, or charges for the use, rental, or operation of the common elements and for services provided to unit owners;*

*(12)* impose interest and late charges for late payments of assessments, returned check charges, and, if notice and an opportunity to be heard are given, reasonable fines for violations of the *declaration, bylaws, and rules of the association*;

*(13) adopt and amend rules regulating the collection of delinquent assessments and the application of payments;*

(14) adopt and amend rules regulating the termination of utility service to a unit, the owner of which is delinquent in the payment of an assessment that is used, in whole or in part, to pay the cost of that utility;

(15) impose reasonable charges for preparing, recording, or copying declaration amendments, resale certificates, or statements of unpaid assessments;

(16) enter a unit for bona fide emergency purposes when conditions present an imminent risk of harm or damage to the common elements, another unit, or the occupants;

(17) assign its right to future income, including the right to receive common expense assessments, but only to the extent the declaration so provides;

CSMPDF - www.fesite.com

(18) suspend the voting privileges of or the use of certain general common elements by an owner delinquent for more than 30 days in the payment of assessments;

(19) purchase insurance and fidelity bonds it considers appropriate or necessary;

(20) exercise any other powers conferred by the declaration or bylaws;

(21) exercise any other powers that may be exercised in this state by a corporation of the same type as the association; and

**(22) exercise any other powers necessary and proper for the government and operation of the association.**

(Tex. Prop. C. §102(a)(1-22)(emphasis added.)  It is clear from the Acts themselves, that once a developer makes a condominium dedication, the developer is "out-of-the-picture," with the developer's rights and duties transferred to the condominium owners themselves.

17.     It is important to note that once a condominium declaration is made, the Developer cannot be dealt with differently than any other person:

(b) The *declaration may not impose limitations on the power of the association* to deal with the declarant that are more restrictive than the limitations imposed on the power of the association to deal with other persons.

(Tex.Prop.C. § 102(b).

18.     V.I.C.C. Homeowner's Association, Inc. ("VICC HOA") was incorporated on or about December 13, 1982 as a non-profit corporation.  This entity's corporate charter is currently in good standing. (Cf. Plaintiffs' Exhibits Nos. 27 and 28).  As stated in Article IV of VICC HOA's Articles of Incorporation, its purpose is:

(A) To act for and on behalf of it's (sic) members in all matters relating to contracts and agreements with the owners and operators of Valley Inn and Country Club, Inc., located near the City of Brownsville, Texas.

(B) To act for and on behalf of it's (sic) members in all matters relating to Rules and Regulations at anytime heretofore issued by the owners and/or operators of Valley Inn and Country Club, Inc., it's (sic) agents or representatives or which may at anytime thereafter be issued which in any way effects property located within the boundries (sic) of the Country Club, or which in any way effects membership rights or obligations arising by virtue of ownership of property within the boundries (sic) thereof, or residence therein.

11

(C) To act for and on behalf of it's (sic) members in all matters pertaining to Recorded Restrictive Covenants affecting title to property belonging to the members of the V.I.C.C. Homeowners Association within the boundries (sic) of said Country Club.

(D) To act for and on behalf of it's (sic) members in any and all legal matters and/or actions heretofore undertaken or hereafter arising pertaining to property belonging to it's (sic) members within the boundries (sic) of said Country Club.

Los Campeones, Inc. has denied and usurped the powers and authority of VICC HOA by the unlawful manipulation and control of the condominiums through void/voidable provisions of the Condominium Regimes (ByLaws) *enacted by the developers/sponsors of the condominiums*, rather than the homeowners/unit owners association acting through its own Board of Directors. *Contrary to state law*, the Condominium Regimes in question (as opposed to the Declarations) name the entity that is to control the condominiums. Regimes for Condominiums 1 and 5 (and presumably Condominiums 2, 3, 4, 6, 7 and 8) state the condominiums are to be controlled by a Board of Managers, originally *chosen by the Developer*, to be subsequently elected by the condominium owners. Defendants have failed and refused to allow the condominium owners to elect their own Board of Managers and/or have failed and refused to turn over control of the condominiums to a Board of Managers elected by the property owners. The Regime for Condominium No. 9, in total opposition to applicable state law, states that the condominiums are to be controlled by the Board of Directors of Valley Inn & Country Club (which is controlled by R.G. Valley Inn & Country Club, Inc., an entity which is in no way associated with the condominium owners), with no provision for control by the property owners. (Cf. Plaintiffs' Exhibits 16-18, inclusive).

19.     The provisions of the Regimes are contrary to the TUCA and the TCA, and either directly or indirectly contravene Texas law. Los Campeones, Inc. has fraudulently misrepresented and denied the condominium owners' right to elect their Board of Managers, as stated in the majority

of the condominium declarations and regimes, and has fraudulently denied the authority of the condominium owners to control the condominiums and amend the Regimes and ByLaws as set forth in the TCA under §81.201, 81.203 and 82.102.

20.    It is clear that the pleadings, exhibits and summary judgment evidence offered by both Plaintiffs and Defendants raise genuine issues of material fact; and therefore Defendants are not entitled to summary judgment as a matter of law.

> **[B]    In the Alternative, Defendants allege they are entitled to summary judgment upon all of the Plaintiffs' Claims because the summary judgment evidence conclusively demonstrates that Plaintiffs waived any right to complain of Defendants' having undertaken the conduct set forth in their complaint and/or ratified Defendants' authority to undertake such conduct and/or are estopped to deny same by having acquiesced in same, by having paid the fees and dues in question and having accepted the services provided in return therefor, and by having remained silent for many years with full knowledge that Defendant Los Campeones had purchased the Country Club and a controlling interest in VIP fka VICC with the intent and purpose of exercising all of the authority and undertaking all of the obligations formerly exercised and undertaken by VIP fka VICC pursuant to the Covenants and Restrictions set for in Exhibit A-1.**

> **[1]   Waiver/Ratification:**

21.    Plaintiffs have never contested, and do not contest that Defendants are the successors of VIP fka VICC *as to the purchase of the country club, both realty and personalty,* or that pursuant to the Covenants and Restrictions, property owners are required to pay membership or "social dues" to the Country Club.  Plaintiffs have raised allegations that contrary to the provisions of the Covenants and Restrictions, the Country Club is no longer a "private" club, but open to the public, abandoning the requisite of property ownership, as stipulated in the Covenants and Restrictions:

> "WHEREAS, Developer desires to subdivide the property ... and constitute the same as *high quality restricted resident subdivisions* ..." (3rd paragraph., page 1, Exhibit A-1)

> "WHEREAS, for the purpose of creating and carrying out a uniform plan for the maintenance and improvements of such Subdivision and the lots therein, *as a high*

CSitPDF - www.fesiia.com

*quality restrictea residential subdivision,* the covenants and restrictions with respect to thereto are designated hereinafter; and

WHEREAS, the *ownership of the lots and improvements* thereon within such Subdivision *shall be limited to persons* who have qualified in accordance with the by-laws, rules and regulations of the Corporation and Country Club *for membership in the Country Club;*" (page 2)

22.    The Defendants' abandonment of this primary purpose of the Covenants and Restrictions created a waiver of the right to enforce them and/or constitute such change in conditions in the restricted area or surrounding it, that it is no longer possible to secure a substantial degree the benefits sought to be realized through the covenants, at least to the effect of requiring mandatory membership in the Club and the assessment and collection of Club membership dues. Hence, Plaintiffs' allegation that Defendants' right of enforcement of restrictions pertinent to Club membership should be denied. (*See* Simms v. Lakewood Village Property Owners Assoc., Inc., 895 S.W.2d 779, 786 (Tex. App.  Corpus Christi 1995); citing Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943, 946 (1958) ).

23.    The contested issue as to the identity of the Developer's successor, if any, is the allegation that Defendants constitute the successor to the "Developer," having the power to enforce the Covenants and Restrictions as to non-Club related property, dues and obligations. Defendants continue to allege that Los Campeones purchased "a controlling interest in VIP fka VICC" and "all the property in question," but has failed to offer any supporting evidence of such allegations.  Plaintiffs' arguments on this issue are previously set forth in detail herein and will not be repeated, but are re-asserted and incorporated herein by reference as if set forth verbatim. However, Plaintiffs will point out that Defendants' cited Exhibit A-7, and particularly A-7-c, do not establish that "Plaintiffs and/or their predecessors in title have been repeatedly notified that the Los Campeones had purchased all of the property in question" nor "affirmatively acknowledg[ed] Los Campeones to have full authority to undertake the tasks complained of herein."

14

24.   Plaintiffs have paid the assessments <u>under protest and threat of foreclosure.</u> It is
Plaintiffs' allegation that Defendants fraudulently and/or negligently misrepresented their
authority to enforce the covenants and restrictions; and claiming authority under state law (the
Texas Property Code) have brought foreclosure actions against resisting homeowners and
actually foreclosed on certain properties.  By claiming to be the successor to the Developer, the
Defendants assumed a mantle of power granted by the Property Code, which they used to their
benefit; while at the same time ignoring the accompanying fiduciary duties owed to the property
owners, and only selectively providing the services required of the Developer.  Acts completed
by coercion cannot constitute ratification, as ratification must include an element of volition. "A
voidable contract is ratified if a person with the right to annul the contract acts with sufficient
mental capacity and full knowledge of the situation and consents to the contract's continuance."
<u>Williams v. Sapieha</u>, 61 S.W. 115, 117-18 (Tex.1901); ); <u>Missouri Pac. Ry. Co. v. Brazil</u>, 10
S.W. 403, 406 (Tex.1888).  "Ratification is the adoption or confirmation by a person, with
knowledge of all material facts, of a prior act which did not then legally bind that person and
which that person had the right to repudiate." <u>Vessels v. Anschutz Corp.</u>, 823 S.W.2d 762, 764
(Tex.App.--Texarkana 1992, writ denied). "Ratification may either be express or implied, but it
must result from acts clearly evidencing an intention to ratify." <u>Daugherty v. McDonald</u>, 407
S.W.2d 954, 958 (Tex.Civ.App.--Fort Worth 1966, no writ). "Ratification by any means,
however, is effective only when ... fully disclosed all of the material facts of the transactions".
<u>Vessels v. Anschutz Corp.</u>, 823 S.W.2d 762 (Tex.App.--Texarkana 1992, writ denied).  Consent
"obtained through coercion and without sufficient disclosure or explanation of the ...
consequences thereof ... constitute a breach of fiduciary duty whether agreed [to] or not." <u>Smith</u>
<u>v. Estate of Branch</u>, 1991 WL 219469# 11 (Tex.App.  Dallas 1991).  Plaintiffs and/or their
predecessors in title had no knowledge of all material facts, and acted under threat of (and in

15

some instances, actual) foreclosure. Such lack of informed consent and action under coercion do not constitute ratification nor waiver of rights.

25.     As noted by Defendants in the Motion for Summary Judgment,[2] it is "undisputed" that Los Campeones undertook to perform *some* maintenance and other activities required of the Developer by the covenants, and that Plaintiffs have brought complaints as to the fulfillment of those duties. Such "admissions" go to Defendants' actions and omissions, not to the issue as a matter of law, as to whether or not Defendants are the successor to the Developer. Furthermore, if Defendants assert that they are the successor, they are not entitled to pick and chose what duties and obligations are applicable to them, while enforcing all duties and obligations as applicable to the property owners.

### [2] Estoppel:

26.     Defendants' arguments as to estoppel are spurious. Plaintiffs have not generally denied Defendants' rights*, as successor to the Country Club*, to enforce the covenants and restrictions as applicable to the Country Club. Plaintiffs do claim that Defendant abandoned the covenant and restrictions, creating a waiver of the right to enforce them and/or constitute such change in conditions in the restricted area or surrounding it, that it is no longer possible to secure a substantial degree the benefits sought to be realized through the covenants, at least to the effect of requiring mandatory membership in the Country Club and the assessment and collection of Country Club membership dues. Hence, Plaintiffs' allegation that Defendants' right of enforcement of restrictions pertinent to Country Club membership should be denied. (*See* Simms v. Lakewood Village Property Owners Assoc., Inc., 895 S.W.2d 779, 786 (Tex. App. Corpus Christi 1995); citing Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943, 946 (1958) ) It is the Defendants who seek to have it "both ways," either as to the Country Club or the

---

[2]   Footnote 2, page 15.

common areas of Country Club Estates.  Neither theory of ratification nor estoppel is applicable to the fact circumstances herein.  For each of the foregoing reasons, Plaintiffs have raised genuine issues of material fact; therefore Defendants are not entitled to summary judgment as a matter of law.

> **[C]  Defendants allege they are entitled to Summary Judgment upon all of the Plaintiffs' Claims because the Summary Judgment Evidence conclusively demonstrates that all such claims are barred by the Statutes of Limitations applicable thereto.**

27.     Despite    Defendants' allegations to the contrary, as previously discussed herein, Defendants have *never* established their *legal* authority as the successor to the original "Developer".  Plaintiffs and general property owners knew the country club and its amenities had been sold at a bankruptcy foreclosure.  They were "told" Los Campeones was the successor to the Developer; they knew Los Campeones "selectively" carried out some of the Developer's responsibilities while enforcing, or trying to enforce, the Developer's rights under the Covenants and Restrictions (part of Plaintiffs' complaints herein).  The Plaintiffs who are condominium owners did not know that their rights as condominium owners under the Texas Condominium Act and the Texas Uniform Condominium Act were being violated, first by VIP, and then by Los Campeones, the self-proclaimed "successor" to the Developer  -- the same Developer who filed Condominium Declarations, which pursuant to Texas state law gave the ownership, management and control of all common areas, and the rights of enforcement of the Restrictions to the property owners themselves.  Defendants declared themselves the "successor," but only when it has served their purposes, have Defendants complied with the governing state property laws governing *both* covenants and restrictions which run with the land, *as well as* condominium dedications.   Thus assuming a mantle of state law authority to make collections and process foreclosures,  Defendants  through  intentional  false  misrepresentation  and/or  negligent

misrepresentation, have previously bullied, threatened and denied Plaintiffs and other similarly situated property owners of their property rights and their property.

**[1] Plaintiffs' RICO Claims are barred by Limitations:**

28.    In Love v. National Medical Enterprises, 230 F.3d 765, 773-775 (5th Cir. 2000), the Fifth Circuit adopted the Bankers Trust "separate accrual" rule for application in civil RICO actions; which held "*each time* a plaintiff suffers an injury caused by a [RICO] violation *..., a cause of action to recover damages based on that injury accrues to plaintiff* at the time he discovered or should have discovered the injury." Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988), cert. Denied, 490 U.. 1007, 109 S.Ct. 1642, 1643, 104 L.Ed.2d 158 (1989)(emphasis added). The Court in Love further stated that the Fifth Circuit had previously "adopted the underlying "injury discovery" rule upon which the "separate accrual" rule is based. Love, at 774. "[H]aving accepted the "injury discovery" rule, it would seem illogical to conclude that, under civil RICO, a plaintiff may not recover for *injuries incurred within the limitations period, merely because they result from acts that are part of a continuing pattern of similar acts that caused other, similar injuries outside that period.*" Id.(emphasis added).

29.    Defendants in their Summary Judgment Brief focused on the "discovered or should have discovered" phrase of the Bankers Trust ruling, and refer to the 1997 Supreme Court case, Klehr v. A.O. Smith Corp., 521 U.S. 179. In discussing the issues of limitations and accrual, the Court stated that courts should look to the anti-trust language of Bankers Trust since Congress looked to, and heavily relied on, the Clayton Act in construction of the RICO statutes. The Court specifically referred to antitrust law which "provides that, in the case of a 'continuing violation,' ... over a period of years, '**each overt act** that is part of the violation and that injures the plaintiff ... starts the statutory period running again, **regardless of the plaintiff's knowledge of the alleged illegality at much earlier times.**" Klehr at 189, citing 2 P. Areeda & H. Hovenkamp,

Antitrust Law¶ 3300, at 145 (rev. ed. 1995)(footnote omitted)(additional cites omitted)(emphasis added). Furthermore, the Court in <u>Klehr</u> admits that "[t]he Court [has] left open the accrual question." <u>Id.</u> 189-190. Specifically the Court stated:

> **the <u>facts</u> of this case** do not force focused argument as to how the traditional Clayton Act "injury" accrual rule, principles of equitable tolling, and doctrines of equitable estoppel should interact in circumstances where the application of one, or another of these different limitations doctrines would make a significant legal difference. To say this ... is to recognize that the Clayton Act's express statute of limitations does not necessarily provide all the answers. We shall, at the very least, wait for a case that clearly presents these or related issues, providing an opportunity for full argument, before we attempt to resolve them. <u>Id.</u> at 192-193.

As Justice Scalia, joined by Justice Thomas, concluded:

> We thus leave reduced but unresolved the well-known split in authority that prompted us to take this case. There will remain in effect, in some Circuits one of the three remaining accrual rules –the one that their Courts of Appeals or District Courts have adopted; in the remaining Circuits litigants will have to guess which of the three to follow; and in all of the Circuits no one will know for sure which rule is right ... . <u>Id.</u> 196-197.

30.    However, <u>Klehr</u> is not the most recent United States Supreme Court case dealing with the civil RICO statute of limitations and accrual issues, as in 2000 the Court made its ruling in <u>Rotella v. Wood</u>, 528 U.S. 549, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000). Unfortunately once again the Court failed to decide whether an "injury discovery" or "straight injury occurrence" rule should apply to civil RICO actions; nor did the Supreme Court "decide whether civil RICO allows for a cause of action when a second predicate act follows the injury, or what limitations accrual rule might apply in such case." <u>Rotella</u>, at 1083 n.4.

31.    Therefore, for the case at bar, we are left with: 1) an acknowledgment of a four-year statute of limitations; 2) which allows plaintiffs recovery for injuries incurred within the limitations period, even though they result from acts that are part of a continuing pattern of similar acts that caused other, similar injuries outside the limitations period (<u>Love v. National Medical Enterprises</u>, 230 F.3d 765, 774 (5th Cir. 2000); 3) that there is no ruling on the accrual or

discovery issue; 4) but we do know from the Court's comments, that the "facts" of any particular case affect any "ruling" (Klehr at 192-193); and 5) that plaintiff's "knowledge" of illegality, even outside the limitations period, will not prevent plaintiffs from recovering for injuries within the four-year statute of limitations.   In light of Klehr, Rotella and Love, Defendants are not entitled to summary judgment based on bar by limitations, as there are issues of both material fact and law to be considered; or in the alternative, only the Plaintiffs' claims for damages for acts outside the four-year statute of limitations are barred.

### [2]  Plaintiffs' 42 U.S.C. § 1983 Claims are barred by Limitations.

32.      42 U.S.C.  § 1983 has no specific federal statute of limitations, therefore federal courts look to the law of the state in which the action arose to determine the appropriate limitations period, usually borrowing the state's general personal injury limitations period.  Hardin v. Straub, 490 U.S. 536, 538, 109 S.Ct. 1998, 2000, 104 L.Ed.2d 582 (1989).  Texas has a two-year statute of limitations.   However, under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action.  Gartrell v. Gaylor, 981 F.2d 254, 257 (5th Cir.1993);  Burrell v. Newsom, 883 F.2d 416, 418.  "The statute of limitations therefore begins to run when the plaintiff is in possession **of the 'critical facts that he has been hurt** and who has inflicted the injury....' " (emphasis added)  Gartrell, 981 F.2d at 257 (quoting Lavellee v. Listi, 611 F.2d 1129, 1130 (5th Cir.1980));  *accord* Brummett v. Camble, 946 F.2d 1178, 1184 (5ᵗʰ Cir. 1991), *cert. denied*, 504 U.S. 965, 112 S.Ct. 223, 119 L.Ed. 2d 241 (1992); *accord* Burrell, 883 F.2d at 418.  "A plaintiff's awareness encompasses two elements:  (1) The existence of the injury;  and (2) causation, that is, the connection between the injury and the defendant's actions."  Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir.1995);  *see also* Moore v. McDonald, 30 F.3d 616, 620-21 (5th Cir.1994);  Glover v. Johnson, 831 F.2d 99, 100 (5th Cir.1987);  Kline v. North Tex. State Univ., 782 F.2d 1229, 1232 (5th Cir.1986).

33.    The key element here is Plaintiffs' lack of knowledge of their injury. Covenants and restrictions run with the land, unless abandoned. Defendants "claimed" to be the successor to the Developer, empowered by the Texas Property Code (state law) to enforce the covenants and restrictions, assessing and collecting funds for the maintenance of the common areas, and utilizing the state's foreclosure laws and procedures. Only when Defendants began selectively enforcing the covenants binding the "Developer," as set forth in Plaintiffs' Complaint, did Plaintiffs began to suspect that something wasn't "kosher," and sought outside substantiation of Defendants' claims as the successor to the Developer, and what legal remedies they might have, thus suspecting that Defendants were not the Developer's successor as alleged, and that the Defendants' actions were contrary to rights provided to the condominium owners' rights under the Texas Uniform Condominium Act and the Texas Condominium Act.    Therefore, until recently, Plaintiffs' "awareness" lacked the first element: that they had actually sustained injury, as the existence of injury in the case at bar is both a question of fact and law. Accordingly, following Federal case law cited herein, Plaintiffs' actions did not accrue until recently, and therefore are not barred by limitations.   Alternatively, even in the most limited of applications once the accrual question is answered by the finder of fact, certain of the Plaintiffs would still have causes of action not barred by limitations for the actions of the Defendants within the minimum two-year period immediately preceding the filing of Plaintiffs' Complaint.  Having raised genuine issues of material fact and law, Defendants are not entitled to summary judgment, as a matter of law, regarding Plaintiffs' 42 U.S.C. § 1983 claims based upon a limitations bar

**[3]  Plaintiffs' Common Law Fraud Claims are barred by Limitations.**

34.    Again, Defendants' argument is based upon the accrual issue: when Plaintiffs knew or should have known.  For the same reasons and arguments presented under **[C] and [C][1] and [C][2]** above, re-asserted and incorporated herein by reference as if set forth verbateim, there are genuine issues of material fact and law as to the accrual issue of when Plaintiffs knew or should have known of the fraud; therefore Defendants are not entitled to summary judgment as a matter of law.

## III.  RESPONSE TO GROUNDS FOR PARTIAL SUMMARY JUDGMENT UPON PARTICULAR CLAIMS:

**[D]  Defendants allege they are entitled to summary judgment upon Plaintiffs' Claims that Defendants violated their civil rights contrary to 42 U.S.C. § 1983 (Complaint Paras. 132-136) on the additional ground that the summary judgment evidence conclusively demonstrates that Defendants conduct was not undertaken under "color of state law" and that in undertaking same Defendants were not "state actors" within the meaning of 42 U.S.C. § 1983:**

> *Every person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ... . 42 U.S.C. 1983 (emphasis added).

35.    It is acknowledged that private misuse of a state statute does not describe conduct attributable to the State, but the procedural scheme created by the statute *is* the product of state action.  Lugar v. Edmondson Oil Co., 457 U.S. 922, 941, 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482 (1982).  Furthermore, the Supreme Court has "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for the purposes of the Fourteenth Amendment." Id.  The rule in such cases states: "Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute.  To act under color" of law does not

CitiPDF - www.fisito.com

require that the accused by an officer of the State.  It is enough that he is a willful participant in

joint activity with the State or its agents."  United States v. Price, 383 U.S. 787, 794, 86 S.Ct.

1152, 1157, 16 L.Ed.2 267 (1966).

36.     Defendants have used the Texas Property Code, together with the state's established

court procedures for the posting of foreclosures and foreclosure sales of certain of the

Defendants' property.  In light of the holdings in Lugar and Price, Defendants have acted "under

color" of state law and have been willful participants in joint activity with the State or its agents

utilizing the procedural scheme created by statute, a product of state action, to foreclose on

certain of the Plaintiffs' property, as well as to threaten others with similar action.  Whether or

not these are permissible actions is a question of whether Defendants are, or are not, the legal

successor to the "Developer."  Plaintiffs have raised issues of both material fact and law on this

key underlying issue, and until such time as the trier of fact makes determinations on the issue,

Defendants are not entitled to summary judgment on the 42 U.S.C. § 1983 claims as a matter of

law.

> **[E]  Defendants allege they are entitled to summary judgment upon all of the claims
> asserted by Plaintiffs Robert Brooks, Walter Plitt, Ankjaer Jensen, Maria Ester
> Soto, Patricia Smith Willis, and Christopher L. Phillippe because the summary
> judgment evidence conclusively demonstrates that all of the claims asserted by such
> Plaintiffs are barred by the Doctrines of _Res Judicata,_ Collateral Estoppel and/or
> Judicial Estoppel:**

37.     Defendants' first Exhibit E-1 is a foreclosure petition brought by Defendants against

Patricia Smith-Willis (hereinafter referred to as "Smith-Willis"); Defendants' second Exhibit

marked E-1 consists of two documents:  a declaratory judgment petition by Plaintiffs Brooks,

Plitt and Jensen (hereinafter referred to as "Brooks, et al"), and a Final Summary Judgment in

that action.  Defendant's first Exhibit E-2 is a Summary Judgment in the foreclosure suit against

Smith-Willis; Defendant's second Exhibit marked E-2 consists of a foreclosure suit brought by

Defendants against Maria Esther Soto (hereinafter referred to as "Soto"), and an Agreed

Judgment in that cause. Defendants' Exhibit E-3 is a bankruptcy petition. Defendants' allegations concern several different causes of action, of varying natures and outcome, which need to be addressed separately rather than lumped together as one.

38.     The preclusive effect of a judgment must be determined according to the law of the jurisdiction that issued the initial judgment. Purcell v. Bellinger, 9420 S.W.2d 599, 601 (Tex. 1997), (applied NY res judicata law to determine preclusive effect of NY judgment); Eagle Props., Ltd. v. Scharbauer, 807 S.W.2d 714, 722 (Tex. 1990)(applied federal collateral estoppel to determine preclusive effect of federal judgment). With the exception of the bankruptcy action, the cases referenced by Defendants are Texas cases; hence Texas law is to be applied regarding the preclusive effect of those judgments.

39.     To invoke collateral estoppel, Defendants herein must establish that: (1) the same facts sought to be litigated in the second suit were fully litigated in the first suit; (2) those facts were essential to the judgment in the first suit; and (3) the parties were cast as adversaries in the first suit. Sysco Food Servs., Inc. v. Trapnell, 890 SW.2d 796, 801 (Tex. 1994); Eagle Props., Ltd. v. Scharbauer, 807 S.W.2d 714, 721 (Tex. 1990.

40.     As to the suit against Plaintiff Soto, the case was settled by agreement. Collateral estoppel applies only if the issue was actually litigated in the earlier proceeding. Johnson & Higgins, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 522-23 (Tex. 1998); Benson v. Wanda Pet. Co., 468 S.W.2d-361, 362 (Tex. 1971). "Actually litigated" means that an issue was raised by the pleadings or otherwise submitted for determination, and was determined by the fact-finder. Rexrode v. Bazar, 937 S.W.2d 614, 617 (Tex.App.—Amarillo 1997, no writ). Therefore there is no res judicata as to Soto (neither claim preclusion nor issue preclusion/collateral estoppel) because not only were different facts involved, there was no litigation of facts or law in the matter.

41.     In the case cited by Defendants, <u>Barr v. RTC</u>, 837 S.W.2d 627 (Tex. 1992), the Texas

Supreme Court adopted the Restatement (2d) of Judgments.  <u>Barr</u> at 631.  Restatement (2d) of

Judgments §28, lists various exceptions to the general rule of issue preclusion, including the

following:

> 3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedure followed in the two courts or by factors relating to the allocation of jurisdiction between them.
>
> 5) There is a clear and convincing need for a new determination of the issue because of … the potential adverse impact of the determination on the public interest or the interests of persons not themselves parties in the initial action;

Restatements (2) Judgments §28.

42.     Both the Soto and the Brooks, et al cases were brought in 1998; the Smith-Willis was

brought in 1999.  None of these cases addressed the two key underlying issues raised in

Plaintiffs' civil RICO complaint: 1) the issue of whether or not Los Campeones is the legal

successor to the Developer (not just the Country Club, which is undisputed but alleged that

Defendants waived their right of enforcement); and 2) the controlling aspect of the Texas

Condominium and the Texas Uniform Condominium Acts as to the condominium owners rights

and alleged violation of those rights, once the Developer dedicated the properties as

condominiums.  These issues were never actually litigated as required under the <u>Rexrode</u> ruling.

Alternatively, the differences in the extensiveness of the prior litigations, which were extremely

limited and of narrow focus, and the clear and convincing need for a determination of these

issues due to the potential adverse impact on the property owners of an entire major subdivision

of Brownsville, Cameron County, who were never parties in the prior actions, warrant an

exception to the general rule of issue preclusion pursuant to <u>Barr</u> and the Restatement (2d)

Judgments §28.  Therefore, summary judgment for Defendants is precluded as to all claims

asserted by Plaintiffs Brooks, Plitt, Jensen, Soto, and Smith-Willis based on the doctrines of *res judicata*, because Plaintiffs have raised genuine issues of material fact and law.

43.     As to the allegation of judicial estoppel and inconsistent positions, the Plaintiffs herein have paid dues to the Country Club because they were due under the Covenants and Restrictions as Los Campeones is the undisputed successor to the Country Club; although Plaintiffs have alleged that Defendants have waived their right of enforcement.  Payment of other fees and assessments has been made under threat of foreclosure as stated in Plaintiffs' Complaint herein. The Brooks, et al suit for declaratory judgment concerned the very limited, narrow issue of how to count votes; it challenged neither the validity of the Restrictive Covenants nor the validity of Los Campeones' claim as the successor to the Developer.  Additionally, the issue of the controlling aspects of the Texas Condominium and Texas Uniform Condominium Acts as to properties dedicated by the Developer as condominiums was never addressed.  For these reasons and the legal arguments set forth in paragraphs 37 through and inclusive of 42, re-asserted and incorporated herein by reference as if set forth verbatim, Defendants are not entitled to summary judgment as to all claims asserted by Plaintiffs Plitt, Brooks, Jensen, Soto, and Smith-Willis based upon judicial estoppel as the summary judgment evidence fails to support such allegation; and in the alternative, Plaintiffs have raised genuine issues of material fact and law on the issue of judicial estoppel.

44.     Defendants' argument that the alleged "failure to disclose all potential causes of action in a bankruptcy proceeding" constitutes judicial estoppel is inappropriate, and Defendants have failed to cite any code or caselaw in support their allegation.  Furthermore, it should be noted that bankruptcy actions deal with debtors (in this case one of the Plaintiffs) and their creditors, and operate as a protective stay in pending actions against the debtor.  Plaintiff Christopher Phillippe, the debtor in the reference bankruptcy action, has sued Defendant, not the other way

around.  It is absurd to assert that a "potential unliquidated asset" constitutes a judicial estoppel.

Furthermore, it should be noted that in the case of I.A. Durbin, Inc. v. Jefferson National Bank,

793 F.2d 1541 (11th Ct. App. 1986), the court held that the Debtor's civil rights action was not

barred under doctrine of res judicata by a bankruptcy proceeding, since the causes of action in

the two proceedings are not the same; and that the civil rights action was not barred by doctrine

of collateral estoppel because the bankruptcy proceeding and the civil rights action did not

involve identical issues. Durbin at 1549-50.  Therefore, Defendants are not entitled to summary

judgment as to all claims asserted by Plaintiff Christopher Phillippe based upon judicial estoppel

or collateral estoppel, as the summary judgment evidence fails to substantiate such a defense.

> **[F]  Defendant Nancy Jeanette Bailey alleges that she is entitled to summary judgment that Plaintiffs take nothing by their claims that she be held liable for the conduct of Los Campeones, Inc., as the alter-ego of Los Campeones, and such Defendant [sic] as well as Defendant Ken Plasterer alleges that they are entitled to summary judgment that they not be held liable or conspiring with Los Campeones, Inc. or among themselves as Officers of Los Campeones, Inc. because the summary judgment evidence conclusively demonstrated that Defendant Nancy Jeanette Bailey was not the alter-ego of Los Campeones, Inc. and that Defendants Bailey and Plasterer, as officers of Los Campeones, Inc. were legally incapable of conspiring with each or with Los Campeones, Inc. to injure the Plaintiffs.**

45.     Plaintiffs reassert the arguments offered herein in the foregoing Paragraph 9, and

incorporate same by reference as if set forth verbatim.

46.     As previously stated, Plaintiffs have not yet been allowed discovery in this cause, due to

the numerous motions to dismiss filed by Defendants and then withdrawn, the change of counsel

and the pending summary judgment motion.  Discovery is crucial to this element of the motion

for summary judgment as only discovery will permit the development of full disclosure of Nancy

Jeanette Bailey's (hereinafter referred to as "Bailey") involvement in the underlying fact scenario

made the basis of this suit.  Plaintiffs allege that Bailey's involvement, first with Brownsville

Savings & Loan Association (the bank entity which foreclosed against VIP and Los Compadres,

the bankruptcy debtors), then with Pat Stanford as owner of Los Campeones, Inc. and Ken

Plasterer, then an employee of Los Campeones, then as the wife of Ken Plasterer (ultimately the

sole shareholder of Los Campeones), is a crucial factual issue as to the issue of control, whether

or not she was ever an actual shareholder, officer or agent of the corporation, or in any other way

involved in any of a multiple of "appropriate circumstances" for disregarding the corporate entity

despite a lack of stock ownership, in basis other than alter ego. Fojtik v. First National Bank of

Beeville, 752 S.W.2d 669, 673 (Tex.App.—Corpus Christi 1988), writ den'd, 775 S.W.2d 632

(Tex. 1989). *See also*, Castleberry v. Bascum, 721 S.W.2d 270, 272 (Tex.1986). There are

numerous bases for disregarding the corporate fiction--alter ego being only one of them. Id. at

272.

47.    Further, Plaintiffs would distinguish the cases cited by Defendants (Stewart & Stevenson

Services, Inc. v. Serv-Tech, Inc.,[3] Lucas v. Texas Industries, Inc.,[4] and Fojtik v. First National

Bank of Beeville[5]) from the case at bar. Both the Stewart and the Lucas cases involved

allegations of alter ego between two corporations. Stewart concerned the allegation that one

competitor corporation was the alter ego of a second corporation. Lucas involved the attempt to

hold a parent corporation liable for the alleged negligence of a subsidiary in the construction of a

concrete beam. In the case at bar we are dealing with the individuals, who at times were the only

shareholders, of corporations and a partnership that went bankrupt only to be bought "allegedly

in whole" by another corporation, allegedly at time solely owned by a single shareholder, as well

as involving an individual who was originally an employee/representative of the debtor bank,

then an employee, perhaps officer of the purchasing corporation at foreclosure, whose future

---

[3]  879 S.W2d 89, 108 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

[4]  696 SW2d 372, 374 (Tex. 1984).

[5]  752 S.W.2d 669, 673 (Tex.App.—Corpus Christi 1988), writ den'd, 775 S.W.2d 632 (Tex. 1989).

husband was first an employee of the purchasing corporation and ultimately the sole shareholder of the purchasing corporation. The case at bar is totally different from the cases cited by Defendants.

48.    While Defendants have correctly cited Fojtik[6] for the proposition that officers of a corporation are, as officers, legally incapable of conspiring among themselves and/or with their corporation, it should be noted that the court in Fojtik agreed with the rules of law but found them inapplicable to the case at bar.  "Fojtik's petition asserts Chesnut was "on the Board of Directors of Defendant Beeville Bank," and was "the owner of an International Harvester dealership-franchise in the Beeville area which was in direct competition with Plaintiff Fojtik." These facts were undisputed at trial. Hence, it is conceivable that Chesnut, if he had in fact conspired with the bank, did so in his capacity not as a corporate agent but as an independent equipment dealer." Fojtik at 673. Therefore by the same application, it is conceivable that Bailey and Plasterer, while possibly corporate agents could have conspired with each other and/or other named parties, not as corporate agents but as independent individuals. Hence, Plaintiffs have raised genuine issues of fact and law, which preclude summary judgment for Defendants on the issues of piercing the corporate veil and alter-ego.

## PRAYER

WHEREFORE, Plaintiffs pray that Defendants' Motion for Summary Judgment be denied as to all counts, as Plaintiffs have raised genuine issues of material fact which preclude summary judgment as a matter of law pursuant to Fed. R. Civ. P. 56 (c) and Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); that Defendants be denied recovery of their attorney's fees incurred in their defense of Plaintiffs' claims and in the preparation and prosecution of their Motion for Summary Judgment; that Defendants be denied recovery of costs

---

[6]  Citing Nelson Radio Supply Co. v. Motorola, 200 F.2d 911, 914 (5th Cir.1952).

of Court; and Plaintiffs further pray for such other and further relief to which they may be

entitled.

RESPECTFULLY SUBMITTED,

_____

Christopher Phillippe
SBOT # 15915400
Christopher Phillippe
Attorney at Law
307-3 McFadden Drive
Brownsville, Texas 78520
(956) 544-6096
(956) 982-1921
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response to Defendants' Motion for Summary Judgment has been served upon: Mr. Norton A. Colvin, Jr. of Rodriguez, Colvin & Chaney, L.L.P., 1201 East Van Buren, P.O. Box 2155, Brownsville, Texas 78522; facsimile: (956) 541-2170; Mr. Ernesto Gamez, Jr. of The Law Offices of Ernest Gamez, Jr. P.C., 777 E. Harrison, Brownsville, Texas 78520-7118; facsimile: (956) 541-7694; and Mr. William A. Faulk, Jr. of Rentfro, Faulk & Blakemore, L.L.P., 185 E. Rube M. Torres, Sr. Blvd., Brownsville, Texas 78520-9135; facsimile: (956) 541-9695, either by facsimile, hand delivery, or certified mail, return receipt requested on this 8th day of June, 2001.

_____

Christopher Phillippe

Case 1:00-cv-00173   Document 31   Filed in TXSD on 06/08/2001   Page 31 of 33

ARTICLES OF INCORPORATION
OF
R. G. VALLEY INN & COUNTRY CLUB, Inc.

Filed in the Office of the
Secretary of State of Texas
2/Sep/1965
Corp. Examiner, Charter Div.

We, the undersigned natural persons of the age of twenty-one or more years, all of whom are citizens of the State of Texas, acting as incorporators of a corporation under the Texas Non-Profit Corporation Act do hereby adopt the following Articles of Incorporation for such corporation:

### ARTICLE I

The name of the corporation is R. G. Valley Inn & Country Club, Inc.

### ARTICLE II

The corporation is a non-profit corporation.

### ARTICLE III

The period of its duration is perpetual.

### ARTICLE IV

The purpose for which the corporation is organized is to operate and maintain a private club and country club for the use and benefit of its membership.

### ARTICLE V

The street address of the initial registered office of the corporation is 2534 Central Boulevard, Brownsville, Texas, and the name of its initial registered agent at such address is Bill D. Bass.

### ARTICLE VI

The number of directors constituting the initial board of directors of the corporation is three and the names and addresses of the persons who are to serve as the initial directors are:

| Name | Address |
|------|---------|
| Dave Cooper | 245 Calle Jacaranda Brownsville, Texas |

Plaintiff's
Exhibit "1"

John W. Darrah, Jr.                        525 Calle Retama
                                           Brownsville, Texas

Fred F. Pilgrim                            75 Calle Jacaranda
                                           Brownsville, Texas

### ARTICLE VII

The name and address of each incorporator is:

| Name | Address |
|------|---------|
| Dave Cooper | 245 Calle Jacaranda<br>Brownsville, Texas |
| John W. Darrah, Jr. | 525 Calle Retama<br>Brownsville, Texas |
| Fred F. Pilgrim | 75 Calle Jacaranda<br>Brownsville, Texas |

### ARTICLE VIII

The corporation shall be operated in accordance with the By-Laws of the corporation and all matters not specifically regulated by the By-Laws shall be governed as the board of directors from time to time may direct.

IN WITNESS WHEREOF, we have hereunto set our hands, this _15th_ day of _December_ , 1965.

_____
Dave Cooper

_____
John W. Darrah, Jr.

_____
Fred F. Pilgrim

-2-

Case 1:00-cv-00173   Document 31   Filed in TXSD on 06/08/2001   Page 33 of 33

THE STATE          TEXAS    [

COUNTY OF CAMERON    [

I, ___DORA H. GUTIERREZ_____ , a Notary Public, do

hereby certify that on this the __15th_ day of December, 1965, personally

appeared _____DAVE COOPER_____ , who, being by me

duly sworn, declared that he is the person who signed the foregoing document

as incorporator and that the statements therein contained are true.

Notary Public, Cameron County, Texas

Dora H. Gutierrez
Notary Public, Cameron County, Texas

My Commission Expires

    June 1, 1967

THE STATE OF TEXAS    [

COUNTY OF CAMERON    [

I, _____TOM CLENDENIN, JR._____ , a Notary Public, do

hereby certify that on this the __16th_ day of December, 1965, personally

appeared _JOHN W. DARRAH, JR.____ and _FRED F. PILGRIM_____ ,

who each being by me first duly sworn, severally declared that they are the

persons who signed the foregoing document as incorporators, and that the

statements therein contained are true.

Notary Public, Cameron County, Texas

My Commission Expires

    June 1, 1967