32

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 1 9 2001

Michael N. Milby
Clerk of Court

ROBERT & GWENDOLYN BROOKS,     §
ALICIA CESPEDES MADRAZO,       §
DAVID & JUDITH CLEMENCE,       §
ELISA P. DeSIUN aka ELISA P. CHAIX, §
SANDRA MADARIA, RONALD L. MANN, §
HECTOR ELIZONDO NAJERA,        §
MARY PEABODY,                  §
WALTER E. PLITT, III,          §
ADOLFO PUMAJERO,               §
JEAN & H. REED SMITH,          §
MARIA ESTHER SOTO,             §
JORGE & BERTHA SUSTAETA,       §
JUAN & MARIA DEL CARMEN CUADRA, §
PAUL & ROSALYN CHILTON,        §      CAUSE NO. B-00-173
JAMES & LORRAINE DEWAR,        §
CARLOS J. FLORES,              §
HUMBERTO RUIZ GARZA,           §
ANKJAER JANSEN,                §
FOREST & ANN JOSTROM,          §
JOHN S. LIGHT, ROBERT LIGHT,   §
JOAQUIN & ANDELIA B. de MADERO, §
NORMAN & ELAINE MEISSNER,      §
CHRISTOPHER L. PHILLIPPE,      §
ILA VIRGINIA PHILLIPPE,        §
MONICA K. PIER, CHARLES &      §
JESSIE RADLIFF, PETE DE LA ROSA, III, §
PATRICIA SMITH-WILLIS,         §
HARRY O. WHITE, JR. and        §
ALLEN & RUTH WOLFE             §
                               §
VS.                            §
                               §
KEN PLASTERER and NANCY JEANETTE §
BAILEY, Each Individually, and LOS §
CAMPEONES, INC., Individually and dba §
VALLEY INN & COUNTRY CLUB      §

**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Defendants Ken Plasterer and Nancy Jeanette Bailey, each

individually, and Los Campeones, Inc., Individually and d/b/a Valley Inn & Country

Club (hereinafter "Defendants"), and file this, their Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment, and in support thereof, would respectfully show the Court as follows:

**[A]** **(1) Defendant Los Campeones is the Lawful Successor to VIP fka VICC and is Lawfully Authorized to Exercise the Rights Complained of; (2) no Right Exercised by Defendants Belonged to RGVICC; and (3) Defendants' Complained-Of Conduct was not Undertaken in Contravention of any Condominium Declaration or in Contravention of the Texas Condominium Act or the Uniform Condominium Act.**

**[A]1: Los Campeones Is the Lawful Successor to VIP fka VICC and Is Lawfully Authorized to Exercise the Rights Complained Of:**

Plaintiffs assert that Los Campeones was not the lawful successor to VIP fka VICC because Los Campeones neither acquired the "common areas" formerly owned by VIP fka VICC nor acquired a controlling interest *in* VIP fka VICC. (Response paras. 4-8, at pp. 4-6). However, the summary judgment evidence as well as Plaintiffs' own admissions demonstrate that the Country Club and some common areas were purchased by Los Campeones at foreclosure *and* that Los Campeones acquired a controlling interest in VIP fka VICC and thereby acquired ownership of any common areas not conveyed to it by Trustee's Deed. (See, Plaintiffs' Complaint, para. 29, at pp. 7 and 8).[1] Plaintiffs' assertions in this regard constitute judicial admissions upon which Defendants had no obligation to offer summary judgment evidence. Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115, 1119 (5th Cir. 1992); Ferguson v. Neighborhood Housing Services, 780 F.2d 549, 551 (6th Cir. 1986); Schott Motorcycle Supply, Inc. v. American Honda Motor Co., 976 F.2d 58, 61 (1st Cir. 1992).

---

[1]    At pages 7 and 8 of their Complaint, Plaintiffs state that: "on June 6, 1977, at foreclosure sale authorized under Chapter 11 Bankruptcy proceedings, Los Campeones, Inc. purchased ... 250,661 shares of the 424,000 outstanding shares [*i.e.*, 59% of the stock] of VIP, which were also purchased by Los Campeones, Inc."

Unless Plaintiffs now seek to take the untenable position that Los Campeones' purchase of 59% of the outstanding shares of VIP fka VICC did *not* constitute its purchase of a controlling interest in that corporation (which, however, it *did*, <u>Walter R. Carrington and Ada Raye Carrington v. Commissioner of Internal Revenue Service</u>, 476 F.2d 704, 709 (5th Cir. 1973); <u>Union Pacific Resources Group, Inc. v. Rhone-Poulenc, Inc.</u>, 247 F.3d 574 (5th Cir. 2001)), the evidence does indeed conclusively demonstrate that Los Campeones' purchase of the property in question, together with a controlling interest in VIP fka VICC, constituted a purchase of all common and other areas of Country Club Estates formerly owned by VIP fka VICC. <u>See, Roadside Stations, Inc. v. 7 HBF, Ltd.</u>, 904 S.W.2d 927, 931 (Tex.App.--Fort Worth 1995, no writ) ("stockholders of corporation are the equitable owners of the assets of the corporation." <u>Id.</u>, at 931).

Los Campeones' purchase of the property formerly owned by VIP fka VICC together with its purchase of a controlling interest *in* VIP fka VICC accordingly vested in Los Campeones the ownership and control of the common areas of Country Club Estates, together with the rights and obligations incident thereto as set forth in the subdivision's Covenants and Restrictions. <u>See</u>, *e.g.*, <u>Musgrave v. Brookhaven Lake Property Owners Association</u>, 990 S.W.2d 386, 396 (Tex.App.--Texarkana 1999, writ den'd).

Moreover, the Bankruptcy Court did indeed recognize Los Campeones as having operated the Valley International Country Club under contract with Brownsville Savings & Loan Association for the benefit of VIP fka VICC since January 20, 1977 (Motion Exhibit A-5, page 2, second paragraph). Furthermore, contrary to Plaintiffs' assertion that the only entity with authority to collect Country Club dues and membership fees under the Covenants and Restrictions was RGVICC (<u>see</u>, Complaint, par. 34, at pp. 8 and 9), the Bankruptcy Court further recognized that all such dues were the property of VIP fka VICC (rather than RGVICC) and were therefore subject to being divided between VIP fka VICC and its creditors. (<u>See</u>, Motion Exhibit A-5, page 5, last

two paragraphs). This case is thus closely analogous to <u>Simms v. Lakewood Village Property Owners Association, Inc.</u>, 895 S.W.2d 779, 785 (Tex.App.--Corpus Christi 1995, no writ) in which, as here, ownership and management of the facilities and common areas in question gave the purchaser authority to fix and collect assessments on the subdivision lots. <u>Id.</u>, at p. 785.

### [A]2: No Right Exercised by Defendants Belonged to RGVICC:

Plaintiffs further assert that RGVICC rather than VIP fka VICC and its successors had the sole right to assess and collect Country Club membership dues because: (a) paragraph 2, pages 12 and 13 of the Covenants and Restrictions grant the developer *and* "the Country Club" an express lien to secure obligations imposed upon lot owners to "the Country Club," and because (b) the "Successors and Assigns" clause on page 3 of the Covenants and Restrictions applies to "RG Valley Inn & Country Club, Inc."as well as to the project's developer, VICC. (Response paragraphs 10 and 11, at page 7).[2]

The obvious problems with Plaintiffs' first such assertion are that (a) as Plaintiffs themselves readily admit, Los Campeones *purchased* the "Country Club"at foreclosure sale, and has, therefore, at all times material been the Record Title owner *of* the Country Club,[3] and that (b) even prior to such purchase, the bankruptcy court recognized that all revenues generated from, *inter alia*, "dues paid by Country Club members ... at Valley International Country Club" were the property of VIP fka VICC -- not RGVICC -- and

---

[2]     Notably lacking is any substantive response to Defendants' alternative assertion that any powers granted to RGVICC reverted to VIP fka VICC upon RGVICC's failure to exercise same. (<u>See</u>, Response paragraph 13, at page 8).

[3]     Indeed, as Plaintiffs readily admit "Plaintiffs have never contested, and do not contest that *Defendants are the successors of VIP fka VICC as to the purchase of the Country Club,* both realty and personalty, or that pursuant to the Covenants and Restrictions, property owners are required to pay a membership or 'social dues' to the Country Club." (Emphasis in original), Response para. 21, at p. 13. As the Successor in Title to "the Country Club" Los Campeones is therefore granted an express lien to secure obligations imposed upon lot owners to "the Country Club" per para. 2, pp. 12 and 13 of the Covenants and Restrictions.

were accordingly subject to being divided between VIP fka VICC and its creditors. (See, Motion Exhibit A-5, page 5, second to last paragraph).

The fact that "RG Valley Inn & Country Club, Inc." is mentioned by name in the "Successors and Assigns" section of the Covenants and Restrictions therefore does nothing to substantiate the Plaintiffs' assertion that RGVICC, rather than VIP fka VICC, had the sole authority to collect Country Club fees and dues, and takes nothing from the fact that Los Campeones, as the purchaser of the Country Club at foreclosure sale, has a right to collect such fees and dues and to enforce the payment of same.

### [A]3: Defendants' Complained-of Conduct was not Undertaken in Violation of Any Condominium Declaration or in Contravention of the Texas Condominium Act or the Uniform Condominium Act:

Plaintiffs' attempt to twist Defendants' assertion that Defendants' complained-of conduct was undertaken by authority of the Covenants and Restrictions rather than the Condominium Declarations (which were and are subject to the Covenants and Restrictions) into an "admission" that Defendants "ignored" the Condominium Declarations is disingenuous. Defendants' position was and is, rather, that the source of Los Campeones' authority and obligation to undertake the conduct which has been complained of in this lawsuit is found in the Covenants and Restrictions themselves, and that the Condominium Declarations in question did not in any manner alter or diminish Los Campeones' authority and obligation to undertake precisely those tasks which Defendants have been accused of undertaking in the instant case. Nothing in the Condominium Declarations altered or diminished the obligation of VIP fka VICC and its successors and assigns to "administer all areas within the subdivision designated ... for the common use, enjoyment and benefit of the lot owners," or their authority to "levy, collect, expend and have charge of the maintenance charge" for such purposes. (See, Exhibit A-1, paragraph 2, at page 4).

Alma Investments, Inc. v. Bahia Mar Co-Owners Association, 999 S.W.2d 820, 824-825 (Tex.App.--Corpus Christi 1999, writ den'd), and the portions of the Texas Uniform Condominium Act cited by Plaintiffs are, therefore, inapposite to this controversy.   Nothing in Alma or the cited provisions of the Texas Uniform Condominium Act or the Texas Condominium Act give the slightest indication that Condominium Declarations, which are subject to existing recorded subdivision Covenants and Restrictions, in any manner supersede, diminish or alter the rights and obligations of the developer as set forth in such covenants and restrictions.   On the contrary, see, Tex. Property Code. § 82.006 ("a ... subdivision ... regulation may not prohibit the condominium form of ownership or impose any requirement on a condominium that it would not impose on a physically identical development .... *Otherwise, this chapter does not invalidate or modify any provision of any ... subdivision ... regulation.*" Emphasis supplied).   See, also, Inwood North Homeowners' Association v. Harris, 736 S.W.2d 632, 635 (Tex. 1987) (all purchasers are bound by the terms of *all* instruments in their chain of title, including subdivision covenants and restrictions); Musgrave v. Brookhaven Lake Property Owners Ass'n , 990 S.W.2d 386, 396 (Tex.App.--Texarkana 1999, pet. den'd); Nieman-Marcus Co. v. Hexter, 412 S.W.2d 915, 919 (Tex.Civ.App.--Dallas 1967, writ ref'd n.r.e.).

    **[B]    Waiver, Ratification and Estoppel:**

        **[1]    Waiver/Ratification:**

        Plaintiffs' assertion that they neither waived any right to complain of nor ratified Los Campeones' conduct is founded upon the propositions that (a) Plaintiffs paid the assessments in question "under protest and threat of foreclosure" (Response, paragraph 24, at page 15), and that, in doing so, they (b) had no knowledge of all material facts and therefore gave no "informed" consent to Los Campeones' actions.   (Response, paragraph 24, at pages 15 and 16).   Both such assertions are meritless.

CutePDF - www.Fenrir.com

The first (that Plaintiffs paid their assessments "under protest and threat of foreclosure") encounters two insurmountable obstacles: *first*, although it is undisputed that Plaintiffs have *paid* such assessments for many years (see, *e.g.*, Complaint paras. 35, 52; Motion Exhibit A-7, pp. 2-4, and Exhibit A-7-a), no summary judgment evidence has been adduced to support Plaintiffs' assertion that any (nor, *a fortiori*, that *all*) such assessments were paid "under protest and threat of foreclosure" (except in the generic sense that where a right of foreclosure exists *all* payments are *ipso facto* made under "threat" of foreclosure); and, *second*, Plaintiffs' asserted right to reap the *benefits* of Los Campeones' maintenance and other *obligations* under the Covenants and Restrictions (per, *e.g.*, their Complaint at paras. 158 and 159) constitutes a *non*-coerced and *fully* informed ratification of the Covenants and Restrictions' applicability to Los Campeones. See, Old Republic Ins. Co., Inc. v. Fuller, 919 S.W.2d 726, 728-729 (Tex.App.--Texarkana 1996, writ den'd); U.S. Fire Ins. Co. v. Stricklin, 556 S.W.2d 575, 579 (Tex.Civ.App.--Dallas 1977, writ ref'd n.r.e. at 565 S.W.2d 43 (Tex. 1978); Ziegler v. Southwest Film Laboratory, Inc., 351 S.W.2d 636, 641 (Tex.Civ.App.--Texarkana 1961, writ ref'd n.r.e.); Port Iron & Supply Co. v. Casualty Underwriters, 118 S.W.2d 625, 627 (Tex.Civ.App.--Dallas 1938, no writ); American Surety Co. of New York v. Martinez, 73 S.W.2d 109, 113 (Tex.Civ.App.--El Paso 1934, writ ref'd).

Likewise, Plaintiffs' *second* assertion (that their payment of the assessments was without knowledge of Los Campeones' alleged non-authority to enforce the Covenants and Restrictions) encounters two insurmountable obstacles, the *first* being that Plaintiffs, despite having at all times been on actual notice of the Covenants and Restrictions' provisions[4] have produced no summary judgment evidence that they were individually unaware of the alleged non-applicability of same to Los Campeones (cf. Simms, at pp.

---

[4]     See, Musgrave v. Brookhaven Lake Property Owners Association, 990 S.W.2d at 396 (deeds reciting that conveyances are subject to restrictive covenants give purchasers constructive knowledge of the contents of such covenants); Heci Exploration Co. v. Neel, 982 S.W.2d 881, 887 (Tex. 1998) (constructive notice creates an irrefutable presumption of actual notice).

784 and 785), and the *second* being that Plaintiffs, once again, *also* ratified the applicability of the Covenants and Restrictions to Los Campeones by affirmatively suing to *enforce* Los Campeones' obligations thereunder (see, Complaint, at paras. 158, 159). Old Republic Insurance Co., Inc., 919 S.W.2d at 728-729; U.S. Fire Ins. Co., 556 S.W.2d at 579; Ziegler, 351 S.W.2d at 641; Port Iron & Supply Co., 118 S.W.2d at 627; American Surety, 73 S.W.2d at 113.

### [2]  Estoppel:

Plaintiffs now attempt to distinguish between those Covenants and Restrictions which are applicable to the Country Club and those which are applicable to other portions of Country Club Estates by stating that they have never "generally denied Defendants' rights, *as successors to the Country Club,* to enforce the Covenants and Restrictions as applicable to the Country Club," while presumably denying Defendants' right to enforce the covenants and restrictions as to *other* portions of Country Club Estates and denying that they have ever tried to "have it both ways" with regard to such other portions by taking advantage of the Defendants' *obligations* with regard thereto. (Response, para. 26, at p. 16).

In fact, however, Plaintiffs' attempt to "have it both ways" extends to the *other* portions of the Country Club Estates Subdivision *as well as* to the Country Club, as is evidenced by the fact that Plaintiffs *also* sought to enforce those portions of the Covenants and Restrictions requiring Defendants' to "*properly*" and "*adequately*" maintain subdivision roads (Complaint, para. 158); requiring them to "*properly*" re-surface such roads (id.); requiring them to "*adequately*" maintain other Country Club Estates facilities (id.); and requiring them to not "permit" the dumping of waste into the Subdivision's resacas. (Complaint, para. 159). By insisting and by having heretofore insisted upon, *e.g.*, their right to the "*proper*" and the "*adequate*" maintenance of the Subdivision's private roads, and to the "*proper*" re-surfacing of same, the Plaintiffs are equitably estopped to deny Los Campeones' concomitant right to charge those

maintenance fees necessary to the "proper" and "adequate" undertaking of such tasks. (See, authorities cited in Defendants' Original Motion).

Furthermore, in light of their having sued to *enforce* such obligations (Complaint paras. 158 and 159), Plaintiffs' assertion that their payments to Los Campeones for the repairing and resurfacing of roadways and parking lots at Country Club Estates did *not* constitute a recognition of Los Campeones' responsibility to undertake such tasks (Response para. 7, at p. 5) is spurious.

### [C]  Limitations:

#### [1]  Plaintiffs' RICO Claims Are Barred by Limitations:

Klehr v. A.O. Smith Corp., 521 U.S. 179, 117 S.Ct. 1984, 1989-1994 (1997) and Roetella v. Wood, 528 U.S. 549, 120 S.Ct. 1075 (2000) the Supreme Court did *not* hold that the "last predicate act" rule applies in RICO cases, but, instead, held that "the plaintiff can*not* use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." Klehr, 117 S.Ct. at 1991; Roetella, 120 S.Ct. at p. 1080.  Neither did the Supreme Court adopt the "separate accrual" rule which would permit recovery for those injuries resulting from "new predicate acts" occurring within the four year limitations period.  Id.  At the very least, therefore, all of the Plaintiffs' RICO claims which rest upon injuries alleged to have resulted from conduct occurring more than four year prior to the filing of their Complaint are barred by limitations. Id.

In addition, moreover, nothing in either Klehr or Roetella indicates that, under the facts of this case, the "separate accrual" rule should apply permitting Plaintiffs recovery for alleged "injuries" resulting from conduct occurring *within* the four-year period.  In this connection, the Court will note that the concept of "injury" put forward by Plaintiffs in their Complaint and Response is unique and patently non-suited to the "separate accrual" rule.  With the exception of paras. 158 and 159 of their Complaint, Plaintiffs "injury" is alleged to have consisted of the mere fact that the Developer's

rights *and* obligations under the Covenants and Restrictions were allegedly exercised and performed by persons *other than* the developer's lawful "successor." Since it is *undisputed* that Los Campeones at least *attempted* to undertake the developer's *obligations* set forth in the Covenants and Restrictions *as well as* exercising the developer's *rights* with respect to the assessment and collection of maintenance fees and Country Club dues, the gist of Plaintiffs' Complaint (other than paras. 158 and 159 thereof) is *not* that Plaintiffs failed to receive full value for their payment of such fees and dues through their use of the said facilities, roadways and common areas, but is instead merely that the *performance* of those services and the collection of those fees and dues was undertaken by persons who were not the lawful "successor" to the project's original Developer. In addition to the fact that assertions such as these stretch the concept of "injury" beyond the breaking point,[5] they also manifestly allege the existence of the kind of single, indivisible "injury" to which the "separate accrual" rule does *not* apply.

Defendants would therefore respectfully submit that the "separate accrual" rule should *not* apply here, and that *all* of the Plaintiffs' RICO claims are barred by the four year statute of limitations because their sole alleged "injury" occurred more than four years prior to the filing of their Complaint.

### [2]    Plaintiffs' 42 U.S.C. § 1983 Claims are Barred by Limitations:

Plaintiffs' attempt to avoid limitations as to their § 1983 claims rests entirely upon their alleged non-awareness of their "injury" due to the fact that they

---

[5]    Covenants and Restrictions are *contracts* (Ostrowski v. Ivanhoe Property Owners Improvement Association, Inc., 38 S.W.3d 248, 252 (Tex.App.--Texarkana 2001, no writ); Herbert v. Polly Ranch Homeowners Association, 943 S.W.2d 906, 908 (Tex.App.--Houston [1st Dist.] 1996, no writ)), whose performance by persons other than those contractually obligated to perform same is therefore *not* actionable, since, unless otherwise limited, the rights and obligations of contracting parties are freely assignable and freely assumable. See, Crim Truck & Tractor Co. v. Navistar International Transp. Corp., 823 S.W.2d 591, 596 (Tex. 1992). See, also, Tex. Bus. & Comm. Code § 2.210(a).

were until recently unaware that Defendants allegedly had no rights or obligations (as the successors to VIP fka VICC) under the Covenants and Restrictions. This "unawareness of injury" argument, however, again faces two insurmountable obstacles: *first*, *all* of the facts relating to Defendants' (specifically, Los Campeones') status (or alleged non-status) as the Successor-in-Title to VIP fka VICC are matters of public record and are therefore facts of which Plaintiffs are presumed to have been *actually* aware (Musgrave, supra, at 396; Heci Exploration, supra, at 887), and, *second*, Plaintiffs have, again, stretched the concept of "injury" beyond the breaking point by asserting that their "injury" consists of the fact that the developer's rights *and* obligations under the Covenants and Restrictions were allegedly being exercised and performed by an entity *other than* the developer's lawful "successor." Crim Truck & Tractor v. Navistar, 823 S.W.2d at 597; Tex. Bus. & Comm. Code § 2.210(a).

### [3] Plaintiffs' Common Law Fraud Claims are Barred by Limitations:

For the reasons set forth at pp. 11-13, supra, Plaintiffs' Response to Defendants' assertion that Plaintiffs' common law fraud claims are barred by limitations is meritless.

### [D] Defendants are Entitled to Summary Judgment Upon Plaintiffs' 42 U.S.C. § 1983 Claims on the Additional Ground that the Summary Judgment Evidence Conclusively Demonstrates that Defendants' Conduct was not Undertaken Under "Color of State Law" and that Defendants were not "State Actors" Within the Meaning of 42 U.S.C. § 1983:

Plaintiffs' construction of Lueger v. Edmundson Oil Co., 457 U.S. 922, 941 102 S.Ct. 2744, 2756, 73 L.Ed.2d 482, 1982) and United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966) stretches credulity. Under Plaintiffs' interpretation of those holdings, all Trustees and secured creditors enforcing mortgages through the process of non-judicial foreclosure would be considered "state

actors" and *all* wrongful foreclosures would give rise to claims under 42 U.S.C. § 1983 since all such persons would, according to Plaintiffs, be "jointly engaged with state officials" and acting pursuant to state law in undertaking such foreclosures. 42 U.S.C. § 1983 does not stretch that far. In such situations, as in the instant case, the parties undertaking such conduct are *not* so connected with the state that their actions are deemed to be those *of* the state. See, Landry, supra, at 203-204. Defendants are accordingly entitled to summary judgment that Plaintiffs take nothing by their claims under 42 U.S.C. § 1983.

[E]   **The Summary Judgment Evidence Conclusively Demonstrates that all of the Claims Asserted by Plaintiffs Robert Brooks, Walter Plitt, Ankjaer Jensen, Maria Ester Soto, Patricia Smith Willis, and Christopher L. Phillippe are Barred by the Doctrines of *Res Judicata*, Collateral Estoppel and/or Judicial Estoppel:**

Defendants' Reply to Plaintiffs' Response upon the issues of *res judicata*, collateral estoppel and/or judicial estoppel will be forthcoming in detail at the submission of Defendants' Motion.

[F]   **Defendant Nancy Jeanette Bailey Cannot be Held Liable As the Alter Ego of Los Campeones, and she as well as Defendant Ken Plasterer cannot be Held Liable for Conspiring with Los Campeones, Inc. or Among Themselves Because Nancy Jeanette Bailey was not the Alter Ego of Los Campeones and Defendants Bailey and Plasterer were Legally Incapable of Conspiring with Each Other or With Los Campeones, Inc. to Injure the Plaintiffs:**

Plaintiffs make two responses to Defendant Nancy Jeanette Bailey's request for summary judgment -- *i.e.*, that discovery might reveal a basis for holding Ms. Bailey liable for Los Campeones' alleged wrongful conduct *other than* on the ground that she was the corporation's alter ego (Response para. 46, at pp. 27 and 28), and, *second*, that the Court's holdings in cases such as Stewart & Stevenson

Services, Inc. v. Serv-Tech, Inc., 879 S.W.2d 89, 108 (Tex.App.--Houston [14th Dist.] 1994, writ den'd) and Lucas v. Texas Industries, Inc., 696 S.W.2d 372, 374 (Tex. 1984) (that, in order to pierce the corporate veil on "alter-ego" grounds, financial interest, ownership and control over the corporation must be shown) are inapplicable to the circumstances of this case. (Response para. 47, at pp. 28 and 29).

In response to the first such assertion, Defendant Bailey would respectfully show that Plaintiffs have not *pled* any basis for piercing the corporate veil of Los Campeones *other than* their alter ego assertion (see, Complaint paras. 41 and 42) and, in response to the second such assertion, Defendant Bailey would respectfully show that none of the circumstances of the instant case alluded to by Plaintiffs has the least relevance to the principle articulated in cases such as Stewart and Lucas that financial interest, ownership and control *over the very corporation whose veil is sought to be pierced* must be shown where the "alter-ego" doctrine is used as the basis for piercing that veil. See, Stewart, at p. 108; Lucas, at p. 374. Here, the unrefuted summary judgment evidence demonstrates that "at no time [did] Nancy Jeanette Bailey own stock, must less a controlling interest, in Los Campeones, Inc., and at no time [did] she in any other manner exercise financial or other control over Los Campeones, Inc." Motion Exhibit A, at p. 5. Plaintiffs' having failed to refute such evidence, Defendant Bailey is entitled to summary judgment that Plaintiffs take nothing by their claims that she be held liable for the conduct, if any, of Los Campeones, Inc.

Finally, Plaintiffs' only attempt to avoid summary judgment upon their conspiracy claims against Defendants Bailey and Plasterer consists of the assertion that "it is conceivable" that Bailey and Plasterer conspired, "not as corporate agents but as independent individuals." (Response para. 48, at p. 29). Such attempt, yet again, falls far wide of the mark because the cited-to distinguishing feature noted in Fojtik -- *i.e.*, that the individual defendant in question was the *owner* of a dealership-franchise and may have conspired in that capacity rather than as agent for the corporation -- is not

present here. Plaintiffs have not alleged that Defendants Bailey *or* Plasterer were the owners of other entities which are alleged to have participated in any wrongful or actionable conduct whatever, and the only agency relationship which is alleged to have played any role in their allegedly actionable conduct in the instant case is that between themselves and Los Campeones, Inc. Because, as a matter of law, officers of a corporation are legally incapable of conspiring among themselves and/or with their corporation, Defendants Bailey and Plasterer are therefore entitled to summary judgment that Plaintiffs take nothing by their claims that they, as officers of Los Campeones, Inc., conspired among themselves and with Los Campeones, Inc. to injure the Plaintiffs.

## PRAYER

WHEREFORE, Defendants pray that this Motion be GRANTED, and that, pursuant thereto, they receive Summary Judgment that Plaintiffs take nothing by their claims herein; alternatively, Defendants pray that they receive partial Summary Judgment that Plaintiffs take nothing by those of their claims which are subject to summary disposition pursuant to this Motion. Defendants further pray that they recover their attorneys fees incurred in their defense of Plaintiffs' claims and in the preparation and prosecution of this Motion, and that they recover costs of Court and such other and further relief to which they may be entitled.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.


By: _____
     Norton A. Colvin, Jr. By Permission
     Federal Admissions No. 1941
     State Bar No. 04632100
     1201 East Van Buren
     P. O. Box 2155
     Brownsville, Texas  78522
     Tel: (956) 542-7441
     Fax: (956) 541-2170

     ATTORNEYS FOR DEFENDANT
     LOS CAMPEONES, INC.


LAW OFFICES OF ERNEST GAMEZ, P.C.

By: _____
     Ernesto Gamez, Jr. By Permission
     Federal Admissions No. 8645
     State Bar No. 07606600
     777 E. Harrison
     Brownsville, Texas  78520-7118
     Tel: (956) 541-3820
     Fax: (956) 541-7694

     ATTORNEYS FOR DEFENDANT
     NANCY JEANETTE BAILEY

RENTFRO, FAULK & BLAKEMORE, L.L.P.

By: _William A. Faulk Jr._ B. Permission
    William A. Faulk, Jr.
    Federal Bar No. 5944
    State Bar No. 06855000
    Roman "Dino" Esparza
    Federal Bar No. 22703
    State Bar No. 00795337
    185 E. Ruben M. Torres, Sr. Blvd.
    Brownsville, Texas  78520-9136
    Tel: (956) 541-9600
    Fax: (956) 541-9695

    ATTORNEYS FOR DEFENDANT
    KEN PLASTERER

OF COUNSEL:

NORQUEST & BRISACK, L.L.P.

Neil E. Norquest
State Bar No. 15088500
Chris A. Brisack
State Bar No. 03008030
4900 North 10th Street, Bldg. A-2
McAllen, Texas 78504
Tel: (956) 682-3195
Fax: (956) 682-6693

<u>CERTIFICATE OF SERVICE</u>

    I certify that on 19th day of June, 2001, a true and correct copy of the foregoing Defendants' Reply to Plaintiffs' Response to Defendants' Motion for Summary Judgment was faxed and mailed via Certified Mail, R.R.R., to:

    Mr. Christopher Lee Phillippe
    307-3 McFadden Dr.
    Brownsville, Texas  78520

    _Norton A. Colvin Jr._
    Norton A. Colvin, Jr.