

# COPY

United States District Court
Southern District of Texas
FILED

OCT 22 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ROBERT & GWENDOLYN BROOKS | § |
| ALICIA CESPEDES MADRAZO, | § |
| DAVID & JUDITH CLEMENCE | § |
| ELISA P. DeSIUN aka ELISA P. CHAIX, | § |
| SANDRA MADARIA, RONALD L. MANN | § |
| HECTOR ELIZONDO NAJERA, | § |
| MARY PEABODY, | § |
| WALTER E. PLITT, III, | § |
| ADOLFO PUMAJERO, | § |
| JEAN & H. REED SMITH | § |
| MARIA ESTHER SOTO, | § |
| JORGE & BERTHA SUSTAETA, | § |
| JUAN & MARIA DEL CARMEN CUADRA | § |
| PAUL & ROSALYN CHILTON, | § **CIVIL NO. B-00-173** |
| JAMES & LORRAINE DEWAR, | § |
| CARLOS J. FLORES | § |
| HUMBERTO RUIZ GARZA, | § |
| ANKJAER JANSEN, | § |
| FOREST & ANN JOSTROM, | § |
| JOHN S. LIGHT, ROBERT LIGHT, | § |
| JOAQUIN & ANDELIA B. de MADERO, | § |
| NORMAN & ELAINE MEISSNER, | § |
| CHRISTOPHER L. PHILLIPPE, | § |
| ILA VIRGINIA PHILLIPPE, | § |
| MONICA K. PIER, CHARLES & | § |
| JESSIE RADLIFF, PETER DE LA ROSA, III | § |
| PATRICIA SMITH-WILLIS, | § |
| HARRY O. WHITE, JR., and | § |
| ALLEN & RUTH WOLFE | § |
| | § |
| VS. | § |
| | § |
| KEN PLASTERER and NANCY JEANETTE | § |
| BAILEY, Each Individually, and LOS | § |
| CAMPEONES, INC., Individually and dba | § |
| VALLEY INN & COUNTRY CLUB | § |

## DEFENDANTS' MOTION TO SUPPLEMENT
## SUMMARY JUDGMENT EVIDENCE

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW KEN PLASTERER and NANCY JEANETTE BAILEY, each Individually, and LOS CAMPEONES, INC., Individually and dba VALLEY INN & COUNTRY CLUB, Defendants in the above entitled cause (hereinafter referred to as "Defendants"), and, pursuant to Fed. R. Civ. P. 56, file their Motion to Supplement

Summary Judgment Evidence, and in support thereof, would respectfully show the Court as follows:

1.      On April 2, 2001 Defendants filed their Motion for Summary Judgment, requesting that this Court grant summary judgment in favor of Defendants. Defendants request leave of Court to supplement their summary judgment evidence previously filed with the Court. The additional summary judgment evidence includes the following:

Exhibit "A"        Plaintiffs' Original Petition for Declaratory Judgment

Exhibit "B"        Plaintiffs' First Amended Petition for Declaratory Judgment

Exhibit "C"        Plaintiff's Motion for Summary Judgment on Petition for Declaratory Judgment

Exhibit "D"        Letter Ruling dated September 21, 2001 from the Honorable Benajamin Euresti, Jr., Presiding Judge of the 107th Judicial District Court granting Plaintiffs' Motion for Summary Judgment.

2.      Defendants would further show that Plaintiffs are aware of these Exhibits and are not prejudiced by this supplementation.

WHEREFORE, PREMISES CONSIDERED, Defendants request that the Court grant this motion, allowing Defendants to supplement the evidence presented in support of their Motion for Summary Judgment, and for such other and further relief to which Defendants may show themselves justly entitled to receive.

Respectfully submitted,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

By: _____
      Norton A. Colvin, Jr.
Federal Admissions No. 1941
State Bar No. 04632100
1201 East Van Buren
P. O. Box 2155
Brownsville, Texas 78522
Tel: (956) 542-7441
Fax: (956) 541-2170

ATTORNEYS FOR DEFENDANT
LOS CAMPEONES, INC.


      Ernesto Gamez, Jr.
Federal Admissions No. 8645
State Bar No. 07606600
LAW OFFICES OF ERNESTO GAMEZ, P.C.
777 East. Harrison Street
Brownsville, Texas 78520-7118
Tel: (956) 541-3820
Fax: (956) 541-7694

ATTORNEYS FOR DEFENDANT, NANCY
JEANETTE BAILEY


      William A. Faulk, Jr.
Federal Bar No. 5944
State Bar No. 06855000
      Roman "Dino" Esparza
Federal Bar No. 22703
State Bar No. 00795337
RENTFRO, FAULK & BLAKEMORE, L.L.P.
185 E. Ruben M. Torres, Sr. Blvd.
Brownsville, Texas  78520-9136
Tel: (956) 541-9600
Fax: (956) 541-9695

ATTORNEYS FOR DEFENDANT,
KEN PLASTERER

OF COUNSEL:

NORQUEST & BRISACK, L.L.P.

Neil E. Norquest
State Bar No. 15088500
Chris A. Brisack
State Bar No. 03008030
4900 North 10th Street, Bldg. A-2
McAllen, Texas 78504
Tel: (956) 682-3195
Fax: (956) 682-6693

## CERTIFICATE OF CONFERENCE

In compliance with Local Rules, movant swears that he conferred by telephone with opposing counsel on October 22, 2001, and that counsel for Plaintiff is opposed to the relief sought in this motion.

_____
Norton A. Colvin, Jr.

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of October, 2001, a true and correct copy of the foregoing was mailed to all counsel of record, to-wit:

Christopher Lee Phillippe
307-3 McFadden Dr.
Brownsville, Texas 78520
Attorney for Plaintiffs

via facsimile transmission, hand delivery, and/or certified mail pursuant to the Federal Rules of Civil Procedure.

_____
Norton A. Colvin, Jr.

*DEFENDANTS' MOTION TO SUPPLEMENT SUMMARY JUDGMENT EVIDENCE*                    *PAGE 4*

CitiPDF – www.fastio.com

12/22/1998   10:58     210 J821J0J-J41IJJJ         LAW OFFICE/LEGAL SUP                    PAGE  02

CAUSE NO. 98-11-4579-C

| | | |
|---|---|---|
| WALTER PLITT, III, ROBERT C. | § | IN THE 197th JUDICIAL |
| BROOKS, and ANKJAER JENSEN, | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| LOS CAMPEONES, INC., | § | |
| Defendant | § | CAMERON COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION FOR
## DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, WALTER PLITT, III, ROBERT C. BROOKS, and ANKJAER JENSEN, Plaintiffs, and petition the Court pursuant to the Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code, for a determination of construction of the rights and legal relations between the Plaintiffs and LOS CAMPEONES, INC., the Defendant, pertaining to the "Covenants and Restrictions of Country Club Estates".

I.

Plaintiffs, WALTER PLITT, III, ROBERT C. BROOKS, and ANKJAER JENSEN, are individuals who own real property that restricted residential subdivision know as Country Club Estates, in Cameron County, Texas. The party having an interest made the matter of this action is LOS CAMPEONES, INC., hereinafter called Defendant, a Texas Corporation, and may be served with citation by serving its registered agent for service of process, Mr. Ken Plasterer, at the corporation's registered office at Highway 77 and F.M. 802, Brownsville, Texas 78520.

II.

Plaintiffs are individuals who own real property that

**EXHIBIT**

A

restricted residential subdivision know as Country Club Estates,
in Cameron County, Texas. The real property which the Plaintiffs
own is subject to certain restrictive covenants, which are
contained in the following documents: "Covenants and
Restrictions", located at Volume 793, Pages 691-711; "Covenants
and Restrictions of Country Club Estates, Sections 4, 5, 6, 7,
7A, 8, 8A, 8B, 8C, 9, 9A, 13 and 100", located at Volume 870,
Pages 140-157 of the Deed Records of Cameron County, Texas; and,
an untitled document, located at Volume 61, Pages 423-425 of the
Miscellaneous Deed Records of Cameron County, Texas.

III.

Upon information and belief, the Defendant, Los Campeones,
Inc., is a successor to R.G. Valley Inn & Country Club, Inc.,
which was the entity originally charged, in the restrictive
covenants, with the duties of administering the affairs, business
operation and maintenance of the Country Club. Accordingly,
Defendant, Los Campeones, Inc., has an interest in the matter
made the subject of this suit.

IV.

The aforementioned restrictive covenants were signed on
September 30, 1965, April 1, 1969, and December 1, 1969,
respectively. The restrictive covenants all contain the following
language:

"Upon the expiration of twenty-five years from date of
execution of this instrument, the owners of a majority of the
lots within the Subdivision may execute and acknowledge an
agreement in writing terminating, modifying, or revising these
restrictions and covenants and file same in the office of the
County Clerk of Cameron County, Texas; thereafter said covenants
and restrictions shall be null and void, or be modified or
revised in such agreement."

V.

The Plaintiffs herein seek to obtain the consent of a
sufficient number of property owners to terminate, modify or
revise the restrictive covenants, however, Plaintiffs are faced
with ambiguous language in that section of the covenants which
prescribes the process for doing so. The restrictive covenants
state that the owners of a majority of the "lots" within the
subdivision must agree to terminate or revise the covenants. The
restrictive covenants do not contemplate that multiple dwelling
units may be constructed on a single lot, but rather the
restrictive covenants state: "All lots in the Subdivision and
improvements thereon shall be used for single family residential
purposes, and for no other purpose." Further, nowhere in the
restrictive covenants are the rights of "unit owners" defined.
However, the Defendant has permitted multiple dwelling units to
be constructed on certain lots. Additionally, the Defendant has
continuously created all "unit owners" as if they were "lot
owners" under the restrictive covenants. Plaintiffs, therefore,
contend that a majority of "unit owners" is all that is necessary
to revise or modify the restrictive covenants.

VI.

Plaintiffs request that this Court declare that in order for
the Plaintiffs, or any other property owners subject to the
restrictive covenants, to revise or terminate the restrictive
covenants, only of a majority of the unit owners within the
Subdivision need execute an agreement terminating, modifying, or
revising these restrictions and covenants.

WHEREFORE, Plaintiffs request that the Defendant be cited to appear and answer herein, and that on final hearing, Plaintiffs have judgment as follow:

1.   A declaration that the restrictive covenants which are the subject of this suit may be revised or terminated through the agreement of a majority of the unit owners within the subdivision which are subject to the covenants;

2.   Costs of Court; and,

3.   Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

Rene B. Gonzalez
Attorney at Law
P.O. Box 5134
Brownsville, Texas 78523-5134
Telephone: 956/544-2370
Facsimile: 956/982-1909
State Bar No. 08131380
Cameron County I.D. 278301

ATTORNEY FOR PLAINTIFFS

CbibPDF - www.fastio.com

CAUSE NO. 98-11-4579-C

| | | |
|---|---|---|
| WALTER PLITT, III, ROBERT C. | § | IN THE 197TH JUDICIAL |
| BROOKS, and ANKJAER JENSEN, | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | DISTRICT COURT OF |
| | § | |
| LOS CAMPEONES, INC., | § | |
| Defendant | § | CAMERON COUNTY, TEXAS |

PLAINTIFFS' FIRST AMENDED PETITION FOR
DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, WALTER PLITT, III, ROBERT C. BROOKS, and ANKJAER

JENSEN, Plaintiffs, and petition the Court pursuant to the

Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil

Practice and Remedies Code, for a determination of construction

of the rights and legal relations between the Plaintiffs and LOS

CAMPEONES, INC., the Defendant, pertaining to the "Covenants and

Restrictions of Country Club Estates".

I.

Plaintiffs, WALTER PLITT, III, ROBERT C. BROOKS, and ANKJAER

JENSEN, are individuals who own real property that restricted

residential subdivision know as Country Club Estates, in Cameron

County, Texas. The party having an interest made the matter of

this action is LOS CAMPEONES, INC., hereinafter called Defendant,

a Texas Corporation, and may be served with citation by serving

its registered agent for service of process, Mr. Ken Plasterer,

at the corporation's registered office at Highway 77 and F M.

802, Brownsville, Texas 78520

II.

Plaintiffs are individuals who own real property that

**EXHIBIT**

**B**

restricted residential subdivision know as Country Club Estates,
in Cameron County, Texas. The real property which the Plaintiffs
own is subject to certain restrictive covenants, which are
contained in the following documents: "Covenants and
Restrictions", located at Volume 793, Pages 691-711; "Covenants
and Restrictions of Country Club Estates, Sections 4, 5, 6, 7,
7A, 8, 8A, 8B, 8C, 9, 9A, 13 and 100", located at Volume 870,
Pages 140-157 of the Deed Records of Cameron County, Texas; and,
an untitled document, located at Volume 61, Pages 423-425 of the
Miscellaneous Deed Records of Cameron County, Texas.

III.

Upon information and belief, the Defendant, Los Campeones,
Inc., is a successor to R.G. Valley Inn & Country Club, Inc.,
which was the entity originally charged, in the restrictive
covenants, with the duties of administering the affairs, business
operation and maintenance of the Country Club. Accordingly,
Defendant, Los Campeones, Inc., has an interest in the matter
made the subject of this suit.

IV.

The aforementioned restrictive covenants were signed on
September 30, 1965, April 1, 1969, and December 1, 1969,
respectively. The restrictive covenants all contain the following
language:

"Upon the expiration of twenty-five years from date of
execution of this instrument, the owners of a majority of the
lots within the Subdivision may execute and acknowledge an
agreement in writing terminating, modifying, or revising these
restrictions and covenants and file same in the office of the
County Clerk of Cameron County, Texas; thereafter said covenants
and restrictions shall be null and void, or be modified or
revised in such agreement."

V.

The Plaintiffs herein seek to obtain the consent of a sufficient number of property owners to terminate, modify or revise the restrictive covenants, however, Plaintiffs are faced with ambiguous language in that section of the covenants which prescribes the process for doing so. The restrictive covenants state that the owners of a majority of the "lots" within the subdivision must agree to terminate or revise the covenants. The restrictive covenants do not contemplate that multiple dwelling units may be constructed on a single lot, but rather the restrictive covenants state: "All lots in the Subdivision and improvements thereon shall be used for single family residential purposes, and for no other purpose." Further, nowhere in the restrictive covenants are the rights of "unit owners" defined. However, the Defendant has permitted multiple dwelling units to be constructed on certain lots. Additionally, the Defendant has continuously treated all "unit owners" as if they were "lot owners" under the restrictive covenants. Plaintiffs, therefore, contend that a majority of "unit owners" is all that is necessary to revise or modify the restrictive covenants.

VI.

Plaintiffs request that this Court declare that in order for the Plaintiffs, or any other property owners subject to the restrictive covenants, to revise or terminate the restrictive covenants, only of a majority of the unit owners within the Subdivision need execute an agreement terminating, modifying, or revising these restrictions and covenants.

VII.

Alternatively, should this Court declare that each "lot" within the Subdivision is entitled to only one vote, then the Plaintiffs request that this Court declare how each lot's vote should be determined. Because the restrictive covenants do contemplate the existence of more than one unit on each lot, the covenants are silent as to who is entitled to cast a vote for a particular lot in the Subdivision, when said lot is occupied by several unit owners

WHEREFORE, Plaintiffs request that the Defendant be cited to appear and answer herein, and that on final hearing, Plaintiffs have judgment as follow:

1.    A declaration that the restrictive covenants which are the subject of this suit may be revised or terminated through the agreement of a majority of the unit owners within the subdivision which are subject to the covenants; or alternatively,

2.    A declaration as to who is entitled to cast a vote for a lot, when that particular lot is occupied by two or more Unit owners; and,

3.    Costs of court, and such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

Rene B. Gonzalez
Attorney at Law
P.O. Box 5134
Brownsville, Texas 78523-5134
Telephone: 956/544-2370
Facsimile: 956/982-1909
State Bar No. 08131380
Cameron County I.D. 278301

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I, Rene B. Gonzalez, hereby certify that on this, the 28th day of _____July_____, 1999, a true and correct copy of the foregoing document has been served upon the following counsel of record in this cause, via U.S. Mail / Hand Delivery in accordance with Rule 21a of the Texas Rules of Civil Procedure:

Mr. William A. Faulk, Jr.
RENTFRO, FAULK & BLAKEMORE, L.L.P.
185 East Ruben M. Torres, Sr., Blvd.
Brownsville, Texas 78520

Rene B. Gonzalez

CVISPDF – www.fasiio.com

FILED 4:55 O'CLOCK ____ M
AURORA DE LA GARZA DIST. CLERK

JUL 3 1 2001

DISTRICT COURT
_Jessica Lunar_

CAUSE NO. 2001-03-1577-A

| | | |
|---|---|---|
| LOS CAMPEONES, INC., et al | § | IN THE DISTRICT COURT |
| | § | |
| vs. | § | CAMERON COUNTY, TEXAS |
| | § | |
| VICC HOMEOWNER'S | § | |
| ASSOCIATION, INC., et al | § | 107th JUDICIAL DISTRICT |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## ON PETITION FOR DECLARATORY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, Plaintiffs, Los Campeones, Inc., Ken Plasterer, Individually and as President of Los Campeones, Inc., and Jack Crahan and wife, Maggie Crahan, Tom Pope and wife, Wanda Pope, Louela Hefty, Marvin White and wife, Sue White, Francis Cowen Anastos, Wally Van Lier and wife, Betty Van Lier and Gerald R. Schoendorf and wife, Avis Schoendorf, and Ren Rex Fun, Ltd., The Community Association at Valley Inn, Inc., a Texas Non-Profit Corporation, all Plaintiffs in the above-entitled matter, and files this their Plaintiff's Motion for Summary Judgment on Petition for Declaratory Judgment, and would respectfully show the court the following:

### I.

### FACTUAL BACKGROUND

1.01  On or about June 6, 1977, Los Campeones, Inc., purchased all the property at a foreclosure sale owned by Valley International Properties, Inc., formerly known as Valley Inn & Country Club (hereinafter VIP fka VICC) which included the Valley Inn & Country Club and all of its related amenities and facilities together with all property located in Country Club Estates formerly belonging to VIP fka VICC and Los Conquistadores, Inc..  Further, at such time Plaintiff, Los Campeones, Inc., purchased 250,661 shares of the 424,000 outstanding shares of VIP fka VICC.

**EXHIBIT**

C

1.02   Vicc Homeowner's Association, Inc., is a non-profit condominium association organized in 1987.

1.03   In 1965 a document entitled "Covenants and Restrictions" was filed with the Cameron County Clerks Office at Volume 793 page 691.  (See Exhibit 1).

1.04   In 1969 a document entitled "Covenants and Restrictions of Country Club Estates, Sections 5, 6, 7, 7A, 7B, 8, 8A, 8B, 8C, 9, 9A, 13 and 100" was filed with the Cameron County Clerks Office by the Valley Inn and Country Club, Inc..  (See Exhibit 2).

1.05   The document filed in 1969 is separate and apart from the document filed in 1965, i.e. the restrictions and covenants provided for in the 1969 document are not applicable to the lot owners covered by the 1965 document and the covenants and restrictions provided for in the 1965 document are not applicable to the lot owners covered by the 1969 document.  (See Exhibits 1 and 2).

1.06   Therefore, the document made the basis of this cause of action is the 1969 document.

## II.

### BURDEN OF PROOF

2.01   A Declaratory Judgment is an appropriate vehicle for seeking the determination of the validity, applicability, or enforceability of Restrictive Covenants on property.  **See Tanglewood Homes Association, Inc. vs. Henke, 728 S.Wd. 39, 45 (Tex. at – Houston [1ˢᵗ Dist.] 1987, writ Ref'd N.R.E.)** in a Declaratory Judgment Action for the determination of the validity of Restrictive Covenants, the burden of proof is not on the party seeking the determination.  Rather, the burden of proof is on the party seeking to enforce the Restrictive Covenants.  **See McCart v. Cain 416 S.W. 2d 463, 465 – 466 (Tex. Civ. at Ft. Worth 1967, writ, ref'd N.R.E.)** Therefore, the burden of approving the amendment is valid and enforceable on the Defendant.  **See Ross vs. American Radiator and Standard Sanitary Corp., 507 S.W. 2d 806, 810 (Tex. Civ. at Dallas 1974 writ**

**refused N.R.E.).**

## III.

## SUMMARY OF THE ARGUMENT FOR AMENDING
## THE ORIGINAL COVENANTS AND RESTRICTIONS FILED IN 1969

1. Defendants have wholly failed to execute and acknowledge an agreement in writing terminating, modifying or revising the Original Covenants and Restrictions;

2. Defendants can bring forth no evidence to establish that they amended the Original Covenants and Restrictions in accord with the manner and means as provided by the Original Covenants and Restrictions for such amendment;

3. Defendants can bring forth no evidence to show that they executed and acknowledged an agreement in writing terminating, modifying or revising the Original Covenants and Restrictions;

4. The signature of one lot owner when said lot is owned as community property cannot be used to bind the entire lot vote; and

5. Defendants do not have the majority of the individual lot owners votes to amend the covenants and restrictions provided for in the 1969 document.

## IV.

## SUMMARY JUDGMENT ARGUMENT NO. 1

## EACH INDIVIDUAL LOT OWNER DID NOT EXECUTE AN
## AGREEMENT IN WRITING TO AMEND THE COVENANTS
## AND RESTRICTIONS LEGALLY REQUIRED IN THE 1969
## DOCUMENT

4.01  On or about March 2001 a document entitled "Amended Covenants and Restrictions" was filed in the official records of the Cameron County Clerks Office. (See Exhibit 3). The intent of this document was to amend and/or supersede the covenants and restrictions provided for in the 1969 document.

4.02  In order to amend the 1969 document said document provided the manner and means

for which said document may be amended as follows;  (See Exhibit 2).

> "Upon the expiration of 25 years from the date of the execution of this instrument, the owners of a majority of the lots with the Subdivision may **execute and acknowledge an agreement in writing terminating, modifying or revising these restrictions and covenants and file the same in the office of the County Clerk of Cameron County, Texas;** thereafter said covenants and restrictions shall be null and void, or be modified or revised as prescribed in such agreement." (See Exhibit 2).

4.03 The 2001 document filed with the Cameron County Clerks Office does not contain any signatures executing and acknowledging the agreement which would thereby allow the amendment of the 1969 document.  Without those signatures the document cannot be formally executed.  Further, Defendants have not and cannot provide an acknowledged original and/or copy of the 2001 document in other words the Defendants cannot provide an acknowledged agreement in writing amending the 1969 document.   Therefore, since the 2001 document does comport to the requirements of the 1969 document for amending said document Defendants filing of the 2001 document is unlawful and without force and should thereby be declared null and void by this Honorable Court.

4.04 Further, Defendants "Petition to Revise Restrictions and Covenants" is not acknowledged, nor does it have attached a copy of the 2001 document.  Further, said Petition conflicts with itself in that it is entitled as a revision but calls for a termination of the covenants and restrictions.  So did the individuals signing the petition intend for the 1969 document to be revised or terminated.

4.05 Therefore, what is needed for the 1969 document to be amended is a majority  of the lot owners **to execute and acknowledge** within that subdivision **an agreement in writing** to amend

the covenants and restrictions.   It is undisputed that Defendants and their fellow lot owners did not

execute and acknowledge an agreement in writing to amend the 1969 document.  Further, there is

no evidence that the Defendants executed and acknowledged an agreement in writing to amend the

Original 1969 Covenants and Restrictions.   Therefore, the Defendants' conduct is completely

without right or entitlement and summary judgment should be granted in favor of the Plaintiffs in

that the Defendants failed to meet and thereby abide by the terms and conditions that authorize the

amendment of 1969 document and, therefore, the covenants and restrictions as set forth in the 1969

document shall continue in full effect and the amended covenants and restrictions filed on March

15, 2001 should be rendered null and void.

**V.**

**SUMMARY JUDGMENT ARGUMENT NO. 2**

**1. LOT OWNERS ARE ENTITLED TO ONE VOTE PER LOT.**

**2.  IF SAID LOT OWNER OWNS A PERCENTAGE OF A LOT THEN SAID LOT OWNER IS ENTITLED TO AN EQUAL PERCENTAGE OF ONE LOT VOTE.**

**3.  FURTHER THE SIGNATURE OF ONE LOT OWNER WHEN SAID LOT IS OWNED AS COMMUNITY PROPERTY CANNOT BE USED TO BIND THE ENTIRE LOT VOTE WITHOUT BOTH SPOUSES SIGNATURES.**

5.01  The law of community property may prevent one spouse from conveying real estate

without the consent of the other. Under the Family Code, each spouse during marriage has the sole

management, control, and disposition of the community property that the spouse would have owned

if single, including: (1) personal earnings; (2) revenue from separate property; (3) recoveries for

personal injuries; and (4) the increase and mutations of, and the revenue from, all property subject

to the spouse's sole management, control, and disposition [ **Fam. C. § 3.102(a)** ]. However, if one

spouse's sole management community property is mixed or combined with the community property of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney in writing or other agreement [ **Fam. C. § 3.102(b)** ].

5.02  Therefore, since the Defendants have no evidence and cannot bring forth no evidence as to the required signatories with respect to each individual lot and their respective ownership interest such action of the Defendants must fail and summary judgment should be granted in favor of the Plaintiffs and thereby rendering the 2001 document null and void and continue to allow the 1969 document and the covenants and restrictions as provided therein to continue in full effect.

## VI.

## SUMMARY JUDGMENT ARGUMENT NO. 3

### DEFENDANTS DO NOT HAVE THE MAJORITY OF THE INDIVIDUAL LOT OWNERS VOTES TO AMEND THE COVENANTS AND RESTRICTIONS PROVIDED FOR IN THE 1969 DOCUMENT

6.01  In accordance with the procedure required to amend the 1969 document Defendants are required to obtain the majority vote of the individual lot owners executing and acknowledging the amending agreement.  In this case there are 277 individual lot owners, with each individual owner entitled to one vote per lot.  For example, if an individual owns 5 ½ lots he or she is entitled to 5 ½ lot votes.  Therefore, any amount of lot votes in excess of 138 ½ lot votes that execute and acknowledge the amending agreement would cause the new covenants and restrictions to be filed with the Cameron County Clerks Office.

6.02    Defendants claim to have 160.9986 votes out of 311 votes.  The basis and criteria for which the Defendants tabulated for 311 lot votes as shown on the putative amendment is inaccurate

and false for the following reasons:

1. The Defendants used 10 votes covered by the 1965 document in their tabulation. These votes cannot be counted since they are not covered by the 1969 document but by the 1965 document.

2. Second,, the lot owners covered by the 1965 document cannot be covered nor counted by the 1969 document thereby lowering the total number of lot owners from 311 to 277.

3. Lastly, there are 34 lot owners covered by the 1965 document. Of those 34, 10 voted to approve the amendment of the 1969 document. Those 10 votes should not and cannot legally be counted.

$$160.9986$$
$$(10.00)$$
$$\overline{\phantom{150.9986}}$$
$$150.9986$$

6.03  Therefore, the Defendants count should be lowered by 10 votes to 150.9986.

6.04  Next, some of the lot owners have revoked or canceled their prior consent by affidavit.

These affidavits are attached hereto and incorporated into this motion for all purposes material

hereto.  The specific affidavits are as follows:

| | Lot | Vote |
|---|---|---|
| 1. James A. Gampper 1 lot vote;  (Exhibit 4) | 1.00 | (1.00) |
| 2. Dudley G. Soden .33 lot vote;  (Exhibit 5) | 0.33 | (0.33) |
| 3. Eldon G. Wenger .50 lot vote;  (Exhibit 6) | 0.50 | (0.50) |
| 4. Jack G. Humphries 1 lot vote;  (Exhibit 7) | 1.00 | (1.00) |
| 5. James E. Huggins POA for Warren Huggins 1 lot vote; (Exhibit 8) | 1.00 | (1.00) |
| 6. Pauline Bentivenga .5 lot votes.  (Exhibit 9). | 0.50 | (0.50) |
| 7. Jose Marquez .25 lot votes (Exhibit 10) | 0.25 | (0.25) |
| 8. Dr. E.J. Morris .33 lot votes (Exhibit 11) | 0.33 | (0.33) |

9.  Jorge Clynes ,25 lot votes (Exhibit 12)                  0.25    (0.25)

10. Manfred Leichthammer 1.00 lot vote (Exhibit 13)          1.00    (1.00)

11. Joy Pitstick .5 lot votes (Exhibit 14)                   .0.50   (0.50)

12. Mike Begum 1.00 lot vote (Exhibit 15)                    1.00    (1.00)

13. James R. Cozad 1.00 lot vote (Exhibit 16)                1.00    (1.00)
                                                            _____  _____
                                                             8.66    (8.66)

6.05  Therefore, the Defendants count should be lowered by 8.66 votes to 142.3386.

6.06  Next, the following lot owners died prior to the filing of the 2001 document;

    1.  Kenneth Stafford 1 lot vote;                        1.00    (1.00)

    2.  Honorable Judge Harry Lewis .33 lot vote.           0.33    (0.33)

    3.  Jose O. Bernal .50 lot vote                         0.50    (0.50)

    4.  Bruce Underwood .50 lot vote                        0.50    (0.50)

    5.  Warren F. Keller .50 lot vote                       0.50    (0.50)
                                                            _____  _____
                                                             2.83    (2.83)

6.07  Therefore, the Defendants count should be lowered by 2.83 lot votes to 139.5086

6.08  Next, several individual lot owners sold their property prior to the filing of the 2001 document;

    1.  Guillermo Sanchez 1 lot vote;                       1.00    (1.00)

    2.  Mary Peabody 1 lot vote;                            1.00    (1.00)

    3.  Dr. Lauro Montemayor 1 lot vote;                    1.00    (1.00)

    4.  Compass Alliance 1 lot vote;                        1.00    (1.00)

    5.  Maria Elena Del Rio .50 lot vote;                   0.50    (0.50)

    6.  Juan Altamirano .50 lot vote;                       0.50    (0.50)

| | | |
|---|---|---|
| 7. Adelaida Del Fierro .50 lot vote; | 0.50 | (0.50) |
| 8. Peter Neubauer .25 lot vote. | 0.25 | (0.25) |
| 9. Michael Begum 1 lot vote | 1.00 | (1.00) |
| 10. Juan Hernandez .50 lot vote | 0.50 | (0.50) |
| 11. Dr. Rene Rodriguez 1 lot vote | 1.00 | (1.00) |
| 12. Patricia Willis Smith .50 lot vote | 0.50 | (0.50) |
| | 8.75 | (8.75) |

6.09  Therefore, the Defendants count should be lowered by 8.75 lot votes to 130.7586.

6.10  Next, the Defendants erred in calculating the lot owner vote for lot number 806 which has seven different lot owners therefore each owner gets 1/7th of 1 lot vote. Defendants gave each lot owner 1/4th of one lot vote which in essence gave lot 806 1.75 individual lot votes instead of 1 lot vote. Therefore, since 6 of the 7 lot owners voted for the amendment Defendants would be entitled to 6/7 of one lot vote and not the 1.50 lot votes it calculated.

6.11  Therefore, the Defendants count should be lowered by .6429 lot votes to 130.1157.

6.12  In support of the contentions made in Paragraphs 6.06, 6.08 and 6.10, Plaintiffs furnish to the court the Affidavit of Ken Plasterer which is attached hereto as Exhibit "17" and is incorporated herein by reference for all purposes material hereto.

6.13  In conclusion, it is legally and justiciably undeniable and indisputable that 130.1157 is less than 138.50. Further, since Defendant needed a number greater that 138.50 to amend the 1969 document such amendment as filed is void, wrongful and unlawful.

# VII.

## ATTORNEY'S FEES

7.01 Due to the Defendant's action by making and attempting to enforce invalid amended Restrictive Covenants and creating a legal entity to enforce same, the Plaintiffs were forced to seek legal representation. Pursuant to Texas Civil Practices and Remedies Code Sec. 37.009, the Plaintiffs seek reasonable and necessary attorney's fees in connection with this matter. More specifically, the Plaintiffs have incurred in excess of $40,000.00 in attorney's fees to date.

# VIII.

## CONCLUSION

8.01 The Plaintiffs move for Summary Judgment because the amendment to the original Restrictive Covenants is unenforceable and contrary to the Plaintiff's property right. Specifically it has not been created in accordance with the terms of the original Restrictive Covenants. Accordingly, a Summary Judgment should be rendered in favor of Plaintiff's Petition for Declaratory Judgment declaring that the amendment is not enforceable, void and stricken from the public record. Further, each community lot owner did not execute or acknowledge a document amending the 1969 Restrictive Covenants. Lastly, Defendants do not have the majority of the lot votes to amend the 1969 Restrictive Covenants.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that this Honorable Court set this Motion for Hearing and after such hearing that this Court grant their Motion for Summary Judgment on their Petition for Declaratory Judgment and grant them the following relief:

a. declaring that the amendment filed May 15, 2001, by the Defendants is unenforceable as against the property of the Plaintiffs and that the amended Restrictive Covenants are null and void, unenforceable and of no effect as to the rights of the property owners of Country Club Estates.

b. a Judgment awarding Plaintiffs reasonable and necessary attorney's fees in the amount prayed for in this Motion.

c. a Judgment awarding Plaintiffs costs of suit.

d. a Judgment awarding the Plaintiffs all other and further relief both in law and in equity to which they may prove themselves justly entitled.

Respectfully submitted,

**LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.**
777 E. Harrison
Brownsville, Texas  78520
TEL/ (956) 541-3820
FAX/ (956) 541-7694

BY: _____

**ERNESTO GAMEZ, JR.**
State Bar No. 07606600
County I.D. No. 9901

**SEAN BELLEVILLE**
State Bar No. 0079774
County I.D. No. 9912

**ATTORNEYS FOR PLAINTIFFS**

# CERTIFICATE OF SERVICE

I, hereby certify that a true and correct copy of this Motion for Summary Judgment was had delivered to opposing counsel D. Alan Erwin on this the 31st day of July, 2001.

_Sen Belleville_

SEAN P. BELLEVILLE

OFFICIAL RECORDS

STATE OF TEXAS

COUNTY OF CAMERON                    11908

## AMENDED COVENANTS AND RESTRICTIONS

WHEREAS, Pursuant to the terms of the Covenants and Restrictions, dated April 1, 1969, and recorded in Vol. 870, Pages 140 through 157, of the Deed Records, Cameron County, Texas, the same are hereby amended in part to designate the VICC Homeowners Association, Inc., as the sole administrator and executor of, and pursuant to the terms stated below:

WHEREAS, for the purpose of creating and carrying out a uniform plan for the maintenance and improvements of the subdivision and the common areas and lots therein, as a high-quality, restricted, residential subdivision the restrictions, conditions, agreements and covenants with respect thereto are designated hereinafter; and

WHEREAS, the owners of the lots and the improvements thereon within the subdivision are not required to be members of Valley International Country Club (Los Campeones, Inc.); and

WHEREAS, such restrictions, covenants and agreements shall constitute covenants running with the land and shall be binding upon and for the benefit of the VICC Homeowners Association, Inc., its successors and assigns, and all persons acquiring and owning property within the said subdivision; and

WHEREAS, such restrictions, covenants, conditions and agreements herein set forth and in the by-laws, rules and regulations of the VICC Homeowners Association, Inc., shall be made a part of each contract, deed or other muniment of title, or any successor in title, conveying a unit or lot within the subdivision whether or not set forth in such deed, or these said restrictions, covenants conditions and agreements may be referred to merely by the volume and page where recorded in the office of the County Clerk of Cameron County, Texas;



Page 1 of 8

## ARCHITECTURAL CONTROL COMMITTEE

1.     There is hereby created an Architectural Control Committee which shall be composed of five (5) members.  Each member of the Committee shall serve until his successor is named as provided herein.

2.     Members of the Architectural Control Committee shall be appointed annually by the President of the VICC Homeowners Association, Inc. with the consent of the Board of Directors.  Any or all members of the Architectural Control Committee may be removed at any time by the Board of the VICC Homeowners Association, Inc. acting by and through its President.  In the event of any vacancy, such vacancy shall be filled by the Board of Directors of the VICC Homeowners Association, Inc. acting by and through its President.

3.     No building shall be erected, placed or altered on any lot until the construction plans and specifications and a plan showing the location of the structure have been approved by the Architectural Control Committee as to quality of workmanship and materials, harmony of external design with existing structures and as to location with respect to topography and finish grade elevation.  Approval shall be as provided in Paragraph 4 below.

4.     Final plans and specifications shall be submitted in duplicate to the Architectural Control Committee for their inspection and approval.

5.     The Architectural Control Committee's approval or disapproval as required in these covenants shall be in writing.

6.     In the event the Architectural Control Committee or its designated representative fails to approve or disapprove any such plans within 30 days after the plans and specifications have been submitted to it, or in any event, if no suit to enjoin the construction shall be commenced prior to the completion thereof, approval shall not be required and the related covenants shall be deemed to have been fully complied with.

CIMPDF - www.fineho.com

## GENERAL LAND USE

1.      All lots in the subdivision shall be used as single family residential lots, and for no other purpose.

2.      All buildings placed on any of the lots shall be newly erected on the lot and no used building shall be moved onto any of the lots.

3.      No commercial or professional activity of any nature except those of an attorney or doctor shall be carried on upon any lot or any building thereon; nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood.  No cattle, hogs, poultry, horses or other animal or fowl may be kept on any part of the subdivision, except that this paragraph shall not preclude the keeping of pets or animals other than those mentioned such as are ordinarily kept as pets in residential subdivisions, provided they are not kept or bred for any commercial purposes.

4.      No outdoor toilet or garage shall be placed on any lot.

5.      No oil drilling, oil development operations, oil refining, quarrying or mining operations of any kind shall be permitted upon any lot, nor shall oil wells, tanks, tunnels, mineral excavations or shafts be permitted upon any lot.  No derrick or other structure designed for use in boring for oil or natural gas or other minerals shall be erected, maintained or permitted upon any lot.

6.      No sign of any kind shall be displayed to the public view.

7.      No structure, trailer, basement, tent, shack, garage, other outbuildings or temporary structure shall be constructed or used on any lot as a residence, either temporarily or permanently.

8.      Any house trailer, boat, bus, truck or similar vehicle, shall be parked only as a where approved by the Architectural Control Committee.

9.     No lot or portion thereof shall be used or maintained as a dumping ground for rubbish or trash.

10.    Garbage shall not be deposited except in sanitary containers and such containers shall be maintained in a clean and sanitary condition at a place where it may not be seen from any driveway or public area.

11.    No radio or television aerial or guy wires shall be maintained on any portion of any lot except on approval of the Architectural Control Committee.

12.    No clothes line shall be maintained or used on any lot.

13.    No garage sale may be held in the subdivision without the approval of the Architectural Control Committee.

14.    The conveyance of each lot shall include the exclusive use of the designated carport and storage area.

15.    Each lot owner shall take notice of and shall abide all provisions of the by-laws, rules and regulations of the Homeowners Association now or hereafter promulgated.

## SIZE, TYPE AND PLACEMENT OF STRUCTURE AND MATERIALS

1.     All improvements on the lots shall be constructed so as to front the street, drive or walk-way upon which such lot faces.  No building of more than two story in height shall be constructed on any of the lots; and, no residence building of less than 1,200 square feet, exclusive of open porches and patios, shall be constructed or permitted to remain on any of the lots.

2.     The exterior walls of each dwelling shall be not less than 65% masonry, including, but not limited to, natural stone, brick, stucco or a veneer of any of them.  In computing this percentage, all door and window openings and gables shall be excluded from the required area.

3.     The pitch of the roof is to be subject to the approval of the Architectural Control Committee; but, in no event will flat roofs or built up roofs be permitted.

Page 4 of 8

4.    All foundations of buildings shall be concrete slab.

5.    No fence, wall, hedge or other like structure or planting shall be permitted on any of the lots without prior approval of the Architectural Control Committee.

6.    No building shall be erected on any lot nearer the front lot line than the set back line as shown on the certified copy of the plat hereto attached as Exhibit "B" or as prescribed by the Architectural Control Committee which shall also prescribe the location of any building with respect to any interior lot line.

7.    No parking shall be permitted in any of the streets or drives and no such streets, drives or storage area doors shall be in any manner blocked or partially blocked by children's bicycles, tricycles, toys or any other thing.

8.    An easement over and upon each lot is reserved for water lines, gas lines, electric lines, sewage lines, and other utilities.

## LIMITATION OF OWNERSHIP OF LOTS

1.    There is hereby levied on each lot owner within the subdivision a maintenance charge to be determined from time to time by the Board of the VICC Homeowners Association, Inc., payable in advance on the first day of each month.

2.    There is hereby granted unto the VICC Homeowners Association, Inc., its successors and assigns an expressed lien against each unit or lot to secure all obligations of the owner or owners of said unit or lot to the VICC Homeowners Association, Inc. as well as all obligations at any time imposed upon the owner or owners of said units or lots to the VICC Homeowners Association, Inc. by virtue of membership therein.  Such lien may be foreclosed in the same manner as a vendor's lien, without prejudice, however, to any other rights, powers or causes of action which the holder of said lien may have against any party who is then or who has theretofore been the owner of the property

Page 5 of 8

affected thereby. The lien and all other provisions of this agreement shall be secondary and subordinate to any liens, deeds of trust and encumbrances whatsoever given to secure the purchase price of the subject property or any part thereof, or given for the purpose of making repairs or constructing dwellings or any other improvements whatsoever on any part of the subject property.

3.     Whenever any condition described herein is found to exist in violation of these Covenants and Restrictions on any of the premises within the subdivision, the owner shall be notified by the VICC Homeowners Association, Inc., in writing, to correct, remedy or remove the condition within ten (10) days after such notice and it shall be a violation of these Covenants and Restrictions for any person to fail to comply with any such notice.

4.     The notice provided for in Section 3, above, shall be served personally on the owner to whom it is directed or shall be given by letter - certified mail, return receipt requested, addressed to such owner at his last known address. The VICC Homeowner's Association, Inc. may relay upon the tax records of the applicable city and/or county taxing authorities to determine the said owner's last known address, unless otherwise specified in writing to the VICC Homeowners Association, Inc. by the owner thereof. In the event personal service cannot be made, and/or the owner's address is unknown, such notice shall be given by publication at least two (2) times within ten (10) consecutive days in a newspaper of general circulation within the City of Brownsville, Texas.

5.     If any such lender acquiring such indebtedness be in doubt as to the purpose for which such loan is made for indebtedness incurred, or as to whether the lien herein granted is subordinated to any lien or deed of trust given for the purpose of securing any such mortgage for indebtedness, it may rely conclusively upon the written statement of the VICC Homeowners Association, Inc., acting by and through its President. The Grantor may subordinate said lien for maintenance charges or fees to the VICC Homeowners Association, Inc. to any other lien by proper written instrument. Grantor may also release any such lien in whole or in part with respect to any lot or lots if it be deemed advisable without affecting said lien in so far as it is applied to any other lot or lots.

6.      If the said maintenance charge shall become delinquent and if such delinquency shall remain for a period of 30 days, then, and in that event, there shall become due interest on such delinquent amount at the rate of the maximum legal interest allowed per annum.  Further, in the event of the necessity of filing suit, the delinquent owner shall be required to pay reasonable attorneys fees and costs of Court.

7.      The said maintenance charge shall be maintained by the VICC Homeowners Association, Inc. in a separate account and shall be used only for the payment of the maintenance expenses incurred for any and all of the following purposes:  Maintenance of streets, drives, sidewalks, street markers, trees, shrubbery, lawns, parking areas; disposal of garbage, security, and for any other purposes deemed by the VICC Homeowners Association, Inc. necessary or desirable for the development and maintenance of the subdivision and the common areas thereof.

8.      Dues and assessments owing to the VICC Homeowners Association, Inc. shall be governed by the by-laws, rules and regulations of the VICC Homeowners Association, Inc.

9.      The Board of Directors of the VICC Homeowners Association, Inc. shall retain an independent Certified Public Accountant to perform an annual Review of all of the financial records of the VICC Homeowners Association, Inc.  The annual Financial Statement containing the CPA's Review Opinion shall be available to each unit owner upon request after preparation and publication of same.  All fees charged by the Certified Public Accountant and copying expenses shall be paid out of the maintenance fees.

### OBLIGATIONS AND RIGHTS OF THE VICC HOMEOWNERS ASSOCIATION, INC.

1.      The VICC Homeowners Association, Inc. shall maintain and administer all areas within the subdivision designated, or hereafter designated for the common use, and enjoyment and benefit of the lot owners, and to maintain, repair and replace the planting and improvements located thereon, and shall also maintain regularly the grass and planting on each of the common areas of the lots within the subdivision.

2.     The common areas of the lots within the subdivision shall consist of all non-privately owned areas within the subdivision.

## DURATION OF RESTRICTIONS AND COVENANTS

1.     The restrictions, covenants and agreements set forth herein shall continue and remain in full force and effect until changed, amended or terminated by a vote of two-thirds (2/3) of the unit owners within the subdivision.  For all purposes herein, the owner of each assessed unit shall have one vote or may grant his/her proxy in writing to any other unit owner for voting purposes.

## RIGHTS TO ENFORCE

These restrictions may be enforced by the filing of suit or otherwise by the VICC Homeowners Association, Inc. or by any of the unit owners, such enforcement to be by injunction or otherwise.

## COVENANT RUNNING WITH THE LAND

1.     Each and every covenant, restriction and agreement contained herein shall constitute a covenant running with the land, and shall be finding upon the VICC Homeowners Association, Inc., its successors, assigns, grantees, and each successor owner of units or lots within the subdivision.

2.     The provisions of this instrument shall be deemed a part of each deed, contract of sale or other muniment of title covering and conveying any and all units or lots within the subdivision, whether or not such deed, contract or other muniment of title specifically refers to or incorporates the provisions of this instrument by reference.

3.     If any section, paragraph, subdivision, clause, phrase, or provision of these Covenants and Restrictions shall be adjudged invalid or unconstitutional, the same shall not affect the validity of these Covenants and Restrictions as a whole or any part or provision thereof, other than the part so decided to be invalid or unconstitutional.

STATE OF TEXAS                  §
                                §        **VERIFICATION**
COUNTY OF CAMERON               §

BEFORE ME, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally appeared MOLLY PLITT known to me and, being first duly sworn declared that the statements contained in the attached AMENDED COVENANTS AND RESTRICTIONS are true and correct, and further declared as follows:

I, Molly M. Plitt, am the Secretary/Treasurer for the VICC Homeowners Association, Inc., and in that capacity verify and acknowledge that a majority of owners of the Subdivision described in the attached Amended Covenants and Restrictions have executed an agreement in writing the same which is hereby incorporated by reference as if fully set forth, approving the attached amendments made to the Covenants and Restrictions of Country Club Estates, Sections 4, 5, 6, 7, 7A, 7B, 8, 8A, 8B, 8C, 9, 9A, 13 and 100, dated April 1, 1969, and recorded in Volume 870, Pages 140 through 157, of the Deed Records, Cameron County, Texas, and other instruments recorded for like purposes thereafter.

Attached and filed concurrently herewith as Exhibit A is a true and correct list of all said owners who have voted in favor – as provided by those percentage votes designated in the list – of amending said prior Covenants and Restrictions and other above-stated recorded instruments.

I swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

VICC Homeowners Association, Inc.

By: _Molly M. Plitt_

Molly M. Plitt, Secretary/Treasurer

SWORN AND SUBSCRIBED TO BEFORE ME, on ___March 15th___, 2001.

NEREYDA PEREZ
Notary Public, State of Texas
My Commission Expires
December 20, 2003

_Nereyda Perez_
NOTARY PUBLIC, STATE OF TEXAS

Case 1:00-cv-00173   Document 41   Filed in TXSD on 10/22/2001   Page 38 of 104

VICC Homeo··· ·rs - Petitions to Amend Covenants & h.··· .rictions
March 13, 2001

| No. of Lots | Unit No. | NAME | % OF LOT VOTING |
|---|---|---|---|
| 1 | 1 | Laurence Amaya | 1.00 |
| 1 | 2 | Esther Alaniz | 1.00 |
| 1 | 3 | Salvador Orozco | 1.00 |
| 1 | 4 | Joyce W. Blundell | |
| 1 | 5 | Pedro Franco | 1.00 |
| 1 | 6 | Elizabeth Cummins | |
| 1 | 7 | Elizabeth Cummins | |
| 1 | 8 | Harold V. McGrain | 1.00 |
| 1 | 9 | Dabbs Sullivan, Jr. | |
| 1 | 10 | Terry Rives | |
| 1 | 11 | Jean Holland | |
| 1 | 12 | Elliott Young | |
| 1 | 13 | Harley R. Riley | |
| 1 | 14 | Barbara Jean McBride | |
| 1 | 15 | Robert L. Pipes | |
| 1 | 16 | Russell Lehrman | |
| 1 | 17 | E. G. Meade / C. D. Gomez | |
| 1 | 18 | John E. Burkholder Trust | |
| 1 | 19 | Guy D. Robinson | |
| 1 | 20 | John Russell | |
| 1 | 21 | Edmund C. Hargest | 1.00 |
| 1 | 22 | Judy Weinberg | |
| 1 | 23 | Charles W. Perry | |
| 1 | 24 | Elisa Pl Chaix | 1.00 |
| 1 | 25 | Roberto G. Lozano | |
| 1 | 26 | Mildred Goodrich | 1.00 |
| 1 | 27 | Gloria J. Lutz | |
| 1 | 28 | R. D. Rankin | |
| 1 | 29 | Harold L. Miller Estate | |
| 1 | 30 | E. L. Noe | |
| 1 | 31 | John L. Himmelberg | |
| 1 | 32 | John Swanson | |
| 1 | 33 | Mariano Garcia | 1.00 |
| 1 | 34 | Ignacio Martinez | 1.00 |
| 1 | 40 | Efrain Valdez | 1.00 |
| 1 | 41 | Barbara Flo Pope | |
| 1 | 42 | Jack Crahan | |
| 1 | 43 | Harvey J. Lhost | |
| 1 | 44 | Eileen M. Martin | |
| 1 | 45 | Robert Hemsted | |
| 1 | 46 | Tommie F. Pope | |
| 1 | 47 | William D. Kimball | |
| 1 | 48 | Don J. Lobdell | |
| 1 | 49 | Dale Hills | |
| 1 | 50 | William Morris | |
| 1 | 51 | Jose Saenz Moreno | |
| 1 | 52 | Mario Pina | |
| 1 | 53 | Gayle & Elca Wilhite | |
| 1 | 54 | Gerardo Borgogni | 1.00 |
| 1 | 55 | Dr. Robert L. McDonald | |
| 1 | 56 | Denis Bosher | |
| 1 | 57 | Linda M. Peters | |
| 1 | 58 | Salvador Orozco | 1.00 |
| 1 | 60 | Guillermo M. Sanchez | 1.00 |



EXHIBIT
A

| | | | |
|---|---|---|---|
| 1 | 61 | Abe K. Barna | |
| 1 | 62 | Wally/Betty Van Liere | |
| 1 | 63 | Frances C. Anastos | |
| 1 | 65 | Donald S. Rogers | |
| 1 | 66 | Michael D. Meyer | |
| 1 | 67 | Marco Sales | |
| 1 | 68 | Victor Manuel Cavazos | 1.00 |
| 1 | 69 | Roman Garcia | 1.00 |
| 1 | 69-A | Los Campeones, Inc. | |
| 1 | 71 | Wayne A. Smith | |
| 1 | 72 | Ronald Karg | |
| 1 | 73 | Librado R. Garcia | |
| 1 | 74 | Louella Hefty | |
| 1 | 81 | Joyce O'Leary | |
| 1 | 82 | Arturo Perez | 1.00 |
| 1 | 83 | Mervyn J. Eliason | |
| 1 | 84 | George Ketzenberg | |
| 1 | 90 | Frederick Turner | |
| 1 | 100 | Dagoberto Martinez | 1.00 |
| 1 | 103 | R. L. Ostos | |
| 1 | 105 | Pedro De la Vega | 1.00 |
| 1 | 106 | Thomas Longoria | |
| 1 | 107 | Walter E Plitt, III | 1.00 |
| 1 | 108 | Ethel Beadell | |
| 1 | 109 | Ruben Gallegos | 1.00 |
| 1 | 110 | Manuel Flores Guerra | 1.00 |
| 1 | 111 | Dr. Peyton Pratt | |
| 1 | 112 | John N. Stumpf | 1.00 |
| 1 | 113 | Ricky Neighbors | |
| 1 | 114 | Bert M. Anderson | |
| 1 | 115 | Charles T. Carolan | |
| 1 | 116 | Robert Stultz | |
| 1 | 117 | Diana Solis Searcy | 1.00 |
| 1 | 118 | Raymond Prince | |
| 1 | 119 | Elizabeth Hotzen | |
| 1 | 120 | Gerald R. Schoendorf | |
| 1 | 121 | Candace Fetzer | |
| 1 | 122 | Conrado de la Garza | 1.00 |
| 1 | 123 | Lauro R. Montemayor | 1.00 |
| 1 | 124 | Federico Bas | 1.00 |
| 1 | 125 | Eugene Hurt | |
| 1 | 126 | Maurice Camell | |
| 1 | 127 | Karen Turcotte | 1.00 |
| 1 | 128 | Bill Towers | |
| 1 | 129 | Ma. Elena de Velasco | 1.00 |
| 1 | 130 | James D. Nelson | |
| 1 | 131 | Mrs. John Dunn | |
| 1 | 132 | Rogelio Villarreal | 1.00 |
| 1 | 133 | Doug McKee | 1.00 |
| 1 | 134 | Kenneth Plasterer | |
| 1 | 135 | Armantina R. Germeyer | |
| 1 | 136 | Michael Begum | 1.00 |
| 1 | 137 | Adolfo Pumarejo | 1.00 |
| 1 | 139 | Mary Peabody | 1.00 |
| 1 | 140 | Mary Peabody | 1.00 |
| 1 | 201 | Christine A. Guy | |
| 1 | 202 | Jaime Charnevitz, Jr. | |
| 1 | 203 | W. E. Huggins | 1.00 |
| 1 | 204 | Daniel Putegnat | 1.00 |
| 1 | 205 | Dr. Lauro R. Montemayor | 1.00 |
| 1 | 206 | R.G. Enterprises, Inc. | |

| | | | |
|---|---|---|---|
| 1 | 207 | Earnest & Fa       nny | |
| 1 | 208 | Margaret Myle | |
| 1 | 209 | George Slater | |
| 1 | 210 | D. W. Ryan | |
| 1 | 211 | Tucan, S.A. Manuel Canedo | |
| 1 | 212 | Roberto Leiva | 1.00 |
| 1 | 213 | Bertha Oralia Rangel | 1.00 |
| 1 | 214 | Michael Begum | 1.00 |
| 1 | 215 | Luz Lasky | |
| 1 | 216-1 | Isaac Mayorga | 0.50 |
| | 216-2 | Roberto Leiva | 0.50 |
| 1 | 217-1 | Curtiss O. Goehner | |
| | 217-2 | Jerry C. Osborn | |
| 1 | 218-1 | Virgil L. Davison | |
| | 218-2 | Virgil L. Davison | |
| 1 | 219-1 | Virgil L. Davison | |
| | 219-2 | Wayne E. Miller | |
| 1 | 220-1 | James R. Cozad | 0.50 |
| | 220-2 | James R. Cozad | 0.50 |
| 1 | 221-1 | Joe A. Garcia | 0.50 |
| | 221-2 | Joe A. Garcia | 0.50 |
| 1 | 222-1 | Paula G. Pinon | |
| | 222-2 | Paula G. Pinon | |
| 1 | 223-1 | Richard T. Walter | |
| | 223-2 | Richard T. Walter | |
| 1 | 224-1 | Robert R. Lyons | |
| | 224-2 | Robert L. Kilgore | 0.50 |
| 1 | 225-1 | Theodore Paul | 0.50 |
| | 225-2 | Theodore Paul | 0.50 |
| 1 | 226-1 | Wayne Wilhite | |
| | 226-2 | Wayne Wilhite | |
| 1 | 227-1 | Jorge G. Rodarte | 0.50 |
| | 227-2 | Dr. Fernando Cespedes | |
| 1 | 228-1 | Virgil L. Davison | |
| | 228-2 | Paul L. Pierce, Jr. | |
| 1 | 229-1 | Hebe Cordoba de Prieto | 0.50 |
| | 229-2 | Gloria A. Gonzalez | 0.50 |
| 1 | 230-1 | Alma G. Alvarado | |
| | 230-2 | Alma G. Alvarado | |
| 1 | 231-1 | Hebe Garcia Diaz | 0.50 |
| | 231-2 | William L. Henderson | |
| 1 | 232-1 | Kenneth D. Stafford | 0.50 |
| | 232-2 | Kenneth D. Stafford | 0.50 |
| 1 | 233-1 | Gale & Sherry Spicer | 0.50 |
| | 233-2 | Dennis D'Orvilliers | |
| 1 | 234-1 | Gale Spicer | 0.50 |
| | 234-2 | Gale Spicer | 0.50 |
| 1 | 235-1 | Jerry Hughes | |
| | 235-2 | Michael D. Little | |
| 1 | 236-1 | Linell M. Fairfield | |
| | 236-2 | Linell M. Fairfield | |
| 1 | 237-1 | A. Paul Ochs | 0.50 |
| | 237-2 | Estela Rios | |
| 1 | 238-1 | Compass Alliance | 0.50 |
| | 238-2 | Compass Alliance | 0.50 |
| 1 | 239-1 | Barbara / Richard Poirier | |
| | 239-2 | Neal Tyner | |
| 1 | 240-1 | Pablo C. Madrazo | 0.50 |
| | 240-2 | Pablo C. Madrazo | 0.50 |
| 1 | 241-1 | Carl Kailbourne | |
| | 241-2 | Carl Kailbourne | |

| | | | |
|---|---|---|---|
| 1 | 242-1 | Viviano Villarr | 0.50 |
| | 242-2 | Joe A. Garcia | 0.50 |
| 1 | 303-1 | Garage | |
| | 303-2 | Gricelda B. Sainz | 0.50 |
| 1 | 303-3 | Keith / Margie Pellersels | |
| | 303-4 | Etta Jaqua | |
| 1 | 303-5 | Joe A. Garcia | 0.50 |
| | 303-6 | L. H. Wagener | |
| 1 | 303-7 | Janet E. Mosler | |
| | 303-8 | Janet E. Mosler | |
| 1 | 305-1 | Jose O. Bernal | 0.50 |
| | 305-2 | Antonio Beltran | 0.50 |
| 1 | 305-3 | Los Campeones, Inc. | |
| | 305-4 | Patricia Smith-Willis | 0.50 |
| 1 | 305-5 | Gilberto G. Martinez | 0.50 |
| | 305-6 | Gilberto G. Martinez | 0.50 |
| 1 | 305-7 | Juanita Ramirez | 0.50 |
| | 305-8 | Peter Neubauer | 0.50 |
| 1 | 307-1 | Imelda Madrigal | 0.50 |
| | 307-2 | Imelda Madrigal | 0.50 |
| 1 | 307-3 | Christopher L. Phillippe | 0.50 |
| | 307-4 | Christopher L. Phillippe | 0.50 |
| 1 | 307-5 | Ila A. Phillippe | 0.50 |
| | 307-6 | Ila A. Phillippe | 0.50 |
| 1 | 307-7 | Robert Kilroy | 0.50 |
| | 307-8 | Robert Kilroy | 0.50 |
| 1 | 309-1 | VICC Special Properties | |
| | 309-2 | VICC Special Properties | |
| 1 | 309-3 | Roberto Leiva | 0.50 |
| | 309-4 | Janet Marie O'Neill | 0.50 |
| 1 | 309-5 | Mark Van Dokkumburg | 0.50 |
| | 309-6 | Mark Van Dokkumburg | 0.50 |
| 1 | 309-7 | Nicolas Thomas | 0.50 |
| | 309-8 | Warren F. Keller | 0.50 |
| 1 | 311-1 | Elvia R. Ramirez | 0.50 |
| | 311-2 | Christobal Reyes | 0.50 |
| 1 | 311-3 | Ana Lisa Martinez | 0.50 |
| | 311-4 | Mike Torres | 0.50 |
| 1 | 311-5 | Jorge Montemayor | |
| | 311-6 | Jorge Montemayor | |
| 1 | 311-7 | Irma S. Montemayor | |
| | 311-8 | Irma S. Montemayor | |
| 1 | 313-1 | VICC Special Properties | |
| | 313-2 | Shirley Hock | |
| 1 | 313-3 | Blanca Iuffi | 0.50 |
| | 313-4 | Arthur Rendon | |
| 1 | 313-5 | Timothy McCall | 0.50 |
| | 313-6 | Roy Erickson | 0.50 |
| 1 | 313-7 | Emil C. Bentivenga | 0.50 |
| | 313-8 | Gilbert Elizalda | |
| 1 | 315-1 | Fred Feurtado | 0.50 |
| | 315-2 | Los Campeones, Inc. | |
| 1 | 315-3 | Nicky H. Mut | 0.50 |
| | 315-4 | Dr. James C. Seeley | |
| 1 | 315-5 | James. S. Dewar | 0.50 |
| | 315-6 | James. S. Dewar | 0.50 |
| 1 | 315-7 | Robert A. Geiss | |
| | 315-8 | Robert A. Geiss | |
| 1 | 317-1 | Julio Galvan | 0.25 |
| | 317-2 | Geo. B. Baumstark | 0.25 |
| | 317-3 | Mariano Garcia | |

| | | | |
|---|---|---|---|
| | 317-4 | Ankjaer Jens | 0.25 |
| 1 | 319-1 | Antonio Rodriguez | 0.25 |
| | 319-2 | Carmen Autrique | 0.25 |
| | 319-3 | Zulema Treviño | 0.25 |
| | 319-4 | INSSCO/Guillermo Ramon | 0.25 |
| 1 | 321-1 | Enrique Melguiso | |
| | 321-2 | Leon Weisberg | 0.25 |
| | 321-3 | Leon Weisberg | 0.25 |
| | 321-4 | Leon Weisberg | 0.25 |
| 1 | 323-1 | Kent A. Whittemore | |
| | 323-2 | JCJJI Limited / Jose Esteban Igoa | |
| | 323-3 | Eli Eric Pena | |
| | 323-4 | Analicia Parra | 0.25 |
| 1 | 401 | Los Campeones, Inc. | |
| 1 | 402-1 | Helen Lewis | 0.50 |
| | 402-2 | Arco Iris, Inc. (Robert Leiva) | 0.50 |
| 1 | 402-3 | Gilbert C. Frodermann | |
| | 402-4 | Gilbert C. Frodermann | |
| 1 | 402-5 | R.A.G. Enterprises, Inc. | 0.50 |
| | 402-6 | Millie J. Smith | 0.50 |
| 1 | 402-7 | Milton P. Roth | 0.50 |
| | 402-8 | Yolanda Cordova Aguilar | 0.50 |
| 1 | 403 | E. C. McAllister | |
| 1 | 404-1 | Maria Elena del Rio | 0.50 |
| | 404-2 | Juan J. Altamirano | 0.50 |
| 1 | 404-3 | George F. Garcia | 0.50 |
| | 404-4 | Santiago I. Garcia | 0.50 |
| 1 | 404-5 | Edgar N. Dumas | |
| | 404-6 | Edgar N. Dumas | |
| 1 | 404-7 | Edgar N. Dumas | |
| | 404-8 | Juan Flores | 0.50 |
| 1 | 405 | Joann Hart | |
| 1 | 407 | Ronald P. Leffler | |
| 1 | 408-1 | Thomas Tann | |
| | 408-2 | Thomas Tann | |
| 1 | 408-3 | Rene de la Garza | 0.50 |
| | 408-4 | MA-DER Corp. (Roberto Maron) | 0.50 |
| 1 | 409 | Herbert A. Weil | |
| 1 | 411 | Betty Jensen | |
| 1 | 412-1 | Joy Pitstick | 0.50 |
| | 412-2 | Mike Hanson | |
| 1 | 412-3 | Jerrold A. Eide | |
| | 412-4 | Elizabeth L. Lindow | |
| 1 | 412-5 | Thomas J. Werner | |
| | 412-6 | Dennis Ray Hutcherson | 0.50 |
| 1 | 412-7 | Felix Madrazo | 0.50 |
| | 412-8 | Gerald Felzien | |
| 1 | 413 | Victor P. Gambino | 1.00 |
| 1 | 415 | Varel Mrg. Co. (c/o Daniel Varel) | 1.00 |
| 1 | 416-1 | Julia Alaniz | 0.50 |
| | 416-2 | Adelaida G. del Fierro | 0.50 |
| 1 | 416-3 | Dominguez Family, Ltd. | 0.50 |
| | 416-4 | Sylvia Zuniga | |
| 1 | 416-5 | Edson Marsh | 0.50 |
| | 416-6 | Edson Marsh | 0.50 |
| 1 | 416-7 | Carla Soto | 0.50 |
| | 416-8 | Julieta Escobar Aguirre (A. Cavazos) | 0.50 |
| 1 | 417 | Juan Manzur (c/o Eduardo Maron) | 1.00 |
| 1 | 418-1 | Jeff A. Lewis | 0.50 |
| | 418-2 | Mario Martinez | |
| 1 | 418-3 | R.A.G. Enterprises, Inc. | 0.50 |

| | | | |
|---|---|---|---|
| | 418-4 | Jose T. Carpio | 0.50 |
| 1 | 418-5 | Ignacio Miranda | |
| | 418-6 | Richard Hoffman, Trustee | 0.50 |
| 1 | 418-7 | Tricia Galindo | 0.50 |
| | 418-8 | Maria B. Bautista | 0.50 |
| 1 | 419 | Manfred Leichthammer | 1.00 |
| 1 | 421 | John G. Hansen | |
| 1 | 423 | D. L. Lauber | |
| 1 | 425 | H. Reed Smith | 1.00 |
| 1 | 427 | Robert C. Brooks | 1.00 |
| 1 | 428-1 | Hazel Hanson / N. P. James | |
| | 428-2 | Hazel Hanson / N. P. James | |
| 1 | 428-3 | Jim or Lois Peterson | 0.50 |
| | 428-4 | Ninfa F. Contreras | 0.50 |
| 1 | 428-5 | Sandra L. Allen | 0.50 |
| | 428-6 | Bill Kimball | |
| 1 | 428-7 | Los Campeones, Inc. | |
| | 428-8 | Los Campeones, Inc. | |
| 1 | 429 | Filemon Garza | 1.00 |
| 1 | 431 | David B. Clemence | 1.00 |
| 1 | 433 | Silvia Z. de Roman | 1.00 |
| 1 | 435 | Heriberto Roman | 1.00 |
| 1 | 437 | Robert A. Johnson | |
| 1 | 439 | Peter A. Lee | |
| 1 | 440-1 | Magdalena Rosas | 0.50 |
| | 440-2 | Andrew Puckett | 0.50 |
| 1 | 440-3 | Frank M. Srdar | 0.50 |
| | 440-4 | Los Campeones, Inc. | |
| 1 | 440-5 | Francisco R. Zertuche | 0.50 |
| | 440-6 | Hilda Martinez | 0.50 |
| 1 | 440-7 | Raul Mendez, Jr. | |
| | 440-8 | Juan Hernandez | 0.50 |
| 1 | 441 | Orvis W. Smith | |
| 1 | 443 | Jorge Sustaeta | 1.00 |
| 1 | 444-1 | Roxana Sadurni | 0.50 |
| | 444-2 | Edmund C. Hargest | 0.50 |
| 1 | 444-3 | Bruce Underwood | 0.50 |
| | 444-4 | Albert Cole | |
| 1 | 444-5 | Forest J. & Ann Jostrom | 0.50 |
| | 444-6 | Ramiro Cortinas | 0.50 |
| 1 | 444-7 | Jack G. Humphries | 0.50 |
| | 444-8 | Jack G. Humphries | 0.50 |
| 1 | 445 | Benito M. Pinillos | |
| 1 | 447 | William V. Pitt | |
| 1 | 448-1 | John S. Light, Jr. | 0.50 |
| | 448-2 | John S. Light, Jr. | 0.50 |
| 1 | 448-3 | Daniel P. Annen | |
| | 448-4 | Daniel P. Annen | |
| 1 | 448-5 | R.A.G. Enterprises, Inc. | 0.50 |
| | 448-6 | Dexter & Viola Liljegren | 0.50 |
| 1 | 448-7 | Raul Elizondo (Attn. Jerry Ramirez) | 0.50 |
| | 448-8 | Elizabeth Glidden | |
| 1 | 449 | John & Gaynell J.Tully | 1.00 |
| 1 | 451 | Shirley Tofflemire | |
| 1 | 453 | Alberto Madaria | 1.00 |
| 1 | 455 | J. R. Carnes | |
| 1 | 457 | Alfredo F. Correa | |
| 1 | 459 | Quentin H. Porter | |
| 1 | 461 | P. M. Jack Carter | |
| 1 | 463 | Ronald Mann | 1.00 |
| 1 | 465 | Alicia Madrazo | 1.00 |

| | | | |
|---|---|---|---|
| 1 | 467 | Ronald Manr | 1.00 |
| 1 | 469 | L. H. Mann | 1.00 |
| 1 | 471 | Peter S. Lee | 1.00 |
| 1 | 471-B | Rodolfo Zolezzi Thomas | 1.00 |
| 1 | 501 | Hector Elizondo | 1.00 |
| 1 | 503 | Dr. Rene Rodriguez | 1.00 |
| 1 | 505 | Robert E. McKee | |
| 1 | 507 | Herbert A. Petrich | |
| 1 | 509 | Gladys Aznar | 1.00 |
| 1 | 510-1 | Paul L. Chilton | 0.50 |
| | 510-2 | Paul L. Chilton | 0.50 |
| 1 | 511-1 | James J. Gampper | 0.50 |
| | 511-2 | James J. Gampper | 0.50 |
| 1 | 512-1 | Diana Govela | 0.50 |
| | 512-2 | Diana Govela | 0.50 |
| 1 | 513-1 | Michael Stevens | 0.50 |
| | 513-2 | Michael Stevens | 0.50 |
| 1 | 514-1 | Mrs. L. Lentini | |
| | 514-2 | Norman Meissner | 0.50 |
| 1 | 515-1 | James R. Klouser | |
| | 515-2 | Eldon G. Wenger | 0.50 |
| 1 | 516-1 | Dr. James Seeley | |
| | 516-2 | Dr. James Seeley | |
| 1 | 517-1 | James Robert Glidden | |
| | 517-2 | Norman Meissner | 0.50 |
| 1 | 601-1 | Emilio Crixell | 0.25 |
| | 601-2 | Frank Crixell, Sr. | |
| | 601-3 | Maria S. de Cantu | |
| | 601-4 | Antoinette B. Connaughton | 0.25 |
| 1 | 603-1 | Anita R. Crixell | 0.25 |
| | 603-2 | Amoldo Gutierrez | |
| | 603-3 | Edward Drake | |
| | 603-4 | Dr. William Hobbs | 0.25 |
| 1 | 605-1 | Juaquin Madero | 0.25 |
| | 605-2 | Leticia Rendon / Joseph F. Jamar, Jr. | 0.25 |
| | 605-3 | Fernando S. Azpuru | 0.25 |
| | 605-4 | Arturo Rocha | 0.25 |
| 1 | 607-1 | Weichert Relocation Co. | |
| | 607-2 | Rosa Elena C. Palacios | 0.25 |
| | 607-3 | John McAllister | |
| | 607-4 | Hernando Sierra | |
| 1 | 609-1 | Rodolfo S. Rodriguez | 0.25 |
| | 609-2 | Juan I. Cuadra | 0.25 |
| | 609-3 | Albino Garcia | 0.25 |
| | 609-4 | Jorge Clynes | 0.25 |
| 1 | 700-1 | Harry Lewis | 0.33 |
| | 700-2 | Carlos Martinez Elias | 0.33 |
| | 700-3 | Dolores G. Treveño | 0.33 |
| 1 | 701-1 | Cynthia Y. Avila | 0.33 |
| | 701-2 | Hudson Mortgage Co. | 0.33 |
| | 701-3 | Narain's Arts, Inc. | 0.33 |
| 1 | 702-1 | Leta Stuart | 0.33 |
| | 702-2 | Tim Robertson | 0.33 |
| | 702-3 | Rudy F. Vidales | 0.33 |
| 1 | 703-1 | Stella R. Teverovsky | 0.33 |
| | 703-2 | Carlos F. Gonzalez | 0.33 |
| | 703-3 | Warner Holdings, Ltd. | 0.33 |
| 1 | 704-1 | Rodolfo Melendez | 0.33 |
| | 704-2 | Dr. Ernesto S. Davila | 0.33 |
| | 704-3 | Warner Holdings, Ltd. | 0.33 |
| 1 | 705-1 | Janet Buckner | 0.33 |

| | | | |
|---|---|---|---|
| | 705-2 | Hector E. Argu | 0.33 |
| | 705-3 | Adela Sandova | 0.33 |
| 1 | 706-1 | Alberto P. Villarreal | |
| | 706-2 | Linda Crews-Lerma | 0.33 |
| | 706-3 | Rosie Maldonado | 0.33 |
| 1 | 707-1 | Salamon de la Garza | 0.33 |
| | 707-2 | Dr. E. J. Morris | 0.33 |
| | 707-3 | Warner Holdings, Ltd. | 0.33 |
| 1 | 708-1 | Bernardo C. Comisarenco | 0.33 |
| | 708-2 | Armando Rodriguez | 0.33 |
| | 708-3 | Warner Holdings, Ltd. | 0.33 |
| 1 | 709-1 | Marvin L. & Sue White | |
| | 709-2 | Jesus Altamirano / Lerma | 0.33 |
| | 709-3 | Dick Lowry | |
| 1 | 710-1 | Elizabeth Weatherwax | |
| | 710-2 | Roberto Martinez | 0.33 |
| | 710-3 | Charles Lewis (c/o Trey Martinez) | 0.33 |
| 1 | 711-1 | Carlos J. Miselem | 0.33 |
| | 711-2 | Nicholas A. Metcalf | |
| | 711-3 | Janet Buckner | 0.33 |
| 1 | 712-1 | Elena Ruth Wolfe | 0.33 |
| | 712-2 | Carlos V. Salazar | 0.33 |
| | 712-3 | Charles Corbeil | 0.33 |
| 1 | 713-1 | Ingrid Steinbach | 0.33 |
| | 713-2 | Carol Brizzolara | 0.33 |
| | 713-3 | Jorge Gonzalez, Jr. | |
| 1 | 714-1 | Evelyn Ford | 0.33 |
| | 714-2 | Maria D. Vega | 0.33 |
| | 714-3 | Hilda Hobbs | 0.33 |
| 1 | 715-1 | Dudley G. Soden | 0.33 |
| | 715-2 | Beatrice A. Cavazos | 0.33 |
| | 715-3 | Joseph R. Corbeil | 0.33 |
| 1 | 716 | Elvira & Fabian Limas | 1.00 |
| 1 | 717 | Elvira & Fabian Limas | 1.00 |
| 1 | 800-1 | Arthur Wojciehowski | 0.25 |
| | 800-2 | Donald W. Swafford | |
| | 800-3 | Evelyn Ford | 0.25 |
| | 800-4 | Dr. Harry O. White, Jr. | 0.25 |
| 1 | 801-1 | Miguel & Irma Gonzalez | |
| | 801-2 | William H. Barlow | |
| | 801-3 | John Burkholder | |
| | 801-4 | Pete de la Rosa, III | 0.25 |
| 1 | 802-1 | Alicia S. Gorena | 0.25 |
| | 802-2 | Narain's Arts, Inc. | 0.25 |
| | 802-3 | Mary I. Gutierrez | 0.25 |
| | 802-4 | Mary I. Gutierrez | 0.25 |
| 1 | 803-1 | Pablo Peña | 0.25 |
| | 803-2 | Pablo Peña | 0.25 |
| | 803-3 | Pablo Peña | 0.25 |
| | 803-4 | Pablo Peña | 0.25 |
| 1 | 804-1 | Marta Elena R. Treviño | 0.25 |
| | 804-2 | Humberto Ruiz Garza | 0.25 |
| | 804-3 | Rosaura A. C. Hinojosa | 0.25 |
| | 804-4 | Rosaura A. C. Hinojosa | 0.25 |
| 1 | 805-1 | Allen J. & Ruth Wolfe | 0.25 |
| | 805-2 | Allen J. & Ruth Wolfe | 0.25 |
| | 805-3 | Allen J. & Ruth Wolfe | 0.25 |
| | 805-4 | Allen J. & Ruth Wolfe | 0.25 |
| 1 | 806-1 | Alfredo Velasco | |
| | 806-2 | Manuel R. Mendoza | 0.25 |
| | 806-3 | Manuel R. Mendoza | 0.25 |

| | | | |
|---|---|---|---|
| | 806-4 | Manuel R. Mer____a (Luis Velasco) | 0.25 |
| | 806-5 | Mariko S. Hunter | 0.25 |
| | 806-6 | Luis Alberto Lezama / Basilio Gomez, Jr. | 0.25 |
| | 806-7 | Arturo Sanchez | 0.25 |
| 1 | 807-1 | Alejandro A. Cuevas | 0.25 |
| | 807-2 | Dinah Michelle Berry | |
| | 807-3 | Higinio Ruiz, Jr. | |
| | 807-4 | Maria Esther Soto | 0.25 |
| 1 | 808-1 | Susan Mills | 0.25 |
| | 808-2 | Leticia A. Asencio | 0.25 |
| | 808-3 | Dora A. Hernandez | 0.25 |
| | 808-4 | Jorge A. Hernandez | 0.25 |
| 1 | 809-1 | Luis Alberto Lezama / Basilio Gomez, Jr. | 0.25 |
| | 809-2 | Luis Alberto Lezama / Basilio Gomez, Jr. | 0.25 |
| | 809-3 | Luis Alberto Lezama / Basilio Gomez, Jr. | 0.25 |
| | 809-4 | Luis Alberto Lezama / Basilio Gomez, Jr. | 0.25 |
| 1 | 810-1 | Charles E. Radliff | 0.25 |
| | 810-2 | A. Hector Garcia | 0.25 |
| | 810-3 | Zifa Esparza | 0.25 |
| | 810-4 | Enrique & Sandra de la Garza | 0.25 |
| 1 | 811-1 | Rolando Lira | 0.25 |
| | 811-2 | Hector Lazo | |
| | 811-3 | John and Sharon Anderson | 0.25 |
| | 811-4 | Jose Marquez | 0.25 |
| 1 | 812-1 | Arnoldo C. Robles / J. Robles | 0.25 |
| | 812-2 | Peter Neubauer | 0.25 |
| | 812-3 | Robert Light | 0.25 |
| | 812-4 | Felice Re Zamaruno | |
| 1 | 813-1 | Robert C. Brooks | 0.25 |
| | 813-2 | Marta L. Westgor | 0.25 |
| | 813-3 | Oscar Pier | 0.25 |
| | 813-4 | Carlos J. Flores (c/o Elena Olivo) | 0.25 |
| 1 | Lot 814 | Alicia C. Madrazo | 1.00 |
| 1 | Lot H | Alicia C. Madrazo | 1.00 |
| 1 | Lot G | Isidro Enrique Sotres | 1.00 |

| | | |
|---|---|---|
| 311 | Total Lots Voting To Amend | 160.9986 |
| | | *150.9986* |
| | 50.1% of 311 lots = | 155.81 |

*34*
*277*

FILED FOR RECORD

AT _____

2001 MAR 15 P 1: 03

JOE G. RIVERA
CLERK COUNTY COURT
CAMERON COUNTY, TEXAS

BY _____ DEPUTY

11908

STATE OF TEXAS
COUNTY OF CAMERON

I hereby certify that this instrument was FILED on the
date and at the time stamped hereon by me and was duly
RECORDED in the Volume and page of the named RECORDS
of Cameron County, Texas as stamped hereon by me.

County Clerk
Cameron County, Texas

*When recorded please return to*

ALBERTO PULLEN
ATTORNEY AT LAW

International Bank of Commerce
1623 Central Boulevard, Suite 205
Brownsville, Texas 78520

Tel (956) 546-3627
Fax (956) 546-3626
apullen@worldnet.att.net

STATE OF TEXAS                    §
                                  §
COUNTY OF CAMERON                 §

Before me the undersigned authority, this day appeared ___*Emil*___ *Pauline Bentivenso* who upon his/her oath, deposed and said:

"My name is *Pauline Bentivenso* . I am an owner of a lot or unit situated on a lot described as follows: *313-7- Mc Fadden Hut.*

located and situated in Country Club Estates, Cameron County, Texas.

On or about ___*1995*___, I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

*Pauline Bentivenso*

Sworn to and subscribed before me this *16th* day of *March*, 2001.

*Oralia C. Perez*
Notary Public, State of Texas

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004

PLAINTIFF'S
EXHIBIT

STATE OF TEXAS          §
                       §
COUNTY OF CAMERON       §

Before me the undersigned authority, this day appeared _D G Soden_ who upon his/her oath, deposed and said:

"My name is _DUDLEY G. SODEN_. I am an owner of a lot or unit situated on a lot described as follows:

_Unit 715-1 Continental Drive_

located and situated in Country Club Estates, Cameron County, Texas.

On or about _4/1/2000_, I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

_D G Soden_

Sworn to and subscribed before me this _16th_ day of _March_, 2001.

_Oralia C. Perez_
Notary Public, State of Texas

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004

STATE OF TEXAS          §
                        §
COUNTY OF CAMERON       §

Before me the undersigned authority, this day appeared _ELDON G._ who upon his/her oath, deposed and said:

_WENGER_

"My name is _ELDON G. WENGER_. I am an owner of a lot or unit situated on a lot described as follows: _515-2_

located and situated in Country Club Estates, Cameron County, Texas.

On or about _1997_, I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

Sworn to and subscribed before me this _16th_ day of _March_, 2001.

Notary Public, State of Texas

ORALIA G. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004

PLAINTIFFS EXHIBIT

STATE OF TEXAS §
§
COUNTY OF CAMERON §

Before me the undersigned authority, this day appeared Jack G. *Humphries* who upon his/her oath, deposed and said:

"My name is *Jack G. Humphries*. I am an owner of a lot or unit situated on a lot described as follows: *444-7 + 444-8*

located and situated in Country Club Estates, Cameron County, Texas.

On or about _____, I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

Sworn to and subscribed before me this *19th* day of *March*, 2001.

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004

Notary Public, State of Texas



STATE OF TEXAS §
§
COUNTY OF CAMERON §

Before me the undersigned authority, this day appeared _James E Huggins_ who upon his/her oath, deposed and said:

"My name is _James E Huggins POA for_ _(Warren E Huggins)_. I am an owner of a lot or unit situated on a lot described as follows: _203 El Verde Ln._

located and situated in Country Club Estates, Cameron County, Texas.

On or about _(unknown — doesn't remember)_, I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

_James E Huggins POA_

Sworn to and subscribed before me this _16_ day of _March_, 2001.

_Oralia C Perez_
Notary Public, State of Texas

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004

X Discussed the matter of changing existing covenants & restrictions and Warren E Huggins definitely is against any change in the status quo. He desires yard maintenance / garbage pickup / security to stay as it is now.

PLAINTIFF'S EXHIBIT

STATE OF TEXAS §

COUNTY OF CAMERON §

Before me the undersigned authority, this day appeared _____*Emil*_____ who
upon his/her oath, deposed and said:

"My name is _____*Pauline Bentivengo*_____. I am an owner of a lot or
unit situated on a lot described as follows: *313-7- Mc Fadden Hut*

located and situated in Country Club Estates, Cameron County, Texas.

On or about _____*1995*_____, I was asked to sign a consent to amendments of
restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked
my consent to such amended covenants and do hereby withdraw any prior written
consent given by me.

Further Affiant sayeth not."

x
*Pauline Bentivengo*

Sworn to and subscribed before me this *16th* day of *March*, 2001.



*Oralia C. Perez*
Notary Public, State of Texas

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004



PLAINTIFF'S EXHIBIT

STATE OF TEXAS         §
                            §

COUNTY OF CAMERON     §

     Before me the undersigned authority, this day appeared _Jose Marquez_ who upon his/her oath, deposed and said:

     "My name is _Jose Marquez_. I am an owner of a lot or unit situated on a lot described as follows: _811-4 Continental Drive_

located and situated in Country Club Estates, Cameron County, Texas.

     On or about _1996 ?_, I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

     I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

     Further Affiant sayeth not."

                          _Jose Marquez_

Sworn to and subscribed before me this _20th_ day of _March_, 2001.

                        _Oralia C. Perez_

**ORALIA C. PEREZ**
Notary Public, State of Texas
My Commission Expires 05-10-2004

                        Notary Public, State of Texas



PLAINTIFF'S EXHIBIT 10

CUtePDF - www.texisi.com

STATE OF TEXAS                          §
                                        §
COUNTY OF CAMERON                       §

Before me the undersigned authority, this day appeared _E Morris_ who upon his/her oath, deposed and said:

"My name is ___F. Morris___. I am an owner of a lot or unit situated on a lot described as follows: 707-2 Continental Dr.

located and situated in Country Club Estates, Cameron County, Texas.

On or about _3 or 4 years ago_ I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

Sworn to and subscribed before me this _20th_ day of _March_, 2001.

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004

_Oralia C. Perez_
Notary Public, State of Texas



PLAINTIFF'S EXHIBIT

STATE OF TEXAS § 

§

COUNTY OF CAMERON §

Before me the undersigned authority, this day appeared _Jesu N. Clynes_ _Jorge Clynes_ who upon his/her oath, deposed and said:

"My name is _Jorge Clynes_ . I am an owner of a lot or unit situated on a lot described as follows: _609-H Continental Drive_

located and situated in Country Club Estates, Cameron County, Texas.

On or about _1997_ , I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

Sworn to and subscribed before me this _20th_ day of _March_ , 2001.

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004

Notary Public, State of Texas

PLAINTIFF'S
EXHIBIT

STATE OF TEXAS                    §
                                 §
COUNTY OF CAMERON                §

Before me the undersigned authority, this day appeared _Manfred Leichthammer_ who upon his/her oath, deposed and said:

"My name is _Manfred Leichthammer_. I am an owner of a lot or unit situated on a lot described as follows: _House 419 Champion Dr_

located and situated in Country Club Estates, Cameron County, Texas.

On or about _1996 or 1997_, I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

Sworn to and subscribed before me this _22nd_ day of _March_, 2001.

Notary Public, State of Texas

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004

PLAINTIFF'S
EXHIBIT
13

STATE OF TEXAS               §
                             §
COUNTY OF CAMERON            §

Before me the undersigned authority, this day appeared, _Jay Pititich_ who upon his/her oath, deposed and said:

"My name is ___Jay Pititich___. I am an owner of a lot or unit situated on a lot described as follows: _4/2-1 Champion Dr._

located and situated in Country Club Estates, Cameron County, Texas.

On or about ___1997___, I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

_Jay Pititich_

Sworn to and subscribed before me this _19th_ day of _March_, 2001.



_Oralia C. Perez_
Notary Public, State of Texas

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004


PLAINTIFF'S EXHIBIT

STATE OF TEXAS                    §
                                 §
COUNTY OF CAMERON                 §

Before me the undersigned authority, this day appeared _Michael Begum_ who upon his/her oath, deposed and said:

"My name is _Michael Begum_. I am an owner of a lot or unit situated on a lot described as follows:

214 EL VERDE LANE

located and situated in Country Club Estates, Cameron County, Texas.

On or about _Can't Recall_ I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

Sworn to and subscribed before me this _21_ day of _March_, 2001.

JOSE E PAREDES
NOTARY PUBLIC
State of Texas
Comm. Exp. 03/26/02

Notary Public, State of Texas

I CAN'T RECALL signing any amendments my



STATE OF TEXAS       §
§
COUNTY OF CAMERON    §

*Cheryl L. Cozad*

Before me the undersigned authority, this day appeared *JAMES R. Cozad* who upon his/her oath, deposed and said:

"My name is *JAMES R. COZAD*. I am an owner of a lot or unit situated on a lot described as follows: *220-1 & 220-2 EL VERDE LN*

located and situated in Country Club Estates, Cameron County, Texas.

On or about *2000*, I was asked to sign a consent to amendments of restrictive covenants pertaining to the entire country club area.

I am making this affidavit to advise the public and the Court that I have revoked my consent to such amended covenants and do hereby withdraw any prior written consent given by me.

Further Affiant sayeth not."

*James R. Cozad*

Sworn to and subscribed before me this *19th* day of *March*, 2001.

*Oralia C. Perez*
Notary Public, State of Texas

ORALIA C. PEREZ
Notary Public, State of Texas
My Commission Expires 05-10-2004



PLAINTIFF'S
EXHIBIT
16

# VERIFICATION

**STATE OF TEXAS** §

**COUNTY OF CAMERON** §

     Before me, the undersigned Notary Public, on this day personally appeared Ken Plasterer,

who, after being duly sworn under oath the he is one of the Plaintiffs in this cause of action and

that he has read the above Motion for Summary Judgment and that every statement contained

in the Motion is within his personal knowledge and is true and correct.



KEN PLASTERER

     SUBSCRIBED AND SWORN TO BEFORE ME on this the 31st day of July, 2001, to

certify which witness my hand and official seal.

ELIZABETH R. RIVERA
Notary Public, State of Texas
My Commission Expires
MARCH 1, 2003

Notary Public in and for
The State of Texas



PLAINTIFF'S
EXHIBIT

Case 1:00-cv-00173  Document 41  Filed in TXSD on 10/22/2001  Page 62 of 104

DEED RECORDS          VOL. 79 3 PAGE 1691.

STATE OF TEXAS        X          14131

COUNTY OF CAMERON     X

## COVENANTS AND RESTRICTIONS

WHEREAS, Valley Inn and Country Club, Inc., a Texas corporation,
hereinafter designated as "Developer", is the owner of that certain
property located in Cameron Country, Texas, and more particularly
described on the Exhibit "A" hereto attached and made a part hereof
for all purposes; and

WHEREAS, Developer owns and operates what is commonly known
and designated as a Country Club, hereinafter to be designated as the
"Country Club", comprising, but not limited to, a golf course, swimming
pool, club house, and the like, which adjoins the Subdivision, and
which will be more particularly referred to hereinafter; and

WHEREAS, Developer desires to subdivide the property described
in the Exhibit "A" hereto attached into lots, tracts, drives, parking
areas, and into what is designated as "common areas", and constitute
the same as a high quality restricted residential subdivision known
and designated as Country Club Estates, Section 1, which said sub-
division and the boundaries thereof are  more particularly described
and set forth in the map or plat thereof comprising 4 pages which is
hereto attached as Exhibit "B" and made a part hereof for all purposes;
and

WHEREAS, it is the intent and purpose of Developer, and the

CIVIPDF - www.teoia.com

692

VOL. 79 3 PAGE 692

all the lot owners within the subdivision, and to maintain, repair and replace the planting, landscaping and improvements located there-in; and

WHEREAS, for the purpose of creating and carrying out a uniform plan for the maintenance and improvements of such subdivision and the lots therein, as a high quality restricted residential subdivision, the restrictions, conditions, agreements and covenants with respect thereto are designated hereinafter; and

WHEREAS, the ownership of the lots within such subdivision shall be limited to persons who have qualified in accordance with the by-laws, rules and regulations of the Country Club for membership in the said Country Club; and

WHEREAS, such restrictions, covenants and agreements shall constitute covenants running with the land and shall be binding upon and for the benefit of Developer, its successors and assigns, and all persons acquiring and owning property within the said subdivision; and

WHEREAS, such restrictions, covenants, conditions and agree-ments herein set forth and in the by-laws, rules and regulations of the Country Club, shall be made a part of each contract, deed or other muniment of title executed by or on behalf of Developer, or any successor in title, conveying a lot or lots within the subdivision whether or not set forth in such deed, or these said restrictions, covenants,

VOL. 79 3 PAGE 493

THEREFORE, the said Valley Inn & Country Club, Inc., owner of the said property described and referred to in the Exhibit "A" hereto attached and made a part hereof for all purposes, and also owner of the said Country Club, does hereby make subdivision of the said property according to the lines, lots, roads, drives, alleys, parks, playgrounds, easements, and common areas shown on the said Exhibit "B" hereto attached and made a part hereof for all purposes, and designates the said subdivision as Country Club Estates, Section 1, and Developer does hereby set aside to the use of the owners of the lots within the subdivision, (but not to the public generally), the said roads, drives, alleys, parks, playgrounds, easements, and common areas shown thereon, and these covenants, restrictions and agreements shall constitute obligations of Developer and each lot owner:

## ARCHITECTURAL CONTROL COMMITTEE

1. There is hereby created an Architectural Control Committee which shall be composed of 3 members. Each member of the Committee shall serve until his successor is named as provided herein, the initial members to be:

        Bill D. Bass, P. O. Box 523, Brownsville, Texas,
        V. C. Wilson, 48 Honeydale, Brownsville, Texas,
        A. A. McFadden, 434 Boca Chica, Brownsville, Texas.

2. A majority of the Committee may designate a representative to act for it.

3. Members of the Architectural Control Committee shall be appointed annually by Developer acting by and through its President

Case 1:00-cv-00173   Document 41   Filed in TXSD on 10/22/2001   Page 65 of 104

In the event of any vacancy such vacancy shall be filled by the Developer acting by and through its President.

4.  No building shall be erected, placed, or altered on any lot until the construction plans and specifications and a plan show-ing the location of the structure have been approved by the Architectural Control Committee as to quality of workmanship and materials, harmony of external design with existing structures and as to location with respect to topography and finish grade elevation.  Approval shall be as provided in Paragraph 5 below.

5.  Final plans and specifications shall be submitted in duplicate to the Architectural Control Committee for approval or disapproval. One complete set of plans and specifications as approved will be retained by the Architectural Control Committee and the other complete set of plans will be marked "Approved", as such approval is given, and returned. Any modifications or changes to the approved set of plans must again be submitted to the Architectural Control  Committee for their inspec-tion and approval.

6.  The Committee's approval or disapproval as required in these covenants shall be in writing.

7.  In the event the Committee or its designated representative fails to approve or disapprove any such plans within 30 days after the plans and specifications have been submitted to it, or in any event if no suit to enjoin the construction shall be commenced prior to the completion thereof, approval shall not be required and the related

Case 1:00-cv-00173   Document 41   Filed in TXSD on 10/22/2001   Page 66 of 104

8. The Architectural Control Committee shall have full supervision and control over the maintenance, improvements and all construction, other than residence buildings, in the common areas of the subdivision.

## GENERAL LAND USE

1. All lots in the subdivision shall be used as single family residential lots, and for no other purpose.

2. All buildings placed on any of the lots shall be newly erected on the lot and no used building shall be moved onto any of the lots.

3. No commercial or professional activity of any nature shall be carried on upon any lot or any building thereon; nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood. No cattle, hogs, poultry, horses, other animals or fowls may be kept on any part of Country Club Estates, Section 1, except that this paragraph shall not preclude the keeping of pets or animals other than the above mentioned such as are ordinarily kept as pets in residential subdivisons, provided they are not kept or bred for any commercial purposes.

4. No outdoor toilet or garage shall be placed on any lot.

5. No oil drilling, oil development operations, oil refining, quarrying or mining operations of any kind shall be permitted upon any lot, nor shall oil wells, tanks, tunnels, mineral excavations or shafts be permitted upon any lot. No derrick or other structure designed for use in boring for oil or natural gas or other minerals shall be erected

CVkPDF - www.fastio.com

696

VOL. **79 3** PAGE ' **696**

6. No sign of any kind shall be displayed to the public view.

7. No structure, trailer, basement, tent, shack, garage, other outbuildings or temporary structure shall be constructed or used on any lot as a residence, either temporarily or permanently.

8. Any house trailer, boat, bus, truck or similar vehicle, shall be parked only as and where approved by the Architectural Control Committee.

9. No lot shall be used or maintained as a dumping ground for rubbish or trash.

10. Garbage shall not be deposited except in sanitary containers and such containers shall be maintained in a clean and sanitary condition at a place where it may not be seen from any driveway or public area.

11. No radio or television aerial or guy wires shall be maintained on any portion of any lot except on approval of the Architectural Control Committee.

12. No clothes line shall be maintained or used on any lot.

13. The conveyance of each lot shall include the exclusive use of the designated carport and storage area.

14. Each lot owner shall take notice of and shall abide all provisions of the by-laws, rules and regulations of the Country Club now or hereafter promulgated, and shall be entitled to the use of the Country Club and its facilities as permitted by the by-laws, rules and regulations thereof.

SIZE, TYPE AND PLACEMENT OF STRUCTURE

building of more than one-story in height shall be constructed on any

of the lots; and, no residence building of less than 1,200 square feet,

exclusive of open porches and patios, shall be constructed or permitted

to remain on any of the lots.

2. The exterior walls of each dwelling shall be not less than

65% masonry, including, but not limited to, natural stone, brick,

stucco or a veneer of any of them. In computing this percentage, all

door and window openings and gables shall be excluded from the required

area.

3. The pitch of the roof is to be subject to the approval of

the Architectural Control Committee; but, in no event will flat roofs

or built up roofs be permitted.

4. All foundations of buildings shall be concrete slab.

5. No fence, wall, hedge or other like structure shall be

permitted on any of the lots.

6. No building shall be erected on any lot nearer the front

lot line than the set back line as shown on the plat hereto attached

as Exhibit "B" or as prescribed by the Architectural Control Committee.

The Architectural Control Committee shall also prescribe the location

of any building with respect to any interior lot line.

7. No landscaping, planting of shrubbery, trees or the like

shall be permitted on any lot except with the approval of the Architectural

Control Committee.

CVAPDF - www.fazolo.com

VOL. 793 PAGE 698

9. An easement over and upon each lot is reserved to the Developer for water lines, gas lines, electric lines, sewage lines, and other utilities.

## LIMITATION OF OWNERSHIP OF LOTS

1. The lots of the subdivision are for the benefit of the members of the Country Club, and no person shall be permitted to purchase, acquire, own or construct improvements on any lot within the subdivision unless he shall first make written application to the Country Club and its governing body for membership therein, and shall have been certified as a member in good standing of the said Country Club.

2. Each lot owner shall be subject to these covenants, restrictions and agreements and to the by-laws, rules and regulations promulgated by the Country Club.

3. Each lot owner in order to be permitted to use any of the facilities of the Country Club, shall be required to pay all dues and assessments thereof, unless otherwise provided by the by-laws, rules and regulations of the Country Club.

## MAINTENANCE CHARGE & COUNTRY CLUB DUES

1. There is hereby levied on each lot owner within the subdivision a maintenance charge of $20.00 per month, payable in advance on the first day of each month. There is also levied on each lot owner within the subdivision the dues and assessments prescribed by the Country Club.

2. There is hereby granted unto grantor, its succ-

VOL. **79 3** PAGE 699

lien, without prejudice, however, to any other rights, powers or causes of action which the holder of said lien may have against any party who is then or who has theretofore been the owner of the property affected thereby. The lien and all other provisions of this agreement shall be secondary and subordinate to any liens, deeds of trust and encumbrances whatsoever given to secure the purchase price of the subject property or any part thereof, or given for the purpose of making repairs or constructing dwellings or any other improvements whatsoever on any part of the subject property.

3. If any such lender acquiring such indebtedness be in doubt as to the purpose for which such loan is made for indebtedness incurred, or as to whether the lien herein granted is subordinated to any lien or deed of trust given for the purpose of securing any such mortage for indebtedness, the lender or party acquiring such indebtedness may rely conclusively upon the written statement of Developer acting by and through its President. The Grantor may subordinate said lien for maintenance charge or fees to the Country Club to any other lien by proper written instrument. Grantor may also release any such lien in whole or in part with respect to any lot or lots if it be deemed advisable without affecting said lien in so far as it applied to any other lot or lots.

4. If the said maintenance charge shall become delinquent and if such delinquency shall remain for a period of 30 days, then and in

5. The said maintenance charge shall be maintained by the Developer in a separate account and shall be used only for the payment of the maintenance expenses incurred for any and all of the following purposes: Construction and maintenance of streets, drives, sidewalks, drainage ditches, street markers, trees and shrubbery, bath house, swimming pool, parking areas, lawns, disposal of garbage, and for any other purposes deemed by the Developer necessary or desirable for the development and maintenance of the subdivision and the common areas thereof.

6. Dues and assessments owing to the Country Club, shall be governed by the by-laws, rules and regulations of the Country Club.

## FORECLOSURE OF LIENS

In the event that it shall become necessary for any corporation, organization or person to foreclose any lien on any lot, lots or other property of the subdivision, and at such foreclosure sale the lot, lots or other property in question is purchased by the holder of such lien or some other person, organization or corporation, then and in that event the purchaser shall have the full right and authority to own such property. However, in the event of a sale of such property by such purchaser at the foreclosure sale, Developer shall have the prior right of purchasing the same, the price to be agreed upon by the respective parties but not to be in excess of the appraised market price. In the event of the failure of the Developer to purchase such property, the owner thereof under such foreclosure sale shall have the right and pri-

VOL. 79 3 PAGE 701

## OBLIGATIONS AND RIGHTS OF DEVELOPER

1.  The Developer shall maintain and administer all areas within the subdivision designated, or hereafter designated, for the common use, enjoyment and benefit of the lot owners, and to maintain, repair and replace the planting and improvements located thereon, and shall also maintain regularly the grass and planting on each of the lots within the subdivision.

2.  Developer, its successors and assigns shall retain the reversionary rights and interest in and to the land under the public road shown on the plat hereto attached as Exhibit "B". Therefore, in the event any road is ever closed, abandoned or no longer used by the public, the land under lying such road shall revert to Developer, its successor and assigns.

3.  The common areas of the subdivision shall consist of all areas except the designated lots for the construction of residence buildings, and on such lots, as heretofore provided, the lawns and planting and other structures thereon (except the residence building) shall be maintained by Developer.

## DURATION OF RESTRICTIONS AND COVENANTS

1.  The restrictions, covenants and agreement set forth herein shall continue and remain in full force and effect for a period of 25 years from date of the execution of this instrument. At the expiration of said period of 25 years, they shall be automatically extended for

subdivision may execute and acknowledge an agreement in writing

terminating or revising these restrictions, covenants and agreement

and file the same in the office of the County Clerk of Cameron County,

Texas, and then and thereafter these restrictions, covenants and agree-

ment shall be null, void and of no further force and effect, or be

modified or revised as prescribed in such instrument.

## RIGHTS TO ENFORCE

These restrictions may be enforced by the filing of suit or

otherwise by the Grantor or by any of the lot owners, such enforcement

to be by injunction or otherwise.

## COVENANT RUNNING WITH THE LAND

1. Each and every covenant, restriction and agreement contained

herein shall constitute a covenant running with the land, and shall

be binding upon Developer, its successors, assigns, grantees, and each

successor owner of lots within the subdivision.

2. The provisions of this instrument shall be deemed a part of

each deed, contract of sale or other muniment of title covering and

conveying any and all lots within the subdivision, whether or not such

deed, contract or other muniment of title specifically refers to or

incorporates the provisions of this instrument by reference.

## JOINDER BY LIENHOLDERS

The holders of liens upon the land constituting the subdivision

join in the execution hereof for the sole purpose of acknowledging the

restrictions herein set forth and agreeing that the property described

VOL 79 3 PAGE 703

Executed this _30th_ day of _SEPTEMBER_, 1965.

VALLEY INN & COUNTRY CLUB, INC.

By _Bill D. Bass_
               President

ATTEST:

_____
    Secretary

INTERNATIONAL MORTGAGE CORPORATION

By _Thomas H. Sullivan_
            President

ATTEST:

_____
  Asst. Secretary

CONTINENTAL NATIONAL BANK OF FORT
WORTH, TEXAS

By _____
    Executive Vice-President

ATTEST:

_____
    Cashier

STATE OF TEXAS       X

VOL 79 3 PAGE 704

COUNTY OF HARRIS      X

     Before me the undersigned authority, on this day personally appeared Bill D. Bass, President of Valley Inn & Country Club, Inc., known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said Valley Inn & Country Club, Inc., a corporation, that he was duly authorized to perform the same by appropriate resolution of the board of directors of such corporation and that he executed the same as the act of such corporation for the purposes and consideration therein expressed, and in the capacity therein stated.

     Given under my hand and seal of office this the ___30____ day of _Septembu_____, 1965.

              _Mary Lee Juggins_____
              Notary Public in and for Harris County, Texas.


STATE OF TEXAS       X

COUNTY OF HARRIS      X

     Before me the undersigned authority, on this day personally appeared _Thomas N. Sullivan_____, President of International Mortgage Corporation, known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said International Mortgage Corporation, a corporation, that he was duly authorized to perform the same by appropriate resolution of the board of directors of such corporation and that he executed the same as the act of such corporation for the purposes and consideration therein expressed, and in the capacity therein stated.

     Given under my hand and seal of office this the___30__ day of _Septembu_____, 1965.

              _Mary Lee Juggins_____
              Notary Public in and for Harris County, Texas.

STATE OF TEXAS  X

COUNTY OF TARRANT  X

VOL **79 3** PAGE **705**

   Before me the undersigned authority, on this day personally appeared _Leigh Thornton_, Executive Vice-President of Continental National Bank of Fort Worth, Texas, known to me to be the person and office whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said Continental National Bank of Fort Worth, Texas, a corporation, that he was duly authorized to perform the same by appropriate resolution of the board of directors of such corporation and that he executed the same as the act of such corporation for the purposes and consideration therein expressed, and in the capacity therein stated.

   Given under my hand and seal of office this the _30th_ day of _September_, 1965.

OLIVE KNIGHT, Notary Public
IN AND FOR TARRANT COUNTY, TEXAS
MY COMMISSION EXPIRES JUNE 1, 1967

_Olive Knight_
Notary Public in and for Tarrant County, Texas.

7.37 acres in the Brownsville Land and Improvement Company Sub-
division in Share 22 of the Espiritu Santo Grant in Cameron County,
Texas, said 7.37 acres being a part of a certain sixty-four acre
tract conveyed by I. M. Clubb to Thos. H. Sweeney, Jr., and Peyton
F. Sweeney by Warranty Deed dated November 3, 1937, recorded in Vol.
263, pages 370-374 of the Deed Records of Cameron County; and said
7.37 acres also being a part of a certain 168.11 acre tract, de-
lineated on a plat of survey by E. M. Ridley, Civil Engineer,
Brownsville, Texas, dated December 28, 1964; and said 7.37 acres
being located on the ground with reference to the exterior bound-
aries of the said 168.11 acres, as surveyed by E. M. Ridley, and
being more particularly described as follows:

Commencing at a bolt set for an interior corner of the Brownsville
Land and Improvement Company Subdivision, said bolt being at the
place of intersection of the "North line (of) Block X", and the
"East line (of) B.L. & I. Co." as indicated and located on the above
mentioned 168.11 acre plat of survey; said bolt and corner also
being in the approximate centerline of the "Country Club Road";
thence South 81° 37' East, along the "North line (of) Block X" as
located by the aforementioned 168.11 acre survey, at 20.52 ft. a ½"
iron pin for the Northwest corner of certain 0.14 acre tract
conveyed by I. M. Clubb to Lauranza P. Collins by Warranty Deed
dated August 28, 1944, recorded in Vol. 333, pages 608-609 of the
Deed Records of Cameron County, a total distance of 190.68 ft. for
the place of BEGINNING of this 7.37 acre tract herein described:

THENCE South 81° 37' East, a distance of 845.02 ft. to a point;

THENCE South 26° 23' West, a distance of 108.30 ft. to a point;

THENCE South 61° 40' 30" West, a distance of 182.74 ft. to a point;

THENCE South 70° 00' West, a distance of 564.71 ft. to a point;

THENCE North 45° 41' West, a distance of 80.87 ft. to a point;

THENCE North 13° 18' East, a distance of 43.0 ft. to a point;

THENCE North 83° 31' West, a distance of 250.0 ft. to a point;

THENCE, 10 ft. West of the West line of Lots 2, 1, 7, and 8;

THENCE North 6° 29' East, a distance of 349.05 ft. to a point on
the South line of the above mentioned 0.14 acre tract for a corner;

THENCE, along the Southern Boundary of said 0.14 acre tract, along
the arc of a curve with a radius of 56.4 ft. in an easterly direction,
the chord of which are South 59° 07' East, a distance of 10.99 ft.,
and South 86° 14' 50" East, a distance of 41.1 ft. to end of said
curve;

THENCE, along the South line of said 0.14 acre tract North 72° 23'
East, a distance of 115.6 ft. to the place of BEGINNING, containing
7.37 acres of land, more or less.





CitiPDF - www.texis.com



CStPDF - www.fasiio.com



5119

## COVENANTS AND RESTRICTIONS OF COUNTRY CLUB ESTATES, SECTIONS 4, 5, 6, 7, 7A, 7B, 8, 8A, 8B, 8C, 9, 9A, 13 and 100

WHEREAS, Valley Inn and Country Club, Inc.
a Texas corporation, hereinafter designated as "Devel-
oper", is the owner of that certain property located
in Cameron County, Texas, more particularly described
on the Exhibit "A" hereto attached and made a part
hereof for all purposes; and

WHEREAS, Developer also owns what is commonly
known and designated as a Country Club, comprising,
but not limited to, a golf course, swimming pool, club
house, and the like which adjoins the Subdivisions,
and which will be more particularly referred to herein-
after; and

WHEREAS, Developer desires to subdivide the
property described in the Exhibit "A" into lots, tracts,
drives, parking areas, and common areas, and constitute
the same as high quality restricted residential sub-
divisions known and designated as Country Club Estates,
Sections 4, 5, 6, 7, 7A, 7B, 8, 8A, 8B, 8C, 9, 9A, 13
and 100, the designation and boundary of each such
section being more particularly described on the said
Exhibit "A", the same to be hereinafter referred to as
"Subdivision;" and

WHEREAS, for the purpose of administering

Country Club, R G Valley Inn and Country Club, Inc.
has been incorporated under the laws of Texas as a
non-profit corporation, and is hereinafter called the
"Corporation"; and

WHEREAS, for the purpose of creating and
carrying out a uniform plan for the maintenance
and improvements of such Subdivision and the lots
therein, as a high quality restricted residential
Subdivision, the covenants and restrictions with res-
pect to thereto are designated hereinafter; and

WHEREAS, the ownership of the lots and
improvements thereon within such Subdivision shall
be limited to persons who have qualified in accord-
ance with the by-laws, rules and regulations of the
Corporation and Country Club for membership in the
Country Club; and

WHEREAS, such covenants and restrictions,
shall constitute covenants running with the land and
shall be binding upon and for the benefit of Devel-
oper, the Corporation, the Country Club, and all per-
sons acquiring and owning property within the said
Subdivision; and

WHEREAS, such covenants and restrictions,
herein set forth and in the by-laws, rules and regu-
lations of the Country Club, shall be made a part of

VOL 870 PAGE 142

each contract, deed or other muniment of title exe-
cuted by or on behalf of Developer, or any successor
in title, conveying a lot or lots within the Subdi-
vision whether or not set forth in such deed, or
these said covenants and restrictions may be referred
to merely by the volume and page where recorded in the
office of the County Clerk of Cameron County, Texas.

THEREFORE, the said Valley Inn and Country
Club, Inc., owner of the said Country Club, designates
the said Subdivision as Country Club Estates, Sections
4, 5, 6, 7, 7A, 7B, 8, 8A, 8B, 8C, 9, 9A, 13 and 100,
and Developer does hereby set aside to the use of the
owners of the lots within the subdivision, (but not
to the public generally), the roads, drives, alleys,
parks, playgrounds, easements, and common areas to be
constructed in such Subdivision, and these covenants
and restrictions shall constitute obligations of De-
veloper, the Country Club, the Corporation and each
lot owner.

By use of the term "Developer" of "Valley
Inn and Country Club, Inc." of "R G Valley Inn &
Country Club, Inc." or "Country Club" herein shall also
include and be construed to mean "its successors and
assigns."

CutePDF - www.cutepdf.com

L VOL 870 PAGE 143

1.   The Corporation shall have general
supervision and control over the affairs, business,
operation and maintenance of the Country Club, and
the preparation and enforcement of the by-laws,
rules and regulations thereof.

2.   The Developer shall have general
supervision and control over the affairs, business,
operation and maintenance of this Subdivision.  It
shall maintain and administer all areas within the
Subdivision designated, or hereafter designated, for
the common use, enjoyment and benefit of the lot
owners, and to maintain, repair and replace the
planting and improvements located thereon, and
shall also maintain regularly the grass and planting
on each of the lots within the Subdivision.  The
Developer shall levy, collect, expend and have charge
of the maintenance charge herein provided for.

3.   The common areas of the Subdivision
shall consist of all areas except the designated lots
for the construction of residence buildings; and, on
such lots, as herein provided, the lawns and planting
and other structures thereon (except the residence
buildings), shall be maintained by the Developer.

ARCHITECTURAL CONTROL COMMITTEE

1.   There is hereby created an Archi-

VOL 870 PAGE 144

3 members. Each member of the Committee shall serve
until his successor is named as provided herein, the
initial such committee to be:

> Bill D. Bass, P. O. Box 523, Brownsville,
> Texas.
> Marvin Boland, Brownsville, Texas.
> A. A. McFadden, 434 Boca Chica, Brownsville,
> Texas.

2. A majority of the Committee may desig-
nate a representative to act for it.

3. Members of the Architectural Control
Committee shall be appointed annually by the Developer.
Any or all members of the Architectural Control Com-
mittee may be removed at any time by the Developer.
In the event of any vacancy such vacancy shall be
filled by the Developer.

4. No building shall be erected, placed
or altered on any lot until the construction plans
and specifications and a plan showing the location of
the structure have been approved by the Architectural
Control Committee as to quality of workmanship and
materials, harmony of external design with existing
structures and as to location with respect to topo-
graphy and finish grade elevation. Approval shall be
as provided in Paragraph 5 below.

5. Final plans and specifications shall be

LVOL 870 PAGE 145

Committee for approval or disapproval. One complete
set of plans and specifications as approved will be
retained by the Architectual Control Committee and
the other complete set of plans will be marked "Approved",
if such approval is given, and returned.  Any modifi-
cations or changes to the approved set of plans must
again be submitted to the Architectural Control Com-
mittee for its inspection and approval.

      6.   The Committee's approval or dis-
approval as required in these covenants shall be in
writing.

      7.   In the event the Committee or its des-
ignated representative fails to approve or disapprove
any such plans and specifications within 30 days after
the plans and specifications have been submitted to it,
or in any event if no suit to enjoin the construction
shall be commenced prior to the completion thereof,
approval shall not be required and the related covenants
shall be deemed to have been fully complied with.

      8.   The Architectural Control Committee
shall have full supervision and control over the main-
tenance, improvements and all construction, other than
residence buildings, in the common areas of the Sub-
division.

      9.   The appointment and control of the

LVOL 870 PAGE 146

the Architectural Control Committee may be at any time
vested in the lot owners, same to be within the discre-
tion of Developer.

### GENERAL LAND USE

1.   All lots in the Subdivision and im-
provements thereon shall be used for single family
residential purposes, and for no other purpose.

2.   All buildings placed on any of the lots
shall be newly erected on the lot and no used build-
ings shall be moved onto nay of the lots.

3.   No commercial activity of any nature
shall be carried on upon any lot or in any building
thereon, subject, however, to Paragraph 16 hereof.
No cattle, hogs, poultry, horses, other animals or
fowls may be kept on any part of the Subdivision,
except that this paragraph shall not preclude the
keeping of pets or animals, other than the above men-
tioned, such as are ordinarily kept as pets in a high
class restricted residential subdivision, provided
they are not kept or bred for any commercial purposes.

4.   No outdoor toilet or garage shall be
placed on any lot.

5.   No oil drilling, oil development, oil
refining, quarrying or mining operations of any kind

tanks, tunnels, mineral excavations or shafts shall
be permitted upon any lot.  No derrick or other struc-
ture designed for use in boring for oil or natural gas
or other minerals shall be erected, maintained or
permitted upon any lot.

6.   No sign of any kind shall be displayed
to the public view, except the number of the building,
and in small letters the name of the owner.

7.   No trailer, basement, tent, shack, gar-
age, other outbuildings, or temporary structure shall
be constructed or used on any lot as a residence or
for any other purpose, either temporarily or perman-
ently.

8.   House trailers, boats, buses, trucks or
similar vehicles, shall be parked only as and where
permitted and approved by the Architectural Control
Committee.

9.   No lot shall be used or maintained as a
dumping ground for rubbish or trash.

10.   Garbage shall not be deposited except in
sanitary containers and such containers shall be main-
tained in a clean and sanitary condition at a place
where it may not be seen from any driveway or public
area.

11.   No radio or television aerial or guy

LVOL 870 PAGE 148

wires shall be maintained on any portion of any lot
except on approval of the Architectural Control
Committee.

12.   No clothes line shall be maintained
or used on any lot.

13.   The conveyance of each lot shall in-
clude the exclusive use of the designated carport and
storage area.

14.   Each lot owner shall take notice of
and shall abide all provisions of the by-laws, rules
and regulations of the Country Club and the Corp-
oration now or hereafter promulgated, and shall be
entitled to the use of the Country Club and its fac-
ilities only as permitted by the by-laws, rules and
regulations thereof.

15.   It shall not be a violation of these
restrictions for a medical doctor or a lawyer to
practice his or her profession in any building loca-
ted on any lot within the Subdivision, provided
that at such time the medical doctor or lawyer shall
be occupying the premises in question as his or her
home, whether permanent or temporary; but, no sign
shall be displayed indicating such use.

16.   Any lot and the improvements thereon
located within the Subdivision, if desired, will

owner, may be rented, leased or sold.  All such rent-
ing or leasing shall be for no other use than herein
provided; and, any sale shall be limited to a person
authorized to own property within the Subdivision.
All such renting, leasing or sale shall be by the
Developer, or an agent or agents designated by it for
such purpose.  The Developer shall also collect all
money in connection therewith for the account
of such owner and shall pay same to the owner,
after first deducting therefrom any indebtedness
due and owing to Developer or otherwise.

### SIZE, TYPE AND PLACEMENTS OF STRUCTURE AND MATERIALS

1.   All improvements on the lots shall be
constructed so as to front the street, drive or walk-
way upon which such lot faces.  No building of more
than one-story in height shall be constructed on any
of the lots; and, no residence building of less than
1,200 square feet, exclusive of open porches and
patios, shall be constructed or permitted to remain
on any of the lots.

2.   The exterior walls of each dwelling
shall be not less than 65% masonry, including, but
not limited to natural stone, brick, stucco or a
veneer or any of them.  In computing this percentage,

VOL. 870 PAGE 150

all door and window openings and gables shall be excluded from the required area.

   3.   The pitch of the roof is to be subject to the approval of the Architectural Control Committee; but, in no event will flat roofs or built up roofs be permitted.

   4.   All foundations of buildings shall be concrete slab.

   5.   No fence, wall, hedge or other like structures shall be permitted on any of the lots.

   6.   No building shall be erected on any lot nearer the front line than the set back line as prescribed by the Architectural Control Committee. The Architectural Control Committee shall also pre-scribe the location of any building with respect to any interior lot line.

   7.   No landscaping, planting of shrubbery, trees or the like shall be permitted on any lot ex-cept with the approval of the Architectural Control Committee.

   8.   No parking shall be permitted in any of the streets or drives and no such streets or drives shall be in any manner blocked or partially blocked by children's bicycles, tricycles, tou---

L VOL 870 PAGE 1

9.   An easement over and upon each lot, tract, drive, parking area, and elsewhere is reserved to the Developer for water lines, gas lines, electric lines, sewage lines, and other utilities.

## LIMITATION OF OWNERSHIP OF LOTS

1.   The lots of the Subdivision are for the benefit of the members of the Country Club, and no person shall be permitted to purchase, acquire, or own, any lot or construct improvements on any lot within the Subdivision unless he shall first make written application to the Country Club and its governing body for membership therein, and shall have been certified as a member in good standing of the said Country Club.

2.   Each lot owner shall be subject to these covenants and restrictions and to the by-laws, rules and regulations promulgated for the Country Club.

3.   Each lot owner in order to be permitted to use any of the facilities of the Country Club, shall be a member thereof in good standing, and required to pay all dues and assessments thereof when due, unless otherwise provided by the by-laws, rules and regulations of the Country Club.

## MAINTENANCE CHARGE AND COUNTRY CLUB DUES

CUtePDF - www.fastio.com

VOL 870 PAGE 152

1.    There is hereby levied on each lot owner within the Subdivision a maintenance charge of $20.00 per month for the year 1969, payable in advance on the first day of each month.  The same amount shall be charged each month thereafter unless changed by action of the Developer.  There is also levied on each lot owner within the Subdivision the dues and assessments prescribed by the Corporation for the Country Club.

2.    There is hereby granted to Developer and the Country Club an express lien against each lot to secure all obligations of the owner or owners of said lots to Developer and the said Country Club, as well as all obligations at any time imposed upon the owner or owners of said lots to the Country Club by virtue of membership therein.  Such lien may be foreclosed in the same manner as a vendor's lien, without prejudice, however, to any rights powers or causes of action which the said lien may have against any party who is then or who has theretofore been the owner of the property affected thereby.  The lien and all other provisions of this agreement shall be secondary and subordinate to any liens, deeds of trust and encumberances whatsoever given to any lender to secure the purchase price of the subject property or any part thereof, or given for the purpose of

1 VOL 870 FACE 15

making repairs or constructing dwellings or any other
improvements whatsoever on any part of the subject
property.

3.   If any such lender acquiring such in-
debtedness be indoubt as to the purpose for which
such loan is made or indebtedness incurred, or as to
whether the lien granted is subordinated to any lien
or deed of trust given for the purpose of securing
any such mortgage or indebtedness, the lender or
party acquiring such indebtedness may rely conclus-
ively upon the written statement of the Developer or
the Corporation.  The Developer or Corporation for
the Country Club may subordinate said lien for main-
tenance charges or fees to the Country Club to any
other lien by proper written instrument.  The Devel-
oper or Corporation may also release any such lien in
whole or part with respect to any lot or lots if it be
deemed advisable without affecting said lien insofar
as it applies to any other lot or lots.

4.   If the said maintenance charge sahll
become delinquent and if such delinquency shall re-
main for a period of 30 days, then and in that event
there shall become due interest on such delinquent
amount at the rate of 6% per annum from the end of
the 30 day period.  Further, in the event of the nec-

VOL 870 PAGE 154

essity of filing suit, the delinquent owner shall be required to pay reasonable attorneys fee and costs of court.

5.  The said maintenance charge shall be maintained by the Developer in a seperate account and shall be used only for the payment of the maintenance expenses incurred for any and all of the following purposes:  Construction and maintenance of streets, drives, sidewalks, drainage ditches, street markers, trees and shrubbery, bath houses, swimming pools, parking areas, lawns, disposal of garbage, and for any other purposes deemed by the Developer to be necessary or desirable for the development and maintenance of the Subdivision and common areas thereof.

6.  Dues and assessments owing to the Country Club, shall be governed by the by-laws, rules and regulations of the Country Club.

## FORECLOSURE OF LIENS

In the event that it shall become necessary for an organization or person to foreclose any lien on any lot, lots or other property of the Subdivision, and at such foreclosure sale of the lot, lots or other property in question is purchased by the holder of such lien or some other person, organ-

ization or corporation, then and in that event the

purchaser shall have the full right and authority

to own such property.  However, in the event of a

sale of such property by such purchaser at the fore-

closure sale, the Developer or the Corporation shall

have the prior right of purchasing the same, the

price to be agreed upon by the respective parties

but not to be in excess of the appraised market

price.  In the event of the failure of the Devel-

oper or Corporation to purchase such property,

within 30 days from the date the proposal is sub-

mitted, the owner thereof under such foreclosure

sale shall have the right and privilege of selling

same in the open market, but the purchaser thereof

shall not be entitled to any of the privileges

afforded to members of the Country Club unless he

is or becomes a member thereof.

### DURATIONS OF COVENANTS AND RESTRICTIONS

1.   These covenants and restrictions

shall constitute and remain in full force and effect

for a period of 25 years from date of the execution

of this instrument.  At the expiration of 25 years

they shall be automatically extended for an addition-

al period of 10 years and for successive periods of

10 years thereafter unless nullified, changed or

modified as hereinafter provided.

2. Upon the expiration of 25 years from
date of the execution of this instrument, the owners
of a majority of the lots within the Subdivision
may execute and acknowledge an agreement in writing
terminating, modifying or revising these restrictions
and covenants and file the same in the office of the
County Clerk of Cameron County, Texas; thereafter
said covenants and restrictions shall be null and
void, or be modified or revised as prescribed in
such agreement.

#### COVENANT RUNNING WITH THE LAND

1. Each and every covenant and restric-
tion contained herein shall constitute a covenant
running with the land, and shall be binding upon
the Developer, the Corporation, the Country Club, and
each owner or successor owner of lots within the
Subdivision.

2. The provisions of this instrument
shall be deemed a part of each deed, contract of sale
or other muniment of title covering and conveying
any and all lots within the Subdivision, whether or
not such deed, contract or other muniment of title
specifically incorporates therein the provisions
of this instrument.

LVOL **870** PAGE **157**

## MISCELLANEOUS

1.    These restrictions may be enforced by the filing of suit or otherwise by the Developer, the Corporation, the Country Club, or by any of the lot owners, such enforcement to be by injunction or otherwise.

2.    Developer, its successors and assigns, shall retain the reversionary rights and interest in and to all land dedicated or under any public road. Therefore, in the event any public road is ever closed, abandoned or no longer used by the public, the land underlying such road shall revert to Developer, its successors or assigns:

## JOINDER BY LIENHOLDERS

The holders of liens upon the land constituting the Subdivision join in the execution hereof for the sole purpose of acknowledging the restrictions herein set forth and agreeing that said land may be subordinated and restricted as herein set out consistant with their lien interest, but they shall have no liability to perform or to see to the performance of any of the covenants and restrictions herein undertaken by Developer or any other party hereto.

EXECUTED this _1st_ day of _April_, 1969.

VOL 870 PAGE 158

ATTEST:      R. G. VALLEY INN & COUNTRY CLUB, INC.

_____ By _____
Secretary         President

ATTEST:      REPUBLIC NATIONAL LIFE INSURANCE CO.

_____ By _____
Assistant Secretary     President
W. F. Weisbruch      Ervin W. Atkerson

STATE OF TEXAS   X

COUNTY OF CAMERON X

   BEFORE ME, the undersigned authority, on this day
personally appeared Bill D. Bass, known to me to be the
person whose name is subscribed to the foregoing instru-
ment, and acknowledged to me that he executed the same as
the act and deed of Valley Inn & Country Club, Inc. of
Brownsville, Texas, and as the President thereof, and for
the purposes and considerations therein expressed.

   GIVEN under my hand and seal of office this _1st_
day of _April_ , 1969.

           _____
           Notary Public, Cameron County,
           Texas

STATE OF TEXAS   X

COUNTY OF DALLAS  X

   BEFORE ME, the undersigned authority, on this day
personally appeared Ervin W. Atkerson, known to me to be
the person whose name is subscribed to the foregoing instru-
ment and acknowledged to me that he executed the same as the
act and deed of Republic National Life Insurance Company of
Dallas, Texas and as the ____President____ thereof, and for
the purposes and considerations therein expressed.

   GIVEN under my hand and seal of office this _18th_

VOL 870 PAGE 158

ATTEST:     R. G. VALLEY INN & COUNTRY CLUB, INC.

_____ By _____
Secretary       President

ATTEST:     REPUBLIC NATIONAL LIFE INSURANCE CO.

_____ By _____
Assistant Secretary    President
W. F. Weisbruch    Ervin W. Atkerson

STATE OF TEXAS   X

COUNTY OF CAMERON X

   BEFORE ME, the undersigned authority, on this day
personally appeared Bill D. Bass, known to me to be the
person whose name is subscribed to the foregoing instru-
ment, and acknowledged to me that he executed the same as
the act and deed of Valley Inn & Country Club, Inc. of
Brownsville, Texas, and as the President thereof, and for
the purposes and considerations therein expressed.

   GIVEN under my hand and seal of office this _1st_
day of _April_, 1969.

        _____
        Notary Public, Cameron County,
        Texas

STATE OF TEXAS   X

COUNTY OF DALLAS  X

   BEFORE ME, the undersigned authority, on this day
personally appeared Ervin W. Atkerson, known to me to be
the person whose name is subscribed to the foregoing instru-
ment and acknowledged to me that he executed the same as the
act and deed of Republic National Life Insurance Company of
Dallas, Texas and as the _____President_____ thereof, and for
the purposes and considerations therein expressed.

   GIVEN under my hand and seal of office this 18th

CVISPDF – www.fesiio.com



# ONE HUNDRED SEVENTH JUDICIAL DISTRICT COURT
## STATE OF TEXAS

**BENJAMIN EURESTI JR.** *District Judge*
CAMERON COUNTY COURTHOUSE
974 E. HARRISON
BROWNSVILLE, TEXAS 78520
956- 544-0845

September 21, 2001

Hon. Ernesto Gamez
Attorney at Law
777 E. Harrison Street
Brownsville, Texas 78520

Hon. Albert Pullen
Attorney at Law
1623 Central Blvd, Ste. 205
Brownsville, Texas 78520

RE:   **Cause No. 2001-03-1577-A**
**LOS CAMPEONES, INC., ET AL**
**VS. VICC HOMEOWNERS' ASSOCIATION, INC.**

Dear Counselors:

The Court having heard the arguments of counsel and read briefs submitted
hereby GRANTS Motion for Summary Judgment.

Please submit an order consistent with this ruling.

Yours truly,

Benjamin Euresti, Jr.,
107th District Court Judge

BEJR:eeo
xc: File

EXHIBIT

D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROBERT & GWENDOLYN BROOKS, ET AL. | § § § | |
| VS. | § § | CIVIL ACTION NO. B-00-173 |
| KEN PLASTERER and NANCY JEANETTE BAILEY, Each Individually, and LOS CAMPEONES, INC., Individually and dba VALLEY INN & COUNTRY CLUB | § § § § § | |

## ORDER GRANTING DEFENDANTS' MOTION TO SUPPLEMENT SUMMARY JUDGMENT EVIDENCE

On this day came to be Defendants' Motion to Supplement Summary Judgment Evidence, and the Court after due consideration, hereby grants the same.

IT IS THEREFORE, ORDERED AND ADJUDGED that Exhibits "A", "B", "C", and "D" attached to Defendants' Motion to Supplement Summary Judgment Evidence are hereby admitted into evidence in support of Defendants' Motion for Summary Judgment.

SIGNED FOR ENTRY on this the _____ day of October, 2001.

_____
JOHN WM. BLACK
UNITED STATES MAGISTRATE JUDGE